TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-3359/8644
     E-mail:    Mark.A.Williams@usdoj.gov
                Matthew.O'Brien@usdoj.gov

NICHOLAS MCQUAID
Acting Assistant Attorney General
Criminal Division
ANN MARIE E. URSINI (Cal. Bar No. 269131)
Senior Trial Attorney
Human Rights and Special Prosecutions Section
United States Department of Justice
     1301 New York Ave
     Washington, DC 20530
     Telephone:  (202) 353-0391
     E-mail:    Annmarie.Ursini@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR No. CR 20-307-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S UNOPPOSED EX PARTE APPLICATION FOR SPEEDY TRIAL ACT FINDINGS OF EXCLUDABLE DELAY |
| v. | **CURRENT TRIAL DATE: 05-18-2021** |
| MOHAMAD YASSIN ALCHARIHI, aka "Mohamad al-Sharihi" and "Mohamad AlCharihi, | **PROPOSED TRIAL DATE: 12-14-2021** |
| Defendant. | |

     The United States of America, by and through its counsel of

record, Assistant United States Attorneys Mark Williams and Matthew

O'Brien and Senior Trial Attorney Ann Marie Ursini, seeks entry of an order excluding time from the Speedy Trial Act calculation of excludable delay, and continuing the trial in this matter.  On April 8, 2021, counsel for defendant MOHAMAD YASSIN ALCHARIHI ("defendant") informed the undersigned counsel that they would not oppose the government's ex parte request.

**BACKGROUND**

The Indictment in this case was filed on July 24, 2020, and a summons to appear was issued.  Defendant first appeared before a judicial officer of the court in which the charges in this case were pending on September 4, 2020.  The Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before November 13, 2020.

On September 2, 2020, the Court set a trial date of October 27, 2020, and a status conference date of September 14, 2020.  On September 10, 2020, the Court continued the status conference to October 15, 2020.

Defendant is on bond pending trial.  Pursuant to the parties' stipulation, the Court previously continued the trial date in this case from October 27, 2020 to May 18, 2021, and found the interim period to be excluded in computing the time within which the trial must commence, pursuant to the Speedy Trial Act.

The government estimates that its case-in-chief in this matter will last approximately three days.  The government has produced discovery to the defense, including over 26,000 pages of materials, including law enforcement reports, search warrant returns, electronic evidence, expert materials, evidence regarding foreign

law, video recordings, and other records.  Some of this evidence is in a foreign language.

The government will soon be bringing to the Court's attention certain discovery matters relating to classified material, pursuant to the Classified Information Procedures Act, 18 U.S.C. App. III ("CIPA").  CIPA mandates several protocols for protecting all forms of classified information in criminal proceedings.  The government will be filing at least one CIPA-related pleading that may require a substantial amount of time to be resolved prior to trial.

By this application, the government seeks an order from this Court finding that the time between May 18, 2021 and December 14, 2021 should be excluded from the calculation of the time in which trial must commence, and continuing the trial to December 14, 2021. The government also seeks a continuance of the pretrial conference from May 6, 2021 to December 2, 2021.

## THE COVID-19 PANDEMIC

On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials.  C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order Concerning Jury Trials and Other Proceedings (Mar. 13, 2020).  That suspension remains in place "[u]ntil further notice."  C.D. Cal. Notice from the Clerk, "Amended Expiration of Continuity of Operations Plan," http://www.cacd.uscourts.gov/news/amended-expiration-continuity-operations-plan (Feb. 2, 2021) ("COOP Expiration Notice").

Also on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities.  C.D. Cal.

General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (Mar. 13, 2020).  On March 19, 2020, by Order of the Chief Judge, the Court implemented its Continuity of Operations ("COOP") Plan, closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions.  C.D. Cal. Order of the Chief Judge No. 20-042 (Mar. 19, 2020).  On March 29, 2020, the Court authorized video-teleconference and telephonic hearings.  C.D. Cal. Order of the Chief Judge No. 20-043 (Mar. 29, 2020).  Two days later, on March 31, 2020, the Court suspended all grand-jury proceedings.  C.D. Cal. Order of the Chief Judge No. 20-044 (Mar. 31, 2020).  That suspension was subsequently extended through June 1, 2020.  C.D. Cal. General Order No. 20-05, In Re: Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings at 3 ¶ 7 (Apr. 15, 2020).

On August 6 and September 14, 2020, the Court slightly relaxed its restrictions to permit in-person criminal hearings for defendants who do not consent to remote appearance and to allow up to 10 members of the public to attend.  General Order No. 20-09, at 2-3; C.D. Cal. General Order No. 20-12, In Re: Coronavirus Public Emergency Order Concerning Reopening of the Southern Division, at 2 (Sept. 14, 2020).

However, on December 7, 2020, following "an unprecedented surge of COVID-19 cases, hospitalizations, and test positivity rates in the Central District," the Court reinstituted its COOP Plan.  Order of the Chief Judge No. 20-179, at 1-2.  The COOP Plan suspended all grand jury proceedings and once again closed court facilities to the public except for hearings on certain criminal duty matters.  Order

of the Chief Judge No. 20-179, at 2-3.  On January 6, 2021, the suspension was extended through and including January 29, 2021. Order of the Chief Judge No. 21-002, at 2.  The COOP Plan expired on January 29, 2021, and the Court permitted the resumption of certain in-person hearings, but not jury trials, beginning on February 1, 2021.  See COOP Expiration Notice.

These orders were imposed based on (1) the California Governor's declaration of a public-health emergency in response to the spread of COVID-19, as well as (2) the Centers for Disease Control's advice regarding reducing the possibility of exposure to the virus and slowing the spread of the disease.  See, e.g., General Order 20-02, at 1.  The Chief Judge has recognized that, during the COVID-19 crisis, all gatherings should be limited to no more than 10 people and elderly and other vulnerable people should avoid person-to-person contact altogether.  See Order of the Chief Judge No. 20-042, at 1-2.  The Court has more broadly recognized CDC guidance advising "precautions to reduce the possibility of exposure to the virus and slow the spread of the disease[.]"  General Order 20-09, at 1.

Consistent with this Court's orders, the Judicial Council of the Ninth Circuit Court of Appeals declared an emergency in the Central District of California, pursuant to 18 U.S.C. § 3174.  In re Approval of Judicial Emergency in the Central Dist. of Cal., 955 F.3d 1140 (9th Cir. 2020).  The Judicial Council's order recognizes that "[t]he welfare of the court, federal public defenders, CJA attorneys, U.S. Marshals Service, and defendants are placed at risk each time parties congregate in person for hearings and defendants are transported to and from the courthouse."  Id. at 1144.

Local and state governments have adopted similar policies. On March 19, 2020, both Los Angeles Mayor Eric Garcetti and California Governor Gavin Newsom issued emergency orders requiring residents to "stay home," subject to limited exceptions. California Executive Order N-33-20 (March 19, 2020); accord Safer at Home, Public Order Under City of Los Angeles Emergency Authority ¶ 1 (March 19, 2020). Subject to similarly limited exceptions, all travel was prohibited. Safer At Home ¶ 4. Non-essential businesses requiring in-person attendance by workers were ordered to cease operations. Id. ¶ 2. Many schools in the Los Angeles Unified School District remain fully or partially closed to in-person classes.

On December 3, 2020, the Acting State Public Health Officer of the State of California issued a Regional Stay at Home Order based on the "unprecedented surge in the level of community spread of COVID-19." California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020). That order went into effect on December 6, 2020 and restricted business and social activities. As the Chief Judge's December 7, 2020 Order reactivating the COOP Plan recognized, ICU availability in the Southern California region, which includes the entire Central District, fell below 15% as soon as the Regional Stay at Home Order went into effect. Order of the Chief Judge No. 20-179, at 2. When the COOP Plan was extended on January 6, 2021, ICU availability in the Southern California region was at 0.0%. Order of the Chief Judge 21-002, at 1. Although the Regional Stay at Home Order was lifted on January 25, 2021, ICU availability has increased, and case numbers have declined, COVID-19 remains extremely dangerous, and California counties remain subject to various restrictions, depending on their tier. See "Blueprint for a

Safer Economy," https://covid19.ca.gov/safer-economy/ (last visited April 12, 2021).

As these measures all reflect, the coronavirus pandemic is a global emergency that is unprecedented in modern history.  As data from both the Centers for Disease Control and the California Department of Public Health reflect, the virus has spread through the United States community at an alarming rate.  See Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Coronavirus Disease 2019 (COVID-19), California Department of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.  The death toll, across the world, is staggering.

Based on these facts, the Court's August 2020 order concluded that it was necessary to suspend criminal jury trials until further notice "in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel." General Order 20-09, at 1.  Given the increased rates of COVID-19-related hospitalization and death over the 30 days preceding the August 2020 order, the Court found that "holding jury trials substantially increases the chances of transmitting the Coronavirus," and it would thus "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk."  Id. at 3.  The Court concluded that suspending jury trials thus served the ends of justice and outweighed the interests of the public and defendants in a speedy trial.  Id.  The Central District of

California has not yet adopted protocols for safely conducting jury trials, and they remain suspended.

### DISCUSSION

Here, the time between May 18, 2021 and December 14, 2021 should be excluded from the Speedy Trial Act calculation of the date by which trial must commence.

The Speedy Trial Act generally requires a trial to begin within 70 days of indictment or initial appearance, whichever occurs later, 18 U.S.C. § 3161(c)(1), and entitles the defendant to dismissal of the charges (with or without prejudice) if that deadline is not met, § 3162(a)(2).

Certain periods of time, however, are excluded from the Speedy Trial Act's trial clock.  Id. § 3161(h).  Some periods of time are automatically excluded, including periods of delay resulting from the absence or unavailability of the defendant or an essential witness.  Id. § 3161(h)(3)(A).  Other periods of time are excluded only when a judge continues a trial and finds, on the record, that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Id. § 3161(h)(7)(A).

In this case, the time between May 18, 2021 and December 14, 2021 should be excluded from the Speedy Trial Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A).

Although the General Orders address district-wide health concerns and make Speedy Trial Act findings under § 3161(h)(7)(A), individualized findings are also required.  See General Order 20-02 at 2 ¶ 4; General Order 20-09 at 2 ¶ 6(a).  Ends-of-justice continuances are permissible only if "the court sets forth, in the

record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A). "[W]ithout on-the-record findings, there can be no exclusion." Zedner v. United States, 547 U.S. 489, 507 (2006).  The period of exclusion must also be "specifically limited in time."  United States v. Lewis, 611 F.3d 1172, 1176 (9th Cir. 2010).

As the above facts reflect, the ends of justice justify excludable time here.  Pandemic, like natural disaster or other emergency, grants this Court the discretion to order an ends-of-justice continuance.  "Although the drafters of the Speedy Trial Act did not provide a particular exclusion of time for such public emergencies (no doubt failing to contemplate, in the more innocent days of 1974, that emergencies such as this would ever occur), the discretionary interests-of-justice exclusion" certainly covers this situation.  United States v. Correa, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (addressing September 11 attacks); see Furlow v. United States, 644 F.2d 764, 767-69 (9th Cir. 1981) (affirming Speedy Trial exclusion after eruption of Mount St. Helens); accord United States v. Stallings, 701 F. App'x 164, 170-71 (3d Cir. 2017) (same, after prosecutor had "family emergency"); United States v. Hale, 685 F.3d 522, 533-36 (5th Cir. 2012) (same, where case agent had "catastrophic family medical emergency"); United States v. Scott, 245 Fed. Appx. 391, 394 (5th Cir. 2007) (same, after Hurricane Katrina); United States v. Richman, 600 F.2d 286, 292, 293-94 (1st Cir. 1979) (same, after a "paralyzing blizzard" and the informant was hospitalized).

Here, a continuance is warranted to protect public health. Federal, state, and local authorities, along with this Court's orders, have recognized that we are in the midst of a grave public-health emergency requiring people to take extreme measures to limit contact.  The Central District of California has not yet established a jury-trial protocol; instead, the Court has concluded that jury trials would "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk."  General Order 20-09 at 3 ¶ 6(a).  In the absence of such a district-wide protocol, proceeding with a jury trial is unsafe.

An ends-of-justice delay is particularly apt in this case because the trial involves co-counsel and witnesses who must travel, and thus might put themselves and others at risk if they were to come to court during this crisis.  Specifically, co-counsel and anticipated government witnesses will need to travel from the East Coast, and perhaps, further abroad.  Multiple public agencies have recommended against unnecessary travel, particularly for vulnerable populations.

In addition, due to the restrictions imposed by current public-health concerns--and given the complexity of this case--it is also unreasonable to expect adequate preparation for pretrial proceedings and the trial itself within Speedy Trial Act time limits, particularly due to the anticipated motion practice.  Specifically, the government soon will be filing at least one CIPA-related pleading that may require a substantial amount of time to be resolved prior to trial.  Indeed, once filed, the CIPA motion will provide an additional basis for a trial continuance.  See 18 U.S.C. § 3161(h)(1)(D) (providing for excludable time for any "delay

10

resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion"). Under these unusual and emergent circumstances, denial of a continuance is likely to deny all counsel reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

Based on the foregoing, the Court should enter a case-specific order finding excludable time under 18 U.S.C. § 3161(h)(7)(A). However, nothing in the Court's order should preclude a finding that

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence.

Dated: April 11, 2021          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division


/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
Assistant United States Attorneys

NICHOLAS MCQUAID
Acting Assistant Attorney General
Criminal Division


/s/
ANN MARIE E. URSINI
Senior Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA