CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: Isabel_Bussarakum@fd.org)
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: Ashley_Mahmoudian@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD YASSIN ALCHARIHI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MOHAMAD YASSIN ALCHARIHI, <br><br> Defendant. | Case No. CR 20-307-GW <br><br> **NOTICE OF MOTION AND MOTION RE: PRESUMED CIPA FILINGS** <br><br> **Hearing Date: March 1, 2022** <br> **Hearing Time: 10:00 am** |

    Defendant Mohamad Yassin Alcharihi, by and through his attorneys of record, Deputy Federal Public Defenders Ashley Mahmoudian and Isabel Bussarakum, hereby files this motion regarding the *in camera* filing by the government on October 4, 2021 (ECF No. 33), and the under-seal order issued on October 26, 2021 (ECF No. 38), which Mr. Alcharihi presumes are related to and/or filed pursuant to the Classified Information Procedures Act ("CIPA").

//

//

1

This Motion is based on the attached Memorandum of Points and Authorities, all files and records in this case, and any further evidence and argument as may be adduced at the hearing on this Motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 1, 2022          By  */s/ Isabel Bussarakum*
ISABEL BUSSARAKUM
ASHLEY MAHMOUDIAN
Deputy Federal Public Defenders
Attorneys for MOHAMAD ALCHARIHI

## **TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................1

    A. This Court must review the Government's *ex parte, in camera* filings "with special scrutiny" and ensure that the Government's reliance on CIPA does not deprive Mr. Alcharihi of a fair trial..............................................................................1

    B. Mr. Alcharihi Should Be Given Notice That a Filing Is Being Made Pursuant to CIPA and Notice of Which Section of CIPA, and Should Be Apprised of Any Findings Made by the Court .....................................................................................1

    C. Assuming the October 4 Filing Was Made Under Section 4 of CIPA, the Government Should Not be Permitted to Proceed *Ex Parte* or Withhold Discoverable Evidence ...............................5

        1. The October 4th Filing and Any Related Proceedings Should Not Occur *Ex Parte* ..............................................................5

        2. If the Proceedings do Occur *Ex Parte,* the Court Must Ensure that the Government Adheres to CIPA's Requirements and Produces All Discoverable Evidence..................................................................................8

III. CONCLUSION ..................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abourezk v. Reagan*,
    785 F.2d 1043 (D.C. Cir. 1986)..................................................................7

*Al Odah v. United States*,
    559 F.3d 539 (D.C. Cir. 2009).....................................................................9

*Brady v. Maryland*,
    373 U.S. 83 (1963).............................................................................10, 12

*Chambers v. Mississippi*,
    410 U.S. 284 (1973)....................................................................................2

*Dennis v. United States*,
    384 U.S. 855 (1966)....................................................................................8

*Giglio v. United States*,
    405 U.S. 150 (1972)............................................................................10, 12

*Guenther v. Commissioner of Internal Revenue*,
    889 F.2d 882 (9th Cir. 1989).......................................................................7

*Holmes v. South Carolina*,
    547 U.S. 319 (2006)....................................................................................2

*Kyles v. Whitley*,
    514 U.S. 419 (1995)..................................................................................10

*United States v. Abu Marzook*,
    412 F. Supp. 2d 913 (N.D. Ill. 2006)...........................................................7

*United States v. Abu-Jihaad*,
    630 F.3d 102 (2d Cir. 2010).....................................................................10

*United States v. Abuhamra*,
    389 F.3d 309 (2d Cir. 2004).......................................................................7

*United States v. Amawi*,
    695 F.3d 457 (6th Cir. 2012)......................................................................2

*United States v. Aref*,
    533 F.3d 72 (2d Cir. 2008).......................................................................11

## **TABLE OF AUTHORITIES**

Page(s)

*United States v. Brown*,
  Case No. 5:14-CR-58-FL, 2014 WL 1572533 (E.D.N.C. Apr. 18, 2014) .................. 8

*United States v. Dumeisi*,
  424 F.3d 566 (7th Cir. 2005) ............................................................................... 11

*United States v. Hassan Abu-jihaad*,
  Case No. 3:07-cr-00057-AWT, ECF No. 87 (D. Conn. Aug. 31, 2007) ................. 4, 5

*United States v. Hernandez-Meza*,
  720 F.3d 760 (9th Cir. 2013) ................................................................................. 9

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ................................................................................................ 7

*United States v. Lustyik*,
  2014 WL 994642 (D. Utah 2014) .......................................................................... 9

*United States v. Mostafa*,
  992 F.Supp.2d 335 (S.D.N.Y. 2014) ...................................................................... 9

*United States v. Ng Lap Seng*,
  2017 WL 2715213 (S.D.N.Y. 2017) ...................................................................... 9

*United States v. Pickard*,
  236 F.Supp.2d 1204 (D. Kan. 2002) ..................................................................... 8

*United States v. Rezaq*,
  156 F.R.D. 514 (D.D.C. 1994) .............................................................................. 6

*United States v. Sarkissian*,
  841 F.2d 959 (9th Cir. 1988) .............................................................................. 11

*United States v. Sedaghaty*,
  728 F.3d 885 (9th Cir. 2013) ................................................................... 1, 2, 8, 11

*United States v. Shih*,
  Case No. 2:18-cr-00050-JAK, ECF No. 198 (C.D. Cal. Oct. 24, 2018) ........... 4, 5, 11

*United States v. Stever*,
  603 F.3d 747 (9th Cir. 2010) ................................................................................. 2

*United States v. Turi*,
  143 F. Supp.3d 916 (D. Ariz. 2015) .................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

*United States v. Yunis*,
    867 F.2d 617 (D.C. Cir. 1989)..................................................................................8

**Federal Statutes and Codes**

18 U.S.C. § 541 ............................................................................................................. 1

18 U.S.C. § 3500 .................................................................................................... 10, 12

18 U.S.C. app. 3 ....................................................................................................*passim*

Fed. R. Crim. P. 16 ........................................................................................... 4, 6, 9, 10

U.S. Const. amend. I ..................................................................................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In July of 2020, the government filed an indictment against Mohamad Yassin Alcharihi charging him with falsely classifying imported goods under 18 U.S.C. § 541. (ECF No. 1.) In October of 2020, the Government notified this Court and opposing counsel that it would be utilizing the provisions of the Classified Information Procedures Act ("CIPA") to produce classified discovery. (ECF No. 23.) In October of 2021, the government filed a pleading *in camera* and provided no further information to Mr. Alcharihi about the contents of the filing or whether it pertained to CIPA. (ECF No. 33.) In November, this Court issued a sealed order and again did not disclose any information to Mr. Alcharihi about the contents or whether it pertained to CIPA. (ECF No. 38.) The government has not alleged or otherwise provided any discovery suggesting that Mr. Alcharihi has committed any offenses pertaining to national security. Mr. Alcharihi asks this Court to review the government's filings, give notice as to whether, and what section(s) of, CIPA is being utilized, and make certain the government meets the procedural burden CIPA requires to ensure Mr. Alcharihi receives a fair trial.

## II. ARGUMENT

**A.   This Court must review the Government's *ex parte*, *in camera* filings "with special scrutiny" and ensure that the Government's reliance on CIPA does not deprive Mr. Alcharihi of a fair trial**

The provisions of the Classified Information Procedures Act ("CIPA") "endeavor to harmonize a defendant's right to a fair trial with the government's right to protect classified information." *United States v. Sedaghaty*, 728 F.3d 885, 903 (9th Cir. 2013). As its name indicates, CIPA is purely procedural in nature. That is, CIPA "does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *Id.* "Instead, CIPA establishes procedures for handling classified information in criminal cases, so that district courts

1

may rule on questions of admissibility involving classified information before introduction of the evidence in open court." *Id.* at 903-04 (quotation marks and citations omitted).

Moreover, the Ninth Circuit has warned that "defense counsel, who best know their client's interests, are placed at a serious disadvantage in challenging classified proceedings in a vacuum." *Sedaghaty*, 728 F.3d at 891. Therefore, this Court must undertake its review of the purported classified information "with special scrutiny." *Id.* Stated otherwise, in CIPA litigation, "[r]ather than neutrally deciding disputes with an open record based on the adversarial process, we must place ourselves in the shoes of defense counsel, the very ones that cannot see the classified record, and act with a view to their interests." *United States v. Amawi*, 695 F.3d 457, 471 (6th Cir. 2012).

In conducting its review, this Court must ensure that the Government's reliance on CIPA does not undermine Mr. Alcharihi's right to a fair trial or otherwise prevent the disclosure of material evidence. A fundamental element of a fair trial is "a meaningful opportunity to present a complete defense." *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation marks omitted); *see also Chambers v. Mississippi*, 410 U.S. 284, 294 (1973) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations."). The right to present a complete defense "includes, 'at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt.'" *United States v. Stever*, 603 F.3d 747, 755 (9th Cir. 2010) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). A court's discovery rulings and exclusion of evidence may thereby violate a defendant's constitutional right to present a complete defense. *See id.* As discussed further below, the Ninth Circuit has established strict procedures to ensure that the Court's rulings with respect to CIPA do not undermine the right to a fair trial. *See Sedaghaty*, 728 F.3d at 903 (9th Cir. 2013) ("While the government must safeguard classified information in the interest of national security, courts must not be

remiss in protecting a defendant's right to a full and meaningful presentation of his claim to innocence." (quotation marks and citation omitted)).

### B. Mr. Alcharihi Should Be Given Notice That a Filing Is Being Made Pursuant to CIPA and Notice of Which Section of CIPA, and Should Be Apprised of Any Findings Made by the Court

As noted above, the government filed a pleading *in camera* on October 4, 2021. (ECF No. 33.) The docket entry simply states, "Notice of in Camera Filing." (*Id.*) No information was provided to Mr. Alcharihi as to whether this filing was made pursuant to CIPA or what section of CIPA. The Court then issued a sealed order on November 2, 2021. (ECF No. 38.) The docket entry simply states, "Sealed – Order." (*Id.*) No information was provided to Mr. Alcharihi about whether this Order was made pursuant to CIPA or what section of CIPA, or what findings were made, if any.

CIPA does not authorize that every filing, hearing, or order pursuant to CIPA occur in an *ex parte*, *in camera*, and/or under-seal manner. For example, under Section 2 of CIPA, any party may move for a pretrial conference to address the timing of discovery requests, notices provided under Section 5, and procedures initiated under Section 6. 18 U.S.C. App. 3, § 2. Section 2 does not authorize this motion, pretrial conference, or resulting order to be done *ex parte*, *in camera*, or under seal. Each section of CIPA addresses a different procedure, some—<u>but not all</u>—of which may occur *ex parte*, *in camera*, and/or under seal. In addition, some sections of CIPA give the Court discretion to permit, <u>but do not require</u>, the filing or procedure to occur *ex parte*, *in camera*, or under seal. Thus, the Court should carefully scrutinize any requests by the government to permit a filing or proceeding to occur *ex parte*, *in camera*, or under seal. This Court must confirm that any such request is authorized by CIPA, and separately, that Mr. Alcharihi's Due Process Rights and the public's First Amendment and common law rights of access to court proceedings and records are not being violated.

3

Even if a CIPA section does authorize an *ex parte*, *in camera*, and/or under-seal filing or procedure, it is the classified information that is to be protected, not the fact of the CIPA filing or proceeding itself. For example, Section 4 of CIPA authorizes the government to make a "sufficient showing" *ex parte*, but it does not say that the defendant should be kept entirely in the dark about the nature of the government's filing. It is the substance of the government's showing that can be done *ex parte*, not the fact of the process. For example, in another case in this district, *United States v. Shih,* Case No. CR 18-50-JAK (C.D. Cal. Jan. 16, 2018), when the government filed an *in camera*, *ex parte* pleading pursuant to CIPA, the government filed a public document giving "notice that it has filed, for in camera and ex parte review by the Court, a classified pleading, pursuant to the Classified Information Procedures Act and Federal Rule of Criminal Procedure 16(d)(1)." *Id.*, ECF No. 116; *see also United States v. Hassan Abu-jihaad*, Case No. 3:07-cr-00057-AWT, ECF No. 87 (D. Conn. Aug. 31, 2007) (Notice of Submission of Government's First Classified, *In Camera*, *Ex Parte* Motion for a Protective Order Pursuant to Section 4 of the Classified Information Procedures Act and Rule 16(d)(1) of the Federal Rules of Criminal Procedure). Thus, even if the Court permits a filing or proceeding to occur *ex parte*, *in camera*, or under seal, Mr. Alcharihi and the public should at least be given notice of what CIPA section and procedures are being invoked.

Section 4 also allows the Court to seal the government's statement requesting the limitation or restriction on discovery of classified information. However, it does <u>not</u> authorize the Court's Order on the government's request to be sealed. Again, while CIPA protects classified information, it does not go so far as to say the defendant (and the public) should be kept entirely in the dark about all filings and processes occurring pursuant to CIPA. Even if the Court finds that Mr. Alcharihi cannot have access to classified information, he should be apprised of the Court's findings pursuant to CIPA. In the *Shih* case, for example, the district court's findings regarding the government's *in camera* motion pursuant to Section 4 of CIPA were set forth in public minute orders.

*See Shih*, Case No. CR 18-50-JAK, ECF Nos. 130, 131, 198, 343, 378; *see also Abu-jihaad*, Case No. 3:07-cr-00057-AWT, ECF Nos. 101, 184.

### C. Assuming the October 4 Filing Was Made Under Section 4 of CIPA, the Government Should Not be Permitted to Proceed *Ex Parte* or Withhold Discoverable Evidence

Without knowing exactly what section of CIPA the October 4th filing relates to, it is difficult for Mr. Alcharihi to make specific arguments. He therefore makes the following arguments, assuming that the October 4th filing relates to Section 4 of CIPA. However, he reserves the right to make additional arguments, if the filing relates to a different CIPA section.

Assuming that the filing was made under Section 4, the Court should not permit the filing and any related proceedings to occur *ex parte*. But if the Court does permit the Government to proceed *ex parte*, then the Court must ensure that the Government follows CIPA's procedural requirements and produces all discoverable evidence to Mr. Alcharihi.

#### 1. The October 4th Filing and Any Related Proceedings Should Not Occur *Ex Parte*

Section 4 allows the Court to limit or restrict classified information that is produced to the defendant in discovery. Section 4 states in full:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected

5

>by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement of the United States shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

18 U.S.C. App. 3, § 4.

Nothing in CIPA requires the Court to consider a request pursuant to Section 4 *ex parte*. Although CIPA § 4 provides that the Court "*may* permit" the United States to make a submission "to be inspected by the Court alone," there is no requirement that such a submission be considered *ex parte*. The Court should not proceed *ex parte* absent a particularized showing of exceptional circumstances, preferably in an adversarial proceeding.

The use of the permissive "may" in CIPA § 4, rather than the mandatory "shall," makes clear that the Court has the discretion to reject *ex parte* submissions. Congress patterned the *ex parte* provision of CIPA § 4 on a similar provision in Federal Rule of Criminal Procedure 16(d)(1), which governs protective orders in criminal cases. *See* S. Rep. No. 823, 96th Cong. 2d Sess. 6 (discussing relation between CIPA § 4 and Rule 16(d)(1)), reprinted in 1980 U.S. Code Cong. & Ad. News 4294, 4299-4300). Rule 16(d)(1) states that a court "may" permit a party to show good cause for a protective order through an *ex parte* statement. Congress amended the language of proposed Rule 16(d)(1) from <u>requiring</u> *ex parte* proceedings on the request of a party to <u>permitting</u> such proceedings. The House Judiciary Committee observed that in determining whether to proceed *ex parte*, a court should "bear in mind that *ex parte* proceedings are <u>disfavored</u> and not to be encouraged." Federal Rule of Criminal Procedure 16, Advisory Notes, 1975 Enactment (emphasis added). *Ex parte* proceedings should not be the default under CIPA § 4. *See, e.g. United States v. Rezaq*, 156 F.R.D. 514, 526 (D.D.C. 1994) (under CIPA § 4 and Rule 16(d)(1), "*ex parte* filings are not required … nor even favored"), *modified*, 899 F. Supp. 697 (D.D.C. 1995).

Absent a showing of exceptional circumstances, secret proceedings should be avoided. The defendant's due process rights are jeopardized whenever the government proceeds *ex parte*. As the Ninth Circuit has observed, "*ex parte* proceedings are anathema in our system of justice." *Guenther v. Commissioner of Internal Revenue*, 889 F.2d 882, 884 (9th Cir. 1989), *appeal after remand*, 939 F.2d 758 (9th Cir. 1991). "Fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 55 (1993) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170-72 (1951) (Frankfurter, j., concurring)). "Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004). In *United States v. Abu Marzook*, 412 F. Supp. 2d 913, 921 (N.D. Ill. 2006), in deciding whether to close a hearing because of potential classified information, the district court explained that:

> [i]t is a matter of conjecture whether the court performs any real judicial function when it reviews classified documents *in camera*. Without the illumination provided by adversarial challenge and with no expertness in the field of national security, the court has no basis on which to test the accuracy of the government's claims.

To ensure both "the appearance and the reality of fairness," the Court should not permit the government to proceed *ex parte* without an adequate showing. *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), *aff'd by and equally divided Court*, 484 U.S. 1 (1987). "In our adversary system, it is enough for judges to judge. The

7

determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

To the extent the Court is concerned that permitting defense counsel to participate in an adversarial proceeding requires the disclosure of classified information at least to defense counsel, there are alternative procedures that the Court can take to protect the classified information. For example, defense counsel can obtain appropriate security clearances, and the Court may enter a protective order preventing the disclosure of classified information to the defendant himself and to the public. *See, e.g., United States v. Brown*, Case No. 5:14-CR-58-FL, 2014 WL 1572533, at *4 (E.D.N.C. Apr. 18, 2014) ("Even though CIPA allows § 4 proceedings to be held *ex parte*, and courts have upheld the *ex parte* nature of these proceedings, the court's decision-making regarding the "relevant and helpful" nature of certain classified materials may be enhanced if cleared defense counsel are involved in some adversary proceeding with the government.").

### 2. If the Proceedings do Occur *Ex Parte,* the Court Must Ensure that the Government Adheres to CIPA's Requirements and Produces All Discoverable Evidence

If the Court nonetheless proceeds *ex parte* on a government's request pursuant to Section 4 of CIPA, it must ensure the government has met the following requirements:

*First*, "[w]hen considering a motion to withhold classified information from discovery, a district court must first determine whether, pursuant to the Federal Rules of Criminal Procedure, statute, or the common law, the information at issue is discoverable." *United States v. Sedaghaty*, 728 F.3d 885, 904 (9th Cir. 2013).

It is worth noting that CIPA is a procedural statute. It "does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence." *Id.* at 903; *see also United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989) (CIPA § 4 "creates no new rights of or limits on discovery of a specific area of classified information"); *United States v. Pickard*, 236

8

F.Supp.2d 1204, 1209 (D. Kan. 2002) ("CIPA does not create any new rights or limits on discovery in the area of classified information."). Thus, the Court must assess whether the information at issue is discoverable under existing rules and law, irrespective of the information's classified status.

Federal Rule of Criminal Procedure 16 requires the government to produce: (1) relevant statements made by the defendant, (2) the defendant's prior criminal record, (3) documents or other objects that are "material" to preparing the defense or that the government intends to use in its case-in-chief, (4) reports of a scientific nature or other reports that relate to the case, and (5) a summary of expert testimony on which the government intends to rely. In particular, the government must produce information "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "Materiality is a low threshold; it is satisfied so long as 'the information . . . would have helped'" prepare a defense. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (quoting *United States v. Doe*, 705 F.3d 1134, 1151 (9th Cir. 2013)). "Information is material even if it simply causes a defendant to 'completely abandon' a planned defense and 'take an entirely different path.'" *Id.* Moreover, information that "undermines the reliability of other purportedly inculpatory evidence, or that names potential witnesses capable of providing material evidence may all be material." *Al Odah v. United States*, 559 F.3d 539, 546 (D.C. Cir. 2009). In short, classified information need not be "exculpatory on its face" to be "at least helpful," or material. *Id.* at 545.

In determining whether information is relevant and material to the defense, some courts have opted to meet with defense counsel *in camera* and *ex parte* to gain a better understanding of the defense that will be asserted. *See United States v. Ng Lap Seng*, 2017 WL 2715213, *1 (S.D.N.Y. 2017); *United States v. Lustyik*, 2014 WL 994642, *1 n.2 (D. Utah 2014); *United States v. Mostafa*, 992 F.Supp.2d 335 (S.D.N.Y. 2014). Defense counsel is open to this procedure should the Court find it helpful.

In addition to what is required under Rule 16, the government is required under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny to produce information that is favorable to the defense and material to guilt or punishment. The government's *Brady* obligations extend to all exculpatory information in the government's possession. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995). *Giglio* requires the government to disclose all statements or promises, express or implied, made to any government witnesses, in exchange for their testimony, and any other information that could feasibly be used to impeach government witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). Furthermore, the Jencks Act requires the government to produce statements of government witnesses that relate to the subject matter of the witness's testimony. 18 U.S.C. § 3500.

Notably, the plain language of CIPA § 4 applies only to documents that the government must produce under Rule 16. 18 U.S.C. App. 3, § 4 (referring to "documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure"). Thus, § 4 should not be used to withhold or restrict discovery required to be produced under *Brady*, *Giglio*, or the Jencks Act.

*Second*, if the Court decides the government possesses classified information that must be produced in discovery, the Court must determine whether the government has made a "sufficient showing" that it cannot disclose the information, or cannot disclose it in the form in which it currently exists. 18 U.S.C. App. 3, § 4. The government must show that "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged." *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010). The Court must hold the government to this standard, and not simply treat the government's word as *ipse dixit*.

*Third*, if the material at issue is discoverable and the government has made a sufficient showing, "the court must next determine whether the government has made a formal claim of the state secrets privilege, 'lodged by the head of the department which has actual control over the matter, after actual personal consideration by that officer.'"

*Sedaghaty*, 728 F.3d at 904 (quoting *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998)); *see also United States v. Shih*, Case No. 2:18-cr-00050-JAK, ECF No. 198 (C.D. Cal. Oct. 24, 2018) (minute order discussing the state secrets privilege requirement).  This is required by Ninth Circuit precedent, and the Court must ensure that the government has made this claim.

This Court must also substantively review the applicability of the state secrets privilege, which properly applies only if "there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged." *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008) (internal quotation marks omitted).  Notably, even if the state secrets privilege properly applies, that is not the end of the inquiry; as the Second Circuit explained, the state secrets privilege "must give way under some circumstances to a criminal defendant's right to present a meaningful defense." *Id.* at 79.

*Fourth*, if the "court concludes that the material is discoverable and that the state secrets privilege applies, then the court must determine whether the evidence is 'relevant and helpful to the defense of an accused.'" *Sedaghaty*, 728 F.3d at 904 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).

Finally, if the Court determines that all of these requirements have been met, it "may authorize" the government to use one of the three means of protecting classified information outlined in Section 4 of CIPA: deletion of specified items, substituting a summary of the information, or substituting a statement admitting relevant facts.  18 U.S.C. App. 3, § 4.

In determining which restriction to use, the Court should balance the government's interest in protecting the information against the defendant's need for it.  *See United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988).  In balancing these interests, the Court should keep in mind that the "fundamental purpose" of CIPA "is to protect [] and restrict [] the discovery of classified information in a way that does not impair the defendant's right to a fair trial." *United States v. Dumeisi*, 424 F.3d 566,

578 (7th Cir. 2005) (quoting *United States v. O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002)).  In debating the statute, CIPA's framers confirmed that it "rests on the presumption that the defendant should not stand in a worse position, because of the fact that classified information is involved, than he would without [CIPA]."  S. Rep. No. 96-823, at 9 (1980), reprinted in 1980 U.S.C.C.A.N. 4294, 4302.

Another district court explained the weighing of these competing interests as follows:

> Any balancing must fully protect the defendant's interest in a fair trial.  The balancing must also afford due regard to the government's interest in maintaining national security.  When the two interests come squarely into conflict, <u>the defendant's right to a fair trial should prevail</u> because the government can always choose to preserve national security by dropping the prosecution, but the bedrock principle of due process dictates that a citizen should never be convicted in an unfair trial.  The Supreme Court has recognized that dropping a prosecution is a choice sometimes required of the sovereign.  *See Jencks v. United States*, 353 U.S. 657, 672 (1957) ("The burden is the Government's . . . to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession.").

*United States v. Turi*, 143 F. Supp.3d 916, 921 (D. Ariz. 2015) (emphasis added).

To the extent the Court permits the Government to withhold any purportedly classified discovery, Mr. Alcharihi intends with this motion to preserve objections to that decision under Rule 16, the Jenks Act, *Brady*, *Giglio*, and the Constitution's due process and confrontation clauses.

### III. CONCLUSION

For the foregoing reasons, Mr. Alcharihi respectfully requests the disclosure of the Court's findings pursuant to CIPA.  Furthermore, this Court should not proceed *ex parte* absent a particularized showing of <u>exceptional circumstances.</u>

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: February 1, 2022      By  */s/ Isabel Bussarakum*
ISABEL BUSSARAKUM
ASHLEY MAHMOUDIAN
Deputy Federal Public Defenders
Attorneys for MOHAMAD ALCHARIHI

13