CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD YASSIN ALCHARIHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-307-GW |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION TO STRIKE IMPROPER ALLEGATIONS FROM THE INDICTMENT OR DISMISS THE INDICTMENT** |
| MOHAMAD YASSIN ALCHARIHI, | January 12, 2023 at 8:00 a.m. |
| Defendant. | The Honorable George H. Wu |

Defendant Mohamad Yassin Alcharihi, by and through his attorneys of record, hereby moves this Honorable Court for an order striking improper allegations from the indictment or, alternatively, dismissing the indictment.

//

//

i

This Motion is based on the attached Memorandum of Points and Authorities, all files and records in this case, and any further evidence and argument as may be adduced at the hearing on this Motion.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  December 1, 2022

By   /s/ Joshua D. Weiss

ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSHUA D. WEISS
Deputy Federal Public Defenders
Attorneys for MOHAMAD ALCHARIHI

ii

## **Table of Contents**

I. INTRODUCTION ................................................................................................. 1

II. ARGUMENT ................................................................................................... 2

    A.    The Court should strike the indictment's allegations regarding the "quality" of the mosaic ................................................................................ 2

        1.    The indictment's allegations as to the "quality" of the mosaic fall outside the scope of conduct proscribed by 18 U.S.C. § 541 ...... 2

        2.    The indictment's "quality" allegations fail to state an offense and should be stricken under Rule 12(b)(3)(B)(v) ........................... 6

        3.    The "quality" allegations should also be stricken as prejudicial surplusage ............................................................................. 8

    B.    If the term "quality" is interpreted as broadly as the indictment implies, then Section 541 is unconstitutionally vague ............................. 11

III. CONCLUSION ............................................................................................... 15

1

## <u>Table of Authorities</u>

2

**Page(s)**

3

**Federal Cases**

4

5

*Brighton Bldg. & Maintenance Co.*,
   435 F. Supp. 222 (N.D. Ill. 1977)...................................................................10

6

7

*Burnstein v. United States*,
   55 F.2d 599 (9th Cir. 1932) ..................................................................4

8

9

*Colautti v. Franklin*,
   439 U.S. 379 (1979)...................................................................12

10

11

*Grayned v. City of Rockford*,
   408 U.S. 104 (1972)...................................................................11

12

13

*Gross v. FBL Fin. Servs., Inc.*,
   557 U.S. 167 (2009)...................................................................3

14

*In re Cliquot's Champagne*,
   70 U.S. 114 (1865)...................................................................1, 3, 4, 13

15

16

*K Mart Corp. v. Cartier, Inc.*,
   486 U.S. 281 (1988)...................................................................3

17

18

*Kolender v. Lawson*,
   461 U.S. 353 (1983)...................................................................11

19

20

*Merchants' Ins. Co. v. Ritchie*,
   72 U.S. 541 (1866)...................................................................3

21

22

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
   138 S. Ct. 617 (2018)...................................................................3

23

24

*Panther v. Hames*,
   991 F.2d 576 (9th Cir. 1993) ..................................................................12

25

*Schwartzmiller v. Gardner*,
   752 F.2d 1341 (9th Cir. 1984) ..................................................................12

26

27

*Skilling v. United States*,
   561 U.S. 358 (2010)...................................................................14

28

*Smith v. United States*,
   508 U.S. 223 (1993) ...........................................................................................3

*Turf Center, Inc. v. United States*,
   325 F.2d 793 (9th Cir. 1963) .........................................................................12

*United States v. Balistrieri*,
   346 F.Supp. 341 (E.D.Wis.1972) .....................................................................6

*United States v. Birchfield*,
   486 F. Supp. 137 (M.D. Tenn. 1980) ...............................................................6

*United States v. Boren*,
   278 F.3d 911 (9th Cir. 2002) ............................................................................6

*United States v. Cooper*,
   384 F. Supp. 2d 958 (W.D. Va. 2005) ............................................................10

*United States v. Daniel*,
   No. 09-CR-00993-MMM, 2010 WL 11507585
   (C.D. Cal. July 28, 2010) .............................................................................8, 9

*United States v. Garcia-Paz*,
   282 F.3d 1212 (9th Cir. 2002) ......................................................................8, 9

*United States v. Hedaithy*,
   392 F.3d 580 (3d Cir. 2004) .........................................................................6, 7

*United States v. Hubbard*,
   474 F. Supp. 64 (D.D.C. 1979) ......................................................................10

*United States v. Jae Gab Kim*,
   449 F.3d 933 (9th Cir. 2006) ..........................................................................11

*United States v. Jenkins*,
   785 F.2d 1387 (9th Cir. 1986) ..........................................................................8

*United States v. Johnson*,
   135 S.Ct. 2551 (2015) ...............................................................................13, 14

*United States v. Kilbride*,
   584 F.3d 1240 (9th Cir. 2009) ...................................................................12, 13

*United States v. Lopez*,
   4 F.4th 706 (9th Cir. 2021) ...............................................................................8

*United States v. Lyle*,
   742 F.3d 434 (9th Cir. 2014) .................................................................... 6

*United States v. Mandel*,
   415 F. Supp. 997 (D. Md. 1976) ............................................................. 10

*United States v. Martin*,
   No. 07-CR-1205-CBM, 2009 WL 667299 (C.D. Cal. Mar. 10, 2009) ............... 8

*United States v. Miller*,
   471 U.S. 130 (1985) ................................................................................ 7

*United States v. Nat'l Dairy Prods Corp.*,
   372 U.S. 29 (1963) ........................................................................... 12, 13

*United States v. Poindexter*,
   725 F. Supp. 13 (D.D.C. 1989) .............................................................. 10

*United States v. Sahakian*,
   No. 02-CR-938-VAP, 2008 WL 11383346 (C.D. Cal. July 28, 2008) ............... 9

*United States v. Santos*,
   553 U.S. 507 (2008) ................................................................................ 5

*United States v. Singh*,
   No. 2:14-CR-00648-CAS-9, 2017 WL 3701448 (C.D. Cal. Aug. 17,
   2017) ................................................................................................ 8, 9

*United States v. Terrigno*,
   838 F.2d 371 (9th Cir. 1988) ............................................................... 8, 9

*United States v. Vastola*,
   670 F. Supp. 1244 (D.N.J. 1987) ........................................................... 10

*United States v. Washam*,
   312 F.3d 926 (8th Cir. 2002) ................................................................. 12

*United States v. Zhi Yong Guo*,
   634 F.3d 1119 (9th Cir. 2011) ............................................................... 11

**Federal Statutes and Rules**

18 U.S.C. § 541 .............................................................................*passim*

18 U.S.C. § 924 ..................................................................................14

Fed. R. Crim. P. 7 ................................................................................8

Fed. R. Crim. P. 12(b)(3)(B)(v) .......................................................6, 7, 8

Revenue Act of March 3, 1863, 12 Stat. 737 ..........................................4

**Regulations**

19 C.F.R. § 10.582 ...........................................................................4, 5

19 C.F.R. § 122.5 ................................................................................5

19 C.F.R. § 147.11 ..............................................................................5

19 C.F.R. § 220.2(h)(2) .......................................................................4

**Other Authorities**

U.S. Department of Agriculture, *Grades of Olive Oil*,
    https://www.ams.usda.gov/grades-standards/olive-oil-and-olive-
    pomace-oil-grades-and-standards (last visited Nov. 18, 2022) ...................12, 13

Quality, Black's Law Dictionary (11th ed. 2019) ......................................3

Quality, Merriam-Webster Dictionary, https://www.merriam-
    webster.com/dictionary/quality ...........................................................3

v

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The Government charged Mohamad Alcharihi with violating 18 U.S.C. § 541, which criminalizes knowingly importing goods "upon a false classification as to quality or value." 18 U.S.C. § 541. That is, someone can violate Section 541 by mispresenting the value of imported goods, or by misrepresenting their quality. Here, Mr. Alcharihi is charged with importing a mosaic upon false classification of both its "value" and "quality." (*See* "Indictment" at 1-2, Dkt. No. 1.) But the indictment's allegations as to "quality" fail to state an offense. Mr. Alcharihi brings this motion to narrow the charges—and subsequently the trial—to the allegations that actually state an offense under Section 541, namely the allegations as to the mosaic's value.

Under Section 541, the "quality" of merchandise refers to its grade or degree of distinction as compared to other goods of the same kind. So, for example, it would violate Section 541's "quality" provision to knowingly misclassify "1st quality" wine as any lesser grade. *See In re Cliquot's Champagne*, 70 U.S. 114, 118 & 141 (1865). Here, the indictment alleges that Mr. Alcharihi "knowingly misrepresented the quality of the mosaic, *including what the mosaic depicted*." (Indictment at 2 (emphasis added).) But "what the mosaic depicted"—a claim about the mosaic's subject matter—is not a statement about its "quality." The indictment's allegations as to "quality" thus fall beyond the scope of conduct proscribed by Section 541 and do not state an offense.

Because the indictment's allegations about the mosaic's value do state an offense, Mr. Alcharihi does not seek to dismiss the entire indictment. Instead, the proper remedy is to strike the allegations about "quality" because they do not allege a violation of Section 541. Moreover, the "quality" allegations are highly prejudicial because they purport to allege a violation that is not legally cognizable. Keeping the "quality" allegations in the charge would broaden the scope of the trial and mislead the

1

jury into believing that a misrepresentation as to "what the mosaic depicted" could constitute a basis for conviction under Section 541.

Alternatively, if the Court concludes that the term "quality" in Section 541 is not limited to misrepresentations about imported goods' comparative degree of distinction or grade, and can instead encompass a broad and undefined class of misrepresentations, then the statute's reference to "quality" is unconstitutionally vague. The unconstitutional indictment must then be dismissed.

## II. ARGUMENT

**A.    The Court should strike the indictment's allegations regarding the "quality" of the mosaic**

**1.    The indictment's allegations as to the "quality" of the mosaic fall outside the scope of conduct proscribed by 18 U.S.C. § 541**

Section 541 criminalizes knowingly importing "goods, wares, or merchandise . . . upon a false classification as to quality or value."[1]  The term "quality" is not ambiguous; it refers to the grade or degree of excellence of an imported good as compared to other goods of the same type.  This definition is the one used by both legal and colloquial dictionaries, the Supreme Court in addressing a predecessor to Section 541, and regulations promulgated by the United States Customs and Border Protection ("CBP").  The indictment's allegation that Mr. Alcharihi misrepresented the quality of a mosaic by misrepresenting "what the mosaic depicted" thus does not fall within the scope of conduct proscribed by the statutory text.

---

[1] The full text of the statute provides:

Whoever knowingly effects any entry of goods, wares, or merchandise, at less than the true weight or measure thereof, or upon a false classification as to quality or value, or by the payment of less than the amount of duty legally due, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 541.

2

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) (internal quotation marks omitted); *see also Merchants' Ins. Co. v. Ritchie*, 72 U.S. 541, 545 (1866) ("[W]hen terms are unambiguous we may not speculate on probabilities of intention."). When "the plain language" of a statute "is unambiguous, our inquiry begins with the statutory text, and ends there as well." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 631 (2018) (internal quotation marks and citation omitted); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). Moreover, the plain terms of a statute must be interpreted in context. *Smith v. United States*, 508 U.S. 223, 229 (1993) ("Language, of course, cannot be interpreted apart from context.").

In the context of describing imported merchandise, the term "quality" has a specific, unambiguous meaning: both legal and colloquial dictionaries define merchandise's "quality" as referring to its grade or degree of excellence as compared to other goods of the same kind. For example, Black's Law Dictionary defines "quality" as: "The character or degree of excellence of a person or substance, esp. in comparison with others," as in, for example, "the quality of work performed under the contract." Quality, Black's Law Dictionary (11th ed. 2019). The Merriam-Webster Dictionary definition is similar: "Quality: degree of excellence : GRADE."[2] Quality, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/quality.

These dictionary definitions—defining "quality" as the grade or comparative distinction of merchandise—track the Supreme Court's usage of the term in addressing a predecessor to Section 541. *See In re Cliquot's Champagne*, 70 U.S. 114 (1865). In *Cliquot's Champagne*, the Supreme Court affirmed a conviction for misrepresenting

---

[2] The term "quality" has other uses that are obviously irrelevant in the context of describing imported merchandise. For example, "quality" can refer to normative "properties," as in the phrases "leadership quality" or "greed is a negative quality." *See* Quality, Black's Law Dictionary (11th ed. 2019).

the value of imported wine under the Revenue Act of March 3, 1863, 12 Stat. 737, and in doing so it repeatedly used the term "quality" to refer to the grade of imported wine. *See id.* at 118, 141-42.  First, in describing the facts, *Cliquot's Champagne* explained that the imported wine at issue was of "1st quality."  *Id.* at 118.  The Court then addressed evidentiary objections to the trial court's decision to admit evidence about wines that arguably "did not appear to be the same in quality with those libelled." *Id.* at 141.  Later, the Court addressed another evidentiary issue regarding "champagne wines different in kind, price, and quality from those wines proceeded against in this action."  *Id.* at 142.  Thus, throughout its opinion, the Court used the term "quality" to refer to the grade of the wines, as distinct from the "kind" of wine or other descriptions of it.  *See id.*; *see also Burnstein v. United States*, 55 F.2d 599, 601 (9th Cir. 1932) (in appeal regarding whether sale of bitters violated alcohol prohibition laws, noting that the bitters were advertised as being of "excellent quality and purity").

Regulations promulgated by CBP—the agency tasked with enforcing customs laws—also repeatedly use the term "quality" to refer exclusively to imported merchandise's grade, and not to its general appearance, physical characteristics, or other descriptors.  For example, in defining customs benefits for American manufacturers, CBP regulations distinguish between a good's "quality" and its "appearance," "texture," and the "materials from which" the goods are "made."  *See* 19 C.F.R. § 220.2(h)(2) ("'Like' article means a domestic article that is substantially identical in inherent or intrinsic characteristics (i.e., materials from which made, appearance, quality, texture, etc.) as the article that is the subject of a petition for duty suspension or reduction.").  In another set of regulations, CBP defines rules for a free trade agreement with Central American nations, and explains that "Identical goods" are "goods that are produced in the same country and are the same in all respects, including physical characteristics, quality, and reputation, but excluding minor differences in appearance."  19 C.F.R. § 10.582.  Once again, "quality" is distinguished from

4

"physical characteristics" and "appearance."  *See id.*  The regulations also describe the required entries on different types of customs forms and repeatedly distinguish between the description of the goods and their quality.  For example, one regulation describes the customs form for goods imported for a trade fair, which requires separate entries for the "package and contents"—i.e. a description of the goods—and the goods' "quality." 19 C.F.R. § 147.11.  The regulations even specify that private parties may reproduce customs forms so long as, among other requirements, "the specified size, wording arrangement, style and size of type, and quality of paper are used."  19 C.F.R. § 122.5. Once again, "quality" is being used to describe the grade of the object—here, paper. *Id.*  In sum, in regulating customs enforcement, CBP consistently uses the term "quality" to refer to merchandise's grade, and not a description of its appearance or other physical characteristics.

Dictionary definitions, the Supreme Court, and CBP regulations all lead to the same conclusion:  the plain meaning of the term "quality" in Section 541 refers specifically to the grade or comparative excellence of imported merchandise.[3]  A claim about the subject matter a mosaic depicts—whether it depicts wildlife, humans, deities, etc.—is not a claim about its "quality."  Consequently, the indictment's allegation that Mr. Alcharihi misrepresented "what the mosaic depicted" is not an allegation about the quality of the mosaic.  The indictment's allegation that Mr. Alcharihi misrepresented the "quality" of a mosaic does not allege a violation of the statute.

---

[3] Mr. Alcharihi posits that the statutory text is unambiguous.  But if the Court concludes that there is any ambiguity in the statute, the "rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  *United States v. Santos*, 553 U.S. 507, 514 (2008).  Stated otherwise, "[u]nder a long line of our decisions, the tie must go to the defendant."  *Id.*  Thus, even if there is some ambiguity in the statute, the above-described definition for the statute's use of the term "quality" must still control.

### 2. The indictment's "quality" allegations fail to state an offense and should be stricken under Rule 12(b)(3)(B)(v)

As addressed above, the indictment's allegations as to the mosaic's "quality" address conduct outside the scope proscribed by Section 541. The "quality" allegations should therefore be stricken for failing to state an offense under Federal Rule of Criminal Procedure 12(b)(3)(B)(v).

Under Rule 12(b)(3)(B)(v), a defendant can challenge an indictment's "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). In considering a motion "for failure to state an offense, the district court is bound by the four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The Court "must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (citation omitted). "A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence. The Court should not consider evidence not appearing on the face of the indictment." *Boren*, 278 F.3d at 914 (alteration and citation omitted).

"[A] charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Hedaithy*, 392 F.3d 580, 587 (3d Cir. 2004) (citation omitted). While Rule 12(b)(3)(B)(v) motions often seek dismissal, the proper remedy is to strike only portions of a charge where a single count alleges multiple means of committing an offense and one of those means fails to state an offense but other alleged means are legally valid. The courts can thereby strike the legally invalid means from the indictment but preserve the charge that does state an offense. *See United States v. Birchfield*, 486 F. Supp. 137, 139–40 (M.D. Tenn. 1980) (striking portion of charge alleging a conspiracy to commit an offense against the United States, where one of the charged predicate offenses failed to state an offense but second predicate was legally valid); *United States v. Balistrieri*, 346 F.Supp. 341

6

(E.D.Wis.1972) (striking two out of three predicate offenses from conspiracy charge for failing to state an offense); *see also United States v. Miller*, 471 U.S. 130, 145 (1985) (holding that "where an indictment charges several offenses, or the commission of one offense in several ways," the court may strike "one offense or one alleged method of committing it" (citation omitted)).

Here, the indictment alleges two means of violating Section 541—that Mr. Alcharihi imported a mosaic upon false classification of (1) its "value," and (2) its "quality." (*See* Indictment at 1-2.) But the only legally cognizable charge in the indictment is that Mr. Alcharihi violated Section 541 by misrepresenting the value of the mosaic. The "quality" allegations fail to state an offense under Rule 1212(b)(3)(B)(v). As addressed above, the indictment's allegation that Mr. Alcharihi misrepresented "what the mosaic depicted" is not an allegation about the quality of the mosaic and therefore "fall[s] beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *Hedaithy*, 392 F.3d at 587. Because the allegations regarding the "quality" of the mosaic fail to state an offense, the Court should strike them from the indictment. *See Miller*, 471 U.S. at 145 (holding that "where an indictment charges several offenses, or the commission of one offense in several ways," the court may strike "one offense or one alleged method of committing it" (citation omitted)).

1

2

### 3.     The "quality" allegations should also be stricken as prejudicial surplusage

3

4

5

6

7

8

9

To the extent Rule 12 does not offer the Court sufficient basis to strike the indictment's allegations as to "quality," they should also be stricken as prejudicial surplusage under Rule 7.  The allegations as to "quality" are not relevant to the actual charge and are thus surplusage.  And because the "quality" allegations purport to present an alternative, legally invalid, means of committing the offense charged, their inclusion in the indictment is highly misleading and prejudicial.  The surplusage analysis thus offers an independent reason to strike the "quality" allegations.

10

#### a.     Legal standard for motion to strike surplusage

11

12

13

14

15

16

17

Federal Rule of Criminal Procedure 7 provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment."  Fed. R. Crim. P. 7(d). "Surplusage is language that 'goes beyond alleging elements of the crime.'"  *United States v. Daniel*, No. 09-CR-00993-MMM, 2010 WL 11507585, at *4 (C.D. Cal. July 28, 2010) (quoting *United States v. Jenkins*, 785 F.2d 1387, 1392 (9th Cir. 1986)); *see also United States v. Lopez*, 4 F.4th 706, 726 (9th Cir. 2021); *United States v. Garcia-Paz*, 282 F.3d 1212, 1217 (9th Cir. 2002).

18

19

20

21

22

23

24

25

26

27

"While surplusage is not *per se* improper, the inclusion of surplusage must not be allowed to prejudice a defendant in the context of his case."  *United States v. Singh*, No. 2:14-CR-00648-CAS-9, 2017 WL 3701448, at *12 (C.D. Cal. Aug. 17, 2017) (alteration and quotation marks omitted).  "Thus, a court will exercise its discretion to strike surplusage from an indictment where necessary 'to protect a defendant against prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'"  *Daniel*, 2010 WL 11507585, at *4 (quoting *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988)).  And even where surplusage has some relevance to a charge, courts will strike it from the indictment if its relevance is outweighed by its prejudicial effects.  *United States v. Martin*, No. 07-CR-1205-CBM, 2009 WL 667299,

28

at *5 (C.D. Cal. Mar. 10, 2009) (granting motion to strike because "[w]hile there is some probative value to these allegations, it is outweighed by the prejudice to Defendants"); *United States v. Sahakian*, No. 02-CR-938-VAP, 2008 WL 11383346, at *5–6 (C.D. Cal. July 28, 2008) (striking prejudicial allegations where the indictment "contains ample language aside from these allegations that is sufficient" to satisfy the Government's theory of their relevance).

### b.  The indictment's allegations about the "quality" of the mosaic are highly prejudicial surplusage

Since, as addressed above, the allegations as to the mosaic's "quality" do not state a violation of Section 541, they are surplusage. *Daniel*, 2010 WL 11507585, at *4 (allegations that go "beyond alleging elements of the crime" are surplusage); *see also Garcia-Paz*, 282 F.3d at 1217. And the surplusage should be stricken from the indictment to protect Mr. Alcharihi "against prejudicial or inflammatory allegations that are neither relevant nor material to the charges.'" *Daniel*, 2010 WL 11507585, at *4 (quoting *United States v. Terrigno*, 838 F.2d 371, 373 (9th Cir. 1988)); *see also Singh*, 2017 WL 3701448, at *12.

To start, the indictment's legally invalid allegations as to "quality" have nothing to do with the legally cognizable allegations about "value." Specifically, the invalid allegations as to "quality"—that Mr. Alcharihi misrepresented "what the mosaic depicted"—are entirely distinct from the legally valid charge that Mr. Alcharihi "claimed and caused to be claimed, that he was importing a shipment of a mosaic and other items valued at $2,199, when, in fact, defendant Alcharhihi knowingly imported a mosaic that itself was valued at more than $2,199." (Indictment at 1-2.) The allegations as to quality are thus "neither relevant nor material to" the legally cognizable charge. *Daniel*, 2010 WL 11507585, at *4.

Additionally, and most crucially, the surplusage is highly prejudicial. It gives the misleading impression that there are two alternative means by which Mr. Alcharihi

9

could have violated Section 541—either by misrepresenting the mosaic's value or its quality.  On the contrary, though, even if the Government could prove the allegations about the mosaic's purported "quality"—that Mr. Alcharihi misrepresented "what the mosaic depicted"—it would not have proven a violation of Section 541.  Keeping the "quality" allegations in the indictment would mislead the jury into believing that a misrepresentation as to "what the mosaic depicted" could constitute an independent basis for conviction under Section 541.

Removing a legally invalid charge from the indictment is a quintessential reason to strike surplusage.  Indeed, courts routinely strike allegations from indictments that imply that a defendant committed legal violations other than the one properly charged. *See, e.g.*, *United States v. Vastola*, 670 F. Supp. 1244, 1254 (D.N.J. 1987) ("Anything in the indictment that allows the jury to infer involvement with uncharged crimes . . . is improper"); *United States v. Poindexter*, 725 F. Supp. 13, 35 (D.D.C. 1989) (striking terms such as "among other things" and "at least" since they "could improperly indicate to a jury that the defendants were charged with offenses and conduct in addition to those actually listed in the indictment"); *United States v. Hubbard*, 474 F. Supp. 64, 83 (D.D.C. 1979) (striking reference to confrontation with FBI which was not charged and could be prejudicial); *Brighton Bldg. & Maintenance Co.*, 435 F. Supp. 222, 230-31 (N.D. Ill. 1977) (terms "at least" and "among other things" stricken as prejudicial surplusage because they suggested to jury that defendant was accused of uncharged crimes); *United States v. Mandel*, 415 F. Supp. 997, 1009 (D. Md. 1976) (striking reference to alleged violation of Maryland's Code of Ethics); *cf. United States v. Cooper*, 384 F. Supp. 2d 958, 960 (W.D. Va. 2005) (striking defendant's history of non-compliance with federal administrative agencies).

The reasoning underlying these decisions applies with particular force in this case.  The indictment does not simply *imply* that Mr. Alcharihi committed other illegal acts, but it explicitly charges an invalid means of committing the offense.  The

indictment's reference to the mosaic's "quality" is highly prejudicial surplusage that should be stricken from the indictment.

**B.     If the term "quality" is interpreted as broadly as the indictment implies, then Section 541 is unconstitutionally vague**

If Section 541 is interpreted to criminalize a broad range of misrepresentations beyond those referenced by the plain text of the statute, then the statute's "prohibitions are not clearly defined" and thus fail to satisfy the Constitution's due process requirements. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). More specifically, if the statutory term "quality" is interpreted to encompass a broad range of physical characteristics, including "what the mosaic depicted," then the statute is unconstitutionally vague, at least as applied to Mr. Alcharihi, and the indictment must be dismissed.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108. "A criminal statute is void for vagueness if it is 'not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement.'"[4] *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1121 (9th Cir. 2011) (quoting *United States v. Jae Gab Kim*, 449 F.3d 933, 942 (9th Cir. 2006)); *see also Kolender v. Lawson*, 461 U.S. 353, 357 (1983) (Due process "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited."). "The statute will meet the requirement of 'certainty required by the Constitution if its language conveys sufficiently definite warning as to the proscribed conduct when measured by common

---

[4] The second requirement—that the legislature "establish minimal guidelines to govern law enforcement"—is arguably "the more important aspect of the vagueness doctrine." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citation omitted). That is because where "the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep that allows policemen, prosecutors, and juries to pursue their personal predilections." *Id.* (alterations and quotation marks omitted).

11

understanding and practices.'" *Panther v. Hames,* 991 F.2d 576, 578 (9th Cir. 1993) (quoting *Turf Center, Inc. v. United States*, 325 F.2d 793, 795 (9th Cir. 1963)).  Statutes that involve criminal sanctions require enhanced clarity.  *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009).

A statute can be unconstitutionally vague on its face or as applied to the facts of a specific case.  *See Schwartzmiller v. Gardner*, 752 F.2d 1341, 1348 (9th Cir. 1984).  Under an "as applied" analysis, "a statute must of necessity be examined in the light of the conduct with which a defendant is charged."  *United States v. Nat'l Dairy Prods Corp.*, 372 U.S. 29, 33 (1963).  A "statute is unconstitutionally vague as applied if it failed to put a defendant on notice that *his* conduct was criminal."  *Kilbride*, 584 F.3d at 1256-57 (emphasis added). This inquiry does not, however, look at what the particular defendant understood the statute to mean; rather, it looks at what a person of ordinary intelligence would reasonably understand the statute to prohibit.  *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002) (citing *Nat'l Dairy Prods. Corp.*, 372 U.S. at 32-33); *see also Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (stating that a statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute") (internal quotation marks omitted).

Here, the text of the statute criminalizes knowingly importing goods "upon a false classification as to quality or value."  18 U.S.C. § 541.  This language puts a person of ordinary intelligence on notice that they would be committing a criminal act by misrepresenting the value of merchandise, or by misrepresenting the merchandise's quality, meaning its grade or degree of distinction as compared to other goods of the same kind.  Thus, for example, a person reading the statute would understand that it is a crime to import olive oil of the quality "extra virgin" and claim at customs that it is lower quality "refined olive oil" or "olive oil pomace."  *See* U.S. Department of Agriculture, *Grades of Olive Oil*, https://www.ams.usda.gov/grades-standards/olive-oil-

and-olive-pomace-oil-grades-and-standards (last visited Nov. 18, 2022).  As addressed above, this is the understanding an ordinary person would derive from dictionaries as well as the regulations promulgated by CBP—the agency tasked with enforcing customs laws.

The statute does not put a person on notice that misrepresentations about other features of merchandise would constitute a violation.  The statute does not state, for example, that it is a crime to misrepresent the description of merchandise; its place of origin; or any other of the myriad descriptors that can apply to imported goods.  So, in *Cliquot's Champagne*, the defendant could have violated the law if he misidentified "1st quality" wine as "2nd quality."  *See* 70 U.S. at 118 & 141.  But it would not have been a misrepresentation as to quality to misidentify 1st quality wine from Italy as 1st quality wine from France.

The indictment alleges that Mr. Alcharihi "knowingly misrepresented the quality of the mosaic, including what the mosaic depicted."  (Indictment at 2.)  As addressed above, a person of ordinary intelligence would not understand the "quality" of a mosaic to encompass a description of what it depicts.  The statute thus failed to put Mr. Alcharihi on notice that the conduct with which he is charged is criminal.  The statute is thus "unconstitutionally vague as applied" because it "failed to put a defendant on notice that *his* conduct was criminal." *Kilbride*, 584 F.3d at 1256-57 (emphasis added); *see also Nat'l Dairy Prods Corp.*, 372 U.S. at 33 ("In determining the sufficiency of the notice a statute must of necessity be examined in the light of the conduct with which a defendant is charged.").

If the term "quality" is interpreted to encompass a broad range of physical characteristics, including "what the mosaic depicts," then "the indeterminacy of the wide-ranging inquiry required by the [statute] both denies fair notice to defendants and invites arbitrary enforcement by judges." *United States v. Johnson*, 135 S.Ct. 2551, 2557 (2015).  In *Johnson*, the Supreme Court considered whether the residual clause in

13

the Armed Career Criminal Act (ACCA) was unconstitutionally vague. *See id.* That statute imposes an increased mandatory minimum sentence upon a defendant with three prior convictions for a "violent felony," which is defined, in part, to include any felony that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The Supreme Court concluded that "[w]e are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Id.* The Supreme Court struck down the clause as unconstitutional because it denied due process of law. *Id.* So too, here. If the term "quality" in Section 541 is not limited to the grade or comparative degree of excellence of goods, and is instead interpreted to encompass other misrepresentations in describing goods, then the "wide-ranging inquiry required" in guessing what conduct is covered by the statute denies fair notice to defendants and invites arbitrary enforcement.

The Court is tasked with avoiding unconstitutional constructions of a statute if it is "amenable to a limiting construction" that passes constitutional muster. *Skilling v. United States*, 561 U.S. 358, 405 (2010) ("It has long been our practice, however, before striking a federal statute as impermissibly vague, to consider whether the prescription is amenable to a limiting construction."). Such a limiting construction is available here. A person of ordinary intelligence reading Section 541's "quality" clause would understand it to prescribe a definite range of conduct; it criminalizes misrepresentations about the grade or comparative degree of excellence of imported merchandise. Under such a construction, the statute provides fair notice of the conduct it prescribes. But if the Court concludes that the term "quality" in Section 541 is not so limited and instead encompasses a broad range of undefined conduct, then the statute must be struck down as unconstitutionally vague as applied to Mr. Alcharihi.

14

### III. CONCLUSION

For the foregoing reasons, Mr. Alcharihi respectfully asks the Court to strike allegations regarding the mosaic's "quality" from the indictment or, alternatively, dismiss the indictment.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  December 1, 2022          By   /s/ Joshua D. Weiss

ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSHUA D. WEISS
Deputy Federal Public Defender
Attorney for MOHAMAD ALCHARIHI

15