E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3359/8644/1785
     E-mail:    Mark.A.Williams@usdoj.gov
                Matthew.O'Brien@usdoj.gov
                Maxwell.Coll@usdoj.gov

KENNTEH A. POLITE
Assistant Attorney General
Criminal Division
CHRISTIAN A. LEVESQUE (D.C. Bar No. 501778)
Trial Attorney
Human Rights and Special Prosecutions Section
United States Department of Justice
     1301 New York Ave
     Washington, DC 20530
     Telephone: (202) 538-2373
     E-mail:    Christian.Levesque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-307-GW |
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT MOSAIC AS EVIDENCE AT TRIAL |
| v. | Hearing Date: January 26, 2023 |
| MOHAMAD YASSIN ALCHARIHI, aka "Mohamad al-Sharihi" and "Mohamad AlCharihi, | Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>             Hon. George H. Wu |
| Defendant. | |

///

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Williams, Matthew O'Brien, and Maxwell Coll, and Trial Attorney Christian Levesque, hereby files its motion in limine to admit the mosaic at issue in this case as evidence at trial.

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 29, 2022                Respectfully submitted,

                                        E. MARTIN ESTRADA
                                        United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division


                                         /s/
                                        MARK A. WILLIAMS
                                        MATTHEW W. O'BRIEN
                                        MAXWELL COLL
                                        Assistant United States Attorneys

                                        KENNETH A. POLITE
                                        Assistant Attorney General
                                        Criminal Division


                                         /s/
                                        CHRISTIAN A. LEVESQUE
                                        Trial Attorney

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Pursuant to Local Criminal Rule 57-1 and Local Civil Rule 79-4, the government moves in limine for an order: (1) permitting the government to bring to the Courthouse the key piece of evidence in this case -- an ancient Roman floor mosaic of Syrian origin (the "Mosaic") that defendant MOHAMAD YASSIN ALCHARIHI ("defendant") imported into the United States in August 2015; and (2) confirming that the Mosaic is admissible evidence.[1]

The indictment alleges that defendant imported the Mosaic by means of a false classification as to its value and quality.  Instead of disclosing to Customs that he was importing a Syrian antiquity for which he had paid approximately $12,000 and that he knew was worth much more, defendant caused his customs broker to falsely declare that he was importing ceramic tiles from Turkey valued at less than $600.

The Mosaic is 18 feet long, 8 feet tall, and weighs approximately 2,000 pounds.  It has been stored at a secure FBI facility in Los Angeles since federal agents seized it from defendant's home in March 2016.  The government seeks to transport the Mosaic to the Courthouse during trial so that jurors may view it in person.  (Due to the Mosaic's size, the best location for jurors to view the Mosaic during trial likely is the Courthouse's loading dock.)

---

[1] Local Civil Rule 79-4 requires the Court's permission prior to bringing to the Courthouse "contraband or valuable, sensitive, or dangerous exhibits," including "articles of high monetary value . . . fine art, and items of historical significance."

While the parties will also rely on photographs of the Mosaic during trial, the jury must view the Mosaic in person to fully understand and evaluate this antiquity as well as defendant's statements and the testimony about the Mosaic by lay witnesses, law enforcement officers, and experts. The government respectfully requests that the Court allow jurors to inspect the Mosaic in person at a convenient time during the government's case-in-chief.

## II.  BACKGROUND

Details about the Mosaic and defendant's importation of it are set forth in the Statement of Facts in the government's opposition to defendant's motion to strike allegations from the indictment, which the government incorporates by reference herein. (See Dkt. No. 60 at 2-7.) The Mosaic, as it was found in defendant's garage in 2016, is shown below:



At trial, the government intends to prove that defendant concealed from his customs broker (and hence from Customs) that the Mosaic is approximately 2,000 years old, that it came from Syria, that it depicted a mythological scene, and that defendant had paid

approximately $12,000 for it.  In addition, the government will prove that defendant knew that the Mosaic was actually worth significantly more at the time he imported it, and that the government's appraisal expert valued the Mosaic at $450,000.

**III. ARGUMENT**

    **A.   The Mosaic Is Relevant and Admissible**

Relevant evidence is admissible, and evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401, 402.

The Mosaic's quality, value, and country of origin will be central issues at trial.  For example, the government's case-in-chief will include:

- Expert testimony about the Mosaic's authenticity, provenance, and value, including testimony regarding the overall nature and quality of the Mosaic as well as the close examination of certain characteristics, such as the surface wear, weathering, and the composition of individual tesserae;
- Expert testimony regarding the looting of antiquities from conflict areas and why certain aspects of the Mosaic indicate that it was removed from the ground (<u>i.e.</u>, from a floor) in or around Syria;
- Testimony by federal agents regarding execution of the search warrant at defendant's residence and seizure of the Mosaic, and the numerous statements defendant has made over the past seven years regarding the quality, provenance, and value of the Mosaic; and

- Testimony regarding the $40,000 restoration of the Mosaic that defendant paid for soon after he imported it.

The Mosaic's appearance and physical condition is directly relevant to each of these issues. To understand -- and evaluate the credibility of -- the government's witnesses, defendant, and (potentially) defense witnesses, the jury must see the Mosaic up close and in person. As with any antiquity or other piece of art, the Mosaic must be viewed in person to be fully understood.

The Mosaic comprises thousands of individual tesserae that were placed by hand by skilled artisans to create a massive work of art. Photographs of the Mosaic are not an adequate substitute to viewing the Mosaic in person. The Mosaic must be viewed in person by jurors so they can evaluate the nature and quality of the piece, the craftsmanship with which it was created, the weathering and deterioration of the individual tesserae, the likelihood that it was taken from a floor, and the sheer scale of the piece. Photographs do not adequately portray the critical details of the Mosaic, much as photographs of the Mona Lisa or the Sistine Chapel's ceiling do not convey the magnitude and significance of those works.

**B.  The Admission of the Mosaic Would Not Unfairly Prejudice Defendant**

The government anticipates that the defense will argue that because the Mosaic is not in the condition it was in when defendant imported it (i.e., because he subsequently paid to have it restored), it would be unfairly prejudicial to defendant to allow jurors to see the Mosaic in its restored state. The government disagrees, for two reasons. First, defendant's restoration of the Mosaic is itself relevant and will be a focus at trial. The fact that defendant paid

4

someone $40,000 to restore an item that he told Customs was worth less than $600 will be used by the government to attack defendant's credibility. To the extent the Mosaic looks different now than it did in August 2015, it is due to the restoration process that defendant initiated as part of his scheme. The condition of the Mosaic when it was seized from defendant's house (which is the condition it is still in today) is directly relevant to proving its fair market value and hence defendant's motive for the illegal importation.

Second, the jury will see photos of, and hear testimony about, the Mosaic's condition prior to defendant's restoration of it. Thus there is no risk that jurors will mistakenly believe that the Mosaic's condition in February 2023 is the same as it was in August 2015. If the defense wants to argue that the Mosaic was worth little when defendant imported it and was therefore properly declared, the defense will have ample opportunity to elicit testimony regarding the changes to the Mosaic between August 2015 and now.

Finally, neither defendant, the Court, nor the jury will be unduly inconvenienced by the transportation of the Mosaic to the Courthouse and the viewing of the Mosaic during trial. The Mosaic will be transported to the Courthouse by a professional art-moving company (at the government's expense), under the supervision of the FBI, in a manner designed to not damage it. While the government is open to discussing with the Court and defense counsel precisely how, when, and where jurors would view the Mosaic, the actual viewing would be unlikely to take up substantial time during trial.

## IV. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court issue an order permitting the government to bring the Mosaic to the Courthouse and confirming the Mosaic's admissibility.