CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-307-GW |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO MOTION *IN LIMINE* TO ADMIT MOSAIC AS EVIDENCE AT TRIAL** |
| v. | |
| MOHAMAD ALCHARIHI, | **Hearing Date: January 26, 2023** |
| Defendant. | **Hearing Time: 8:00 a.m.** |

Defendant Mohamad Alcharihi, by and through his counsel of record, hereby submits his Opposition to the government's Motion *in Limine* to Admit Mosaic as Evidence at Trial.

//

//

//

1

1    This Opposition is based on the attached memorandum of points and authorities,

2    all files and records in this case, and any further evidence as may be adduced at the

3    hearing on this Motion.

4

5                                        Respectfully submitted,

6                                        CUAUHTEMOC ORTEGA
                                         Federal Public Defender
7

8

9    DATED:  January 5, 2023            By   /s/ Isabel Bussarakum

10                                       ASHLEY MAHMOUDIAN
                                         ISABEL BUSSARAKUM
11                                       JOSH WEISS
                                         Deputy Federal Public Defenders
12                                       Attorney for MOHAMAD ALCHARIHI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This is a case about whether Mohamad Alcharihi knowingly misclassified the value or quality of a mosaic on a customs form in August 2015.  18 U.S.C. § 541.  The offense carries a 2-year statutory maximum.  *Id.*  The government seeks to turn a simple case about a customs form into an extravagant show by calling at least 4 experts, introducing extraneous and prejudicial information about the looting of antiquities by terrorist groups, and bringing a 2,000-pound mosaic to the Court for jurors to view.

As demonstrated below, the Court should reject the request to bring the mosaic to Court because: (1) viewing the mosaic in person is irrelevant to proving the charged offense, which turns on Mr. Alcharihi's knowledge of the mosaic at the time of importation, not on an art historical or archaeological analysis of the mosaic; (2) the mosaic, having been restored for $40,000 *after* importation, is in a drastically improved condition than when Mr. Alcharihi imported it into the country, rendering its viewing not only irrelevant, Fed. R. Evid. 401, but also more prejudicial than probative, Fed. R. Evid. 403; and (3) the government has not demonstrated why its numerous and detailed photographs of the mosaic are insufficient, as required by Local Rule 79-4.

### II. RELEVANT BACKGROUND

In August 2015, Mr. Alcharihi imported into the United States a shipment containing the mosaic at issue in this case, two other mosaics, and approximately 80 vases, which he purchased from an art dealer in Turkey.  (*See generally* Ex. A.)  Mr. Alcharihi hired a customs broker, Soo Hoo Customs, to properly declare the items to customs.  (Ex. C.)  He provided the customs broker with an invoice showing that he paid $2,199.23 for all of the items, and that he purchased them from a seller in Turkey.  (Ex. A at 1; Ex. B.)  He also provided documents showing that the items were shipped from Turkey.  (Ex. A at 4-7.)

When the mosaic arrived, it had been rolled up like a carpet and was in poor condition.  Mr. Alcharihi hired Stephen Miotto to restore the mosaic.  After he finished

3

the restoration, Miotto wrote a restoration report.  (Ex. D.)  He was also interviewed by the FBI multiple times over the last several years about the mosaic and his restoration work on it.  (*See, e.g.*, Exs. E, F.)  According to the documents produced by the government in discovery,[1] "when [Miotto] first saw the mosaic it was laying flat.  He described the mosaic as appearing similar to an old rug with stones."  (Ex. F at 2.)  He believes that it was removed from its original setting by "gluing a canvas to the mosaic's surface first and then the mortar underneath the mosaic was broken off."  (*Id.*)  "The mosaic was likely then rolled off of the ground or from where it had been installed."  (*Id.*)  The canvas was glued to the front of the mosaic, "which allowed the mosaic to be viewed from the back."  (*Id.*)

When Miotto first saw the mosaic in Mr. Alcharihi's garage, "many of the tessara[e] were damaged, either through wear and tear through time or in the removal process or rolling it up."  (Ex. D at 1.)  He "believe[s] many tessera[2] were crushed when the mosaic was rolled into itself, with the fabric on the outside and the tessera on the inside of the roll."  (*Id.*; *see also* Ex. E at 1.)  Instead, "[t]he mosaic should have been rolled with the stones on the outside."  (Ex. E at 1.)

In his restoration report, Miotto explains that "[d]ue to the fragile state of the mosaic, and the amount of damaged and cracked tessera, [he] made the decision that the mosaic had to be set onto a new substrate, before attempting to remove the fabric that had been glued to the surface."  (Ex. D at 1.)  Miotto hired 2 employees to assist with restoration.  (Ex. E at 2.)  He explains the restoration steps he took in his report:

*First*, Miotto and his team "carefully cleaned the back of the mosaic to remove all dirt and dust from the surface, any tessera that were loose were saved to be used

---

[1] For purposes of this Opposition, the defense assumes that the statements attributed to Miotto in the documents produced in discovery are accurate.  However, Mr. Alcharihi reserves the right to cross-examine Miotto at trial about these statements.

[2] Tessera refers to the individual stones in a mosaic.  *See* Merriam-Webster (2023), *available at* https://www.merriam-webster.com/dictionary/tessera (defining tessera as "a small piece (as of marble, glass, or tile) used in mosaic work").

1    later for repairs." (Ex. D at 2.)  They "first used soft brushes and then a light duty

2    vacuum cleaner," and then "sprayed water on the back of the mosaic to bring out the

3    color of the tessera . . . so [they] could see the design and decide where to divide the

4    mosaic in to sections."  (*Id.*)

5         *Second*, "[u]sing a small fine tip razor [they] carefully cut through the fabric to

6    divide the mosaic in to 5 sections."  (*Id.*)

7         *Third*, they prepared the new substrate, which was "a honeycomb board (20mm),

8    with fiberglass sheathing top and bottom."  (*Id.* at 4.)  This included dividing the

9    honeycomb board into 5 panels that matched the 5 sections of the mosaic, as well as

10   sanding, scarifying, and stapling fiberglass mesh to the surface of the panels.  (*Id.* at 5.)

11        *Fourth*, they mounted the back of each mosaic section onto the 5 honeycomb

12   panels using a thick grout.  (*Id.* at 6.)

13        *Fifth*, they removed the fabric from the front of the mosaic, which turned out to

14   be a difficult and arduous task.  (*Id.* at 10.)  After testing numerous solvents, Miotto

15   decided on using lacquer thinner.  (*Id.*)  Once the fabric was removed, "there was still a

16   lot of glue on the tessera, in the joints of the tessera, as well as dirt and stains on the

17   surface of the mosaic."  (*Id.*)  Even after cleaning the surface with more lacquer thinner,

18   "[t]here was still glue adhering to the edges of the tessera and in the joints, and the

19   surface of the tessera was still dirty and stained in different areas."  (*Id.*)  So Miotto

20   washed the surface again with "a slurry of very fine sand and water," "brushed the

21   mosaic," and then "mechanically removed remaining bits of glue with dental picks and

22   razor."  (*Id.*)  Even after this, they had to clean the mosaic with "a commercial cleaner,"

23   then "a light solution of sulfumic acid," and then "a steam cleaner and brushes."  (*Id.*)

24        *Sixth*, Miotto and his team finally repaired the damaged areas of the mosaic.  (*Id.*

25   at 13.)  They replaced missing tesserae using loose tesserae that had come off the

26   mosaic, as well as marble that matched the colors and size of the original tesserae.  (*Id.*)

27        For this work restoring the mosaic, Mr. Alcharihi paid Miotto and his team

28   approximately $40,000.  (Ex. E at 2.)

# III. ARGUMENT

## A.   Viewing the Mosaic Is Irrelevant to the Charged Offense

The government makes cursory assertions about why the jury must view the mosaic in person without actually explaining its relevance to proving the *charged offense* in this case.  This is a case about whether Mr. Alcharihi knowingly misclassified the mosaic's value or quality when he imported it into the country in August 2015.  18 U.S.C. § 541.  What "value" and "quality" mean are critical to understanding what is relevant evidence in this case.

### 1.   Viewing the Mosaic Is Irrelevant to Value

With regard to value, the Indictment alleges that Mr. Alcharihi knowingly claimed that "he was importing a shipment of a mosaic and other items valued at $2,199, when, in fact, [he] knowingly imported a mosaic that itself was valued at more than $2,199."  (ECF No. 1.)

As an initial matter, viewing the restored mosaic is irrelevant to the charged offense, which addresses the value of the mosaic at the time of importation.  *See* 18 U.S.C. § 541 (criminalizing "knowingly effect[ing] any *entry* of goods . . . upon a false classification as to quality or value") (emphasis added).  As discussed more fully in Section III.B, the mosaic was in an unrestored condition when it was imported into the country.  Mr. Alcharihi then invested $40,000 to restore it.  (Ex. E at 2.)  The restored mosaic is, of course, more valuable than the one imported into the country, and thus, viewing it in its current condition is irrelevant to the charged offense.

Moreover, the relevant "value" for purposes of this offense is not the fair market value of the mosaic, but the purchase price that Mr. Alcharihi paid for it.  As the Fourth Circuit explained in *United States v. Ismail*, 97 F.3d 50, 62 (4th Cir. 1996):

> Prior to 1980, the "value" of imported merchandise, for Customs purposes, was determined by reference to the market value of the goods in the country of manufacture.  After 1980, value has been calculated in terms of "transaction value," defined as "the price actually paid or payable for the

6

merchandise." 19 U.S.C. § 1401a(b)(1)). "Price actually paid or payable" is further defined as "the total payment (whether direct or indirect, and exclusive of any costs, charges, or expenses incurred for transportation, insurance, and related services incident to the international shipment of merchandise . . .) made, or to be made, for imported merchandise by the buyer to, or for the benefit of, the seller." 19 U.S.C. § 1401a(b)(4)(A). *Id.*

Accordingly, having the jury view the mosaic (in its restored condition) has zero relevance to the question of whether Mr. Alcharihi accurately reported the price he "actually paid" for the mosaic prior to the restoration. *Id.* That question will most likely come down to an assessment of any records, documentation, or statements regarding the purchase price of the mosaic.

Rather than focus on the actual elements of the charged offense, the government seeks to introduce irrelevant and prejudicial information. It argues that viewing the mosaic is relevant to "prov[ing] that defendant knew that the Mosaic was actually worth significantly more at the time he imported it, and that the government's appraisal expert valued the Mosaic at $450,000." (Mot. at 3.) But whether Mr. Alcharihi knew or believed the mosaic was worth more is irrelevant to the question of whether he accurately reported its purchase price. Likewise, an appraisal of the mosaic's fair market value, especially in its restored condition rather than its imported condition, is irrelevant to whether Mr. Alcharihi accurately stated its purchase price.[3]

Simply put, the mosaic's "appearance and physical condition" (Mot. at 4) are not relevant to whether Mr. Alcharihi misclassified its value under 18 U.S.C. § 541, which

---

[3] Mr. Alcharihi intends to file a separate motion *in limine* to exclude evidence of the mosaic's fair market value, including evidence that Mr. Alcharihi believed it was worth more than the purchase price, and testimony by the government's appraisal expert. While the government argues that the mosaic's fair market value is relevant to proving Mr. Alcharihi's "motive for the illegal importation," there is no dispute that he intended to resell the mosaic. (Opp. at 5.) Expert opinion about its fair market value is thus irrelevant, and unduly prejudicial and confusing.

7

refers to its purchase price.  Value does not turn on how valuable the jury believes the mosaic to be, how valuable Mr. Alcharihi believed the mosaic to be, or its fair market value.  It comes down solely to whether he accurately reported the price he paid for it, and deciding that issue does not require viewing the mosaic in person.

### 2.    Viewing the Mosaic Is Irrelevant to Quality

The Indictment alleges that Mr. Alcharihi "knowingly misrepresented the quality of the mosaic, including what the mosaic depicted."  (ECF No. 1 at 2.)  Mr. Alcharihi has filed a separate motion to strike the allegations as to quality because they fail to state an offense under 18 U.S.C. § 541, or, in the alternative, to dismiss the Indictment because if the government's interpretation of quality is correct, then § 541 is void for vagueness.  (ECF No. 59.)  If the Court strikes the quality allegations, then the only issue for trial is value, and as demonstrated in Section III.A.1, viewing the mosaic is irrelevant to assessing value.  If the Court dismisses the Indictment, then viewing the mosaic is obviously a moot issue as there would be no trial.

However, even if the Court were to deny Mr. Alcharihi's motion to strike or dismiss the Indictment, and accept the government's definition of quality, it would still be irrelevant for the jury to view the mosaic.  In the government's opposition to Mr. Alcharihi's motion to strike or dismiss the Indictment, it defines quality as "the essential characteristics and nature of a particular good."  (ECF No. 60 at 2.)  What that means seems to be an ever-shifting goalpost.[4]  But in the instant Motion, the government's following arguments appear to relate to quality:

- Viewing the mosaic is relevant to expert testimony about the mosaic's "authenticity" and "provenance."  (Mot. at 3.)

- Viewing the mosaic is relevant to expert testimony about "why certain aspects of the Mosaic indicate that it was removed from the ground (i.e., from a floor) in or around Syria."  (Id.)

---

[4] This bolsters Mr. Alcharihi's argument that if the government's definition of quality is correct, then 18 U.S.C. § 541 is void for vagueness.

- "As with any antiquity or other piece of art, the Mosaic must be viewed in person to be fully understood." (*Id.* at 4.)

- The mosaic must be viewed in person to "evaluate the nature and quality of the piece, the craftmanship with which it was created, the weathering and deterioration of the individual tesserae, the likelihood that it was taken from a floor, and the sheer scale of the piece.[5]" (*Id.*)

But even accepting *arguendo* the government's definition of quality, this case is not about whether the mosaic is truly authentic, or whether it actually came from the ground in Syria. This is not an art history class. It is not a crime to get these art historical facts wrong. It is a crime to "knowingly" misclassify an item's quality, and the indictment alleges only one violation to that effect: that Mr. Alcharihi misclassified what the "mosaic depicted." (Dkt. No. 1); 18 U.S.C. § 541. Whether there was a *knowing* misclassification will most likely come down to assessing documents, records, and statements known to Mr. Alcharihi at the time he imported the mosaic. It does not turn on expert testimony about the mosaic's authenticity or provenance,[6] or a physical examination of the mosaic, for example, whether "the weathering and deterioration of the individual tesserae" make it more likely to be authentic or to be from Syria. None of these issues are relevant to the indictment's sole allegation regarding the mosaic's quality. Moreover, viewing the mosaic is simply irrelevant to what Mr. Alcharihi knew at the time of importation, and thus, whether he knowingly misclassified its quality in a customs form.

---

[5] The "sheer scale of the piece" is completely irrelevant. (Opp. at 4.) It has not been alleged that Mr. Alcharihi misclassified the size of the mosaic. Even if it had been, a simple measurement of the mosaic would be more relevant than viewing its "sheer scale."

[6] Mr. Alcharihi intends to file a separate motion *in limine* to exclude the government's proposed expert testimony about the mosaic's authenticity and provenance.

9

### 3. The Government's Other Arguments as to Relevance Fail

The government argues that viewing the mosaic is also relevant to three other categories of evidence it seeks to admit at trial. But two of these categories of evidence are irrelevant themselves. Moreover, viewing the mosaic is irrelevant to assessing any of these categories of evidence.

*First*, the government argues that viewing the mosaic is relevant to "[e]xpert testimony regarding the looting of antiquities from conflict areas.[7]" (Mot. at 3.) General expert testimony about looting of antiquities from conflict areas is not only irrelevant to the charged offense, but also extremely prejudicial to Mr. Alcharihi.[8] It does not have any tendency to prove that Mr. Alcharihi knowingly misclassified the mosaic's value or quality at the time of importation. Instead, it has the tendency to associate Mr. Alcharihi with looters and terrorist groups, which is highly inappropriate and prejudicial. What is more, viewing the mosaic in person clearly does not help the jury assess general expert testimony about looting in conflict areas.

*Second*, the government argues that viewing the mosaic is relevant to "[t]estimony by federal agents regarding execution of the search warrant at defendant's residence and seizure of the Mosaic, and the numerous statements defendant has made over the past seven years regarding the quality, provenance, and value of the Mosaic." (Opp. at 3.) As an initial matter, Mr. Alcharihi does not anticipate contesting that federal agents executed a search warrant at his house and seized the mosaic there in 2016. What is more, this information simply provides context for how the government obtained the mosaic, but has little relevance to whether Mr. Alcharihi misclassified the mosaic's quality or value in a customs form 7-8 months prior. The government fails to explain how viewing the mosaic in person is relevant to testimony about its seizure.

---

[7] The other half of this bullet point—"why certain aspects of the Mosaic indicate that it was removed from the ground (i.e., from a floor) in or around Syria"—was addressed above in Section III.A.2.

[8] Mr. Alcharihi intends to file a separate motion *in limine* to exclude evidence and expert testimony about looting of antiquities from conflict areas.

10

Likewise, the government has not explained how or why viewing the mosaic is relevant to Mr. Alcharihi's statements about the mosaic's "quality, provenance, and value" over the past seven years.  (Opp. at 3.)  Without knowing the content and context of those statements, it is difficult to evaluate the government's claim of relevance.  But, as explained above in Section III.A.1, viewing the mosaic is not relevant to assessing value, which refers only to the mosaic's purchase price.  It is also unlikely that viewing the mosaic in person will help jurors determine whether Mr. Alcharihi knowingly misrepresented that it was from Turkey at the time of importation.  Nor does it seem likely that viewing the restored mosaic will help the jurors determine whether Mr. Alcharihi knowingly misclassified its quality in its pre-restored state.

*Third*, the government argues that viewing the mosaic is relevant to "[t]estimony regarding the $40,000 restoration of the Mosaic that defendant paid for soon after he imported it."  (Opp. at 4.)  The government provides zero explanation for why the mosaic's restoration and the cost of that restoration *after* it was imported into the country is relevant to determining whether Mr. Alcharihi misclassified its value or quality months prior on a customs form.  The subsequent restoration has nothing to do with the mosaic's purchase price or whether Mr. Alcharihi misstated the purchase price.  Nor does it relate to whether he misstated the country of origin or the mosaic's age in a customs form.  Even if the restoration were somehow relevant, Mr. Alcharihi does not dispute that he hired and paid Miotto $40,000 to restore the mosaic.  Therefore, viewing the mosaic is not relevant to assessing testimony about its restoration, which is anticipated to be largely undisputed.

## B.  Viewing the Mosaic In Its Restored Form Is Irrelevant, and More Prejudicial Than Probative

In addition to the above arguments, viewing the mosaic in person is generally irrelevant under Federal Rule of Evidence 401 because it is not in the same condition as it was when Mr. Alcharihi imported it into the country.  As detailed in the Background section above, when he imported it, it looked like "an old rug with stones."  (Ex. F at

11

2.)  Many of the stones were "damaged and cracked," and Miotto described it as being in a "fragile state."  (Ex. D at 1.)  Today, the mosaic has been placed on a new hard substrate; the fabric that was laid on the front has been removed; the mosaic has been cleaned extensively through rounds of chemical washing, brushing, picking, and steam cleaning; and most of the damaged, cracked, or missing stones have been replaced.  (Ex. D at 2-13.)  Thus, viewing the mosaic in its restored condition does not help the jury determine whether Mr. Alcharihi knowingly misclassified its purchase price or quality at the time of the importation.

Even if the Court finds that viewing the restored mosaic has some relevance to the charged offense, it should deny the government's motion because the minimal probative value of viewing the restored mosaic is outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, and needlessly presenting cumulative evidence, under Federal Rule of Evidence 403.

Viewing the mosaic in such a drastically improved condition is unduly prejudicial, confusing, and misleading to the jury.  The restored mosaic appears as an impressive and valuable work of art, as opposed to the "old rug with stones" that Mr. Alcharihi imported.  It will leave the jury the impression that the mosaic is more valuable and of a higher quality than it actually was when Mr. Alcharihi imported it.  While the government argues that there is no prejudice because "the jury will see photos of, and hear testimony about, the Mosaic's condition" prior to restoration (Mot. at 5), there are only a few, grainy photos of the mosaic in its pre-restored condition (*see, e.g.*, Ex. D at 1, 2).  And there are no photos, to the defense's knowledge, of the mosaic when it was rolled up.  Therefore, the primacy and spectacle of viewing the mosaic in person will overshadow the few, low-quality photos and oral description of its pre-restored condition.

Viewing the mosaic in person will also waste the jury's time.  It will require the jury to leave the courtroom, go down to the loading dock, and view the mosaic there.  What is more, to combat the prejudicial nature of viewing the restored mosaic in

12

person, the defense will need to elicit more evidence and testimony about its
restoration, and the difference in its condition.  This is avoidable by denying the
government's Motion.

Finally, viewing the mosaic in person is needlessly cumulative to presenting
photos of the mosaic for the same reasons as stated below in Section III.C.

**C.     The Government Has Not Demonstrated Why Photographs of the
        Mosaic Are Not Sufficient**

Under Local Rule 79-4, "[n]o contraband or valuable, sensitive, or dangerous
exhibits . . . may be brought into Court without prior permission from the Court."  L.R.
79-4.  A party seeking to bring such a physical item to Court "must fist request
permission from the Court for the actual item to be admitted or displayed, by
submitting photographs of the item to the Court and explaining why photographs are
not sufficient."  *Id.*  In other words, the mosaic, by default, is prohibited from being
brought to Court.  The government must show "why photographs are not sufficient,"
and it has failed to do so.

The government included only one small photo of the mosaic in its motion.
(Mot. at 2.)  However, by its own admission, they will rely on multiple "photographs"
during trial.  (*Id.*)  Indeed, the materials produced in discovery for one of the
government's experts, Basileus Zeno, included 103 photographs of the restored mosaic,
which are attached as Exhibit G.  There are numerous photographs of the entire mosaic
from different angles and under different lighting.  (*See, e.g.*, Ex. G at 1-12, 23-25.)
There are close-ups of different sections of the mosaic, allowing the viewer to see
different parts of the mosaic in greater detail.  (*Id.* at 13-22, 43-74, 91-103.)  There are
pictures of someone holding a measuring tape across a section of the mosaic, as well as
a ruler laid across the mosaic, to provide a sense of the size of the tesserae and the
number of tesserae within a certain amount of space.  (*Id.* at 26-29, 76-77, 84.)  There
are extreme close-ups of the tesserae itself so that the viewer can see the wear and tear

1    on the stones, the movement in the surface of the tiles, and the colors and color

2    variation in the stones.  (*Id.* at 30-42, 75, 78-83, 85-90.)

3            The 103 photographs in Exhibit G are certainly not all of the photographs that

4    the government possesses.  What is more, the government has unlimited access to the

5    mosaic to take any additional photographs it thinks necessary to support its witnesses'

6    testimonies, or impeach the defense witnesses.  The government simply has not

7    explained why photographs from numerous angles and under different lighting showing

8    the narrative story, details, and condition of the mosaic are insufficient to prove the

9    charged offense.

10           The government relies on generalized statements that the mosaic "must be

11   viewed in person to be fully understood" just as photographs of "the Mona Lisa or the

12   Sistine Chapel's ceiling do not convey the magnitude and significance of those works."

13   (Opp. at 4.)  Again, this is not an art history class.  This trial is not about fully

14   analyzing a work of art.  This case is about what Mr. Alcharihi knew at the time he

15   imported the mosaic, and photographs are more than sufficient for the government to

16   prove its case.

17                                 **IV. CONCLUSION**

18           The government's motion to bring the mosaic to Court is part of its overall

19   strategy to turn a simple case into a spectacle.  The Court should deny the motion

20   because viewing the mosaic is irrelevant to proving the charged offense; viewing in it,

21   especially in its vastly improved, restored condition, is irrelevant and unduly

22   prejudicial; and photographs of the mosaic are sufficient.

23                                 Respectfully submitted,

24                                 CUAUHTEMOC ORTEGA
                                   Federal Public Defender
25
     DATED:  January 5, 2023       By  */s/ Isabel Bussarakum*
26                                 _____
                                   ASHLEY MAHMOUDIAN
27                                 ISABEL BUSSARAKUM
                                   JOSH WEISS
28                                 Deputy Federal Public Defenders
                                   Attorney for MOHAMAD ALCHARIHI

                                          14