# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CRIMINAL MINUTES - GENERAL

| Case No. | CR 20-307-GW | Date | January 9, 2023 |
|---|---|---|---|

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Interpreter | NONE |
|---|---|

| Javier Gonzalez | None Present | Mark A. Williams - not present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| Mohamad Yassin Alchirihi | not | | ✔ | Ashley Mahmoudian, DFPD | not | ✔ | |

**PROCEEDINGS:**    **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT'S MOTION TO STRIKE IMPROPER ALLEGATIONS FROM THE INDICTMENT OR DISMISS THE INDICTMENT [59]**

Attached hereto is the Court's Tentative Ruling on Defendant's Motion [59], set for hearing on January 12, 2023 at 8:00 a.m.

|  | : |
|---|---|
| Initials of Deputy Clerk | JG |

_**United States of America v. Alcharihi**_, Case No. CR-20-307-GW
Tentative Ruling on Motion to Strike Improper Allegations From the Indictment or Dismiss the Indictment

Mohamad Yassin Alcharihi, aka "Mohamad al-Sharihi" and "Mohamad AlCharihi" ("Defendant"), is charged in a single-count indictment (along with an associated forfeiture count) with having violated 18 U.S.C. §§ 541, 2(b). *See* Docket No. 1. Section 541 provides that "[w]hoever knowingly effects any entry of goods, wares, or merchandise, at less than the true weight or measure thereof, or upon a false classification as to quality or value, or by the payment of less than the amount of duty legally due, shall be fined under this title or imprisoned not more than two years, or both." 18 U.S.C. § 541. Subsection 2(b), meanwhile, provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2(b).

Specifically, the United States of America ("Plaintiff" or "the Government") asserts that Defendant "knowingly effected the entry of goods, wares, and merchandise, and willfully caused the entry of goods, wares, and merchandise, upon a false classification as to quality and value of such material." Docket No. 1, at 1:23-26. Even more-specifically, Plaintiff alleges that Defendant claimed "that he was importing a shipment of a mosaic and other items valued at $2,1999, when, in fact, [he] knowingly imported a mosaic that itself was valued at more than $2,199, and [he] knowingly misrepresented the quality of the mosaic, including what the mosaic depicted." *Id.* at 1:27-2:3.

Defendant now moves under Federal Rule of Criminal Procedure 12(b)(3)(B)(v)[1] to either strike the allegations in the indictment related to "quality" or to dismiss the indictment in its entirety because, in Defendant's view, the Government is employing an improper understanding of Section 541's "quality" term. Construction of the term "quality" as used in Section 541 appears to be a matter of first-impression.

Defendant asserts that "quality" must be understood as "comparative degree of distinction

---

[1] The cited rule allows for a pretrial motion directed at "a defect in the indictment," including a "failure to state an offense." Fed. R. Crim P. 12(b)(3)(B)(iv). Defendant has located authority which allows a court to "strike only portions of a charge where a single count alleges multiple means of committing an offense and one of those means fails to state an offense but other alleged means are legally valid." Docket No. 59, at 6:19-22; *see also United States v. Miller*, 471 U.S. 130, 145 (1985); *United States v. Birchfield*, 486 F.Supp. 137, 139-40 (M.D. Tenn. 1980). The Government does not contest the use of Rule 12(b)(3)(B)(iv) in this regard. As such, consideration of Defendant's alternative argument that the language in question in the indictment can be stricken as "surplusage" under Rule 7(d) of the Federal Rules of Criminal Procedure need not be considered or resolved.

or grade" or "grade or degree of excellence . . . as compared to other goods of the same type." Docket No. 59, at 2:3-5, 2:14-16, 3:12-15, 5:13-15.  To reach that end, Defendant first argues that the term "quality" is unambiguous, at least in the context of describing imported merchandise.  To back up this argument, Defendant points not just to dictionary definitions, but also to various United States Customs and Border Protection regulations and how the term "quality" is used therein in contrast with other descriptive categories/terms.  Under his approach, "[a] claim about the subject matter a mosaic depicts . . . is not a claim about its 'quality'," meaning that "the indictment's allegation that [Defendant] misrepresented 'what the mosaic depicted' is not an allegation about the quality of the mosaic."  *Id.* at 5:15-19.  If, instead, "quality" is understood as broadly as the Government would like, Defendant asserts that the statute's "prohibitions are not clearly defined" and unconstitutionally vague and would thus violate due process under principles set forth in cases such as *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).  Beyond his argument about the term "quality" being unambiguous, Defendant further asserts that if the Court concludes that instead there is ambiguity in the term "quality," the rule of lenity favors Defendant's interpretation/understanding.  *See United States v. Lopez*, 998 F.3d 431, 434 n.5 (9th Cir. 2021) ("The rule of lenity requires 'grievous ambiguity' in criminal statutes to be resolved in favor of a criminal defendant.").

Like Defendant, the Government also believes that "quality" is unambiguous, but that the term means "the essential characteristics and nature of a particular good."  Docket No. 60, at 2:5-7, 10:6-8, 10:12-13, 13:8-9, 14:16-17.  The Court is troubled by this argument.  Notwithstanding that the Government believes that "where a floor mosaic is from, its style, and what it depicts . . . are essential characteristics of the import," *id.* at 9:9-12, the terms "essential," "characteristics," and "nature" are all so broad and open-ended that they can mean very different things from one person to the next.  The Court finds the contention very suspect under rules that, the Government admits, require an ordinary person to be able to understand what is prohibited and that preclude authorities from enforcement that is arbitrary and/or discriminatory.

The Court would agree with Defendant that "[i]f the term 'quality' is interpreted to encompass a broad range of physical characteristics, including 'what the mosaic depicts,' then 'the indeterminacy of the wide-ranging inquiry required by the [statute] both denies fair notice to defendants and invites arbitrary enforcement by judges.'"  Docket No. 59, at 13:23-26 (quoting *United States v. Johnson*, 135 S.Ct. 2551, 2557 (2015)).  While this does not mean that the Court

2

agrees with Defendant that the statute's use of the term "quality" is *unambiguous* in his favor, whether it would raise a potential vagueness/due process problem, result in a required application of the rule of lenity, or an application of the rule avoiding unconstitutional constructions of a statute where the statute is amenable to a limiting construction, the end-result would be the same – the Government's understanding of the term cannot prevail.

Moreover, the Government itself admits that the law in question is a revenue law, protecting against unpaid duties. *See* Docket No. 60, at 8:3-8, 8:18-21. Defendant's understanding of "quality" – looking to an item's grade or comparative degree of excellence, *e.g.*, extra virgin olive oil – is much more clearly tied to the revenue purpose of the law, in the Court's view.

It may be true that, as the Government argues, "what an imported item depicts is intertwined with its degree of excellence as compared to goods of a similar kind." *Id.* at 14:22-24. Obviously, as Defendant himself acknowledges, *see* Docket No. 61, at 15 n.7, this may impact "value," the other principal consideration of the statute in question, and there is no reason the Government cannot proffer evidence in this regard. *See* Docket No. 60, at 17:25-18:1. While it may, theoretically, also impact an item's "degree of excellence as compared to goods of a similar kind," the indictment does not plead that; it simply pleads – at least in terms of "quality" – that Defendant knowingly misrepresented "what the mosaic depicted."

For the foregoing reasons, the Court rules in favor of Defendant on this motion. However, it asks Defendant to specify exactly what language in the indictment it wishes stricken.

3