E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3359/8644/1785
    E-mail:    Mark.A.Williams@usdoj.gov
                Matthew.O'Brien@usdoj.gov
                Maxwell.Coll@usdoj.gov

KENNTEH A. POLITE, JR.
Assistant Attorney General
Criminal Division
CHRISTIAN A. LEVESQUE (D.C. Bar No. 501778)
Trial Attorney
Human Rights and Special Prosecutions Section
United States Department of Justice
    1301 New York Ave
    Washington, DC 20530
    Telephone:  (202) 538-2373
    E-mail:    Christian.Levesque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-307-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* TO ADMIT MOSAIC AS EVIDENCE AT TRIAL |
| v. | |
| MOHAMAD YASSIN ALCHARIHI, aka "Mohamad al-Sharihi" and "Mohamad AlCharihi, | Hearing Date: January 26, 2023 Hearing Time: 8:00 a.m. Location:     Courtroom of the Hon. George H. Wu |
| Defendant. | |

///

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Williams, Matthew O'Brien, and Maxwell Coll, and Trial Attorney Christian Levesque, hereby files this reply in support of its motion *in limine* to admit the mosaic at issue in this case as evidence at trial.

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: January 12, 2023          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division


*/s/*
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
MAXWELL COLL
Assistant United States Attorneys

KENNETH A. POLITE, JR.
Assistant Attorney General
Criminal Division


*/s/*
CHRISTIAN A. LEVESQUE
Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.   INTRODUCTION**

3       Defendant and his associates smuggled a valuable ancient Roman
4 mosaic from a conflict area in order to sell it for a massive profit
5 in the United States.  To accomplish his scheme, defendant
6 misrepresented the quality of the Mosaic and submitted a fraudulent
7 invoice to Customs that included a fake purchase price.  Defendant's
8 false invoice claimed that he paid less than $600 for the Mosaic;
9 much later, he admitted he actually paid $12,000, and it was worth
10 far more.  Defendant, however, does not want the jury to see all this
11 evidence and now asks the Court to exclude the Mosaic itself from
12 trial.

13       In an attempt to minimize his misconduct, conceal evidence of
14 his guilt, and ultimately nullify the jury, defendant claims that the
15 Mosaic is irrelevant because this is "a simple case about a customs
16 form" involving an "old rug with stones."  Not so.  Defendant is
17 attempting to block the jury from seeing the most important piece of
18 evidence in this case:  a valuable Roman antiquity that he was highly
19 motivated to sneak past Customs.

20       The trial will turn on whether the jury believes defendant's
21 claim that he imported a worthless "old rug with stones" based on his
22 set of (phony) papers, or credits the government's evidence
23 establishing that defendant knew he was illegally importing a
24 valuable antiquity.  Allowing jurors to view the Mosaic in person is
25 a straightforward and essential step in the jury's assessment of whom
26 to believe.  Modern, inexpensive mosaics are not looted and smuggled;
27 valuable antiquities are.  Most people have never seen an ancient
28 Roman mosaic, and photographs are not sufficient to evaluate the

Mosaic's quality and value.  The defense should not be permitted to exclude the centerpiece of defendant's scheme.

**II.   ARGUMENT**

Defendant opposes the government's motion in limine for three purported reasons: (1) viewing the Mosaic in person is irrelevant to proving the charged offense; (2) the Mosaic's post-importation restoration renders its viewing irrelevant and overly prejudicial; and (3) photographs of the Mosaic are sufficient.  As discussed below, these arguments lack merit.

**A.   The Mosaic is Relevant and Fundamental to the Charged Offense**

The Mosaic is relevant to determining its quality and value, both of which underpin defendant's violation of 18 U.S.C. § 541. Defendant's argument to the contrary has two primary flaws.

First, viewing the Mosaic in person will help jurors weigh two very different stories.  On the one hand, the defense will likely argue that defendant honestly listed the value of the Mosaic as a few hundred dollars because that is what he purportedly paid for it.  On the other hand, the government will introduce evidence that defendant lied about the value of the Mosaic in order to conceal that he was importing a valuable Roman antiquity for which he paid at least $12,000.  To help the jury evaluate these competing claims, the government will present evidence including the following:

> ➢ Defendant signed a written contract in which he agreed to purchase the Mosaic for 36,000 Turkish Lira, which in 2015 was approximately $12,000.

> ➢ Wire transfers of $2,199 (the value of the Mosaic shipment listed in a phony invoice) and $12,000 (the actual purchase

price) were made to the Mosaic seller after the Mosaic was imported.

➢ In a recorded interview with federal agents, defendant admitted that he paid $12,000 for the Mosaic shipment, and that he undervalued the Mosaic at the time of importation to avoid paying duties.

➢ In another interview, defendant admitted being told that he could sell the Mosaic for $130,000, showing his knowledge that the Mosaic was worth far more than the amount declared on Customs forms.

➢ Defendant paid $40,000 to restore the Mosaic, which corroborates the other evidence establishing that defendant knew the Mosaic was worth far more and demonstrates his motive to sell it for a profit.

➢ Defendant exchanged emails with auctioneers and others in which the Mosaic was estimated to be worth over $100,000.

➢ The government's appraisal expert valued the Mosaic at $410,000 without any restoration work (i.e., at the time it was imported).

➢ In order to create a false provenance for the Mosaic so that it could be resold for a significant profit, defendant obtained false paperwork purportedly from the Syrian government authorizing him to export the Mosaic from Syria.

➢ As an alternative means of legitimizing his possession of the Mosaic, defendant created false, notarized paperwork claiming to have purchased a "rolled mosaic carpet" from his neighbor in a "yard sale."  The paperwork was in English, but his neighbor only spoke Spanish.

3

1    The Mosaic itself is central to evaluating all of this evidence

2  because it was the centerpiece of defendant's scheme.  Given that the

3  defense will likely seek to challenge the aforementioned evidence,

4  the Mosaic itself is essential for jurors to consider in assessing

5  defendant's claims.  The jury should be permitted to view the Mosaic

6  in person to examine its characteristics and assess its value, and

7  ultimately determine if defendant falsely declared it to Customs.

8  Experts cannot properly assess the authenticity or value of artwork,

9  including an antiquity, without viewing the item in person; jurors

10 should not be denied the same opportunity.

11   Second, to portray the Mosaic itself as irrelevant, the defense

12 offers an overly narrow conception of what determines the Mosaic's

13 value.  The defense claims that the "value" determination for

14 imported merchandise is limited to the purchase price that defendant

15 "actually paid" for the Mosaic (presumably, as evidenced by a fake

16 invoice).  (Opposition at 6-7.)  That is incorrect.  Defendant

17 ignores that there are numerous methodologies for determining the

18 value of an imported object, as the regulation that the defense

19 relies upon makes clear.  See 19 U.S.C. § 1401a(a)-(f).[1]  To be sure,

20 the purchase price can determine the value (specifically, the

21 "transaction value").  See id. § 1401a(a).  But an object's value may

22 also be ascertained by alternative means such as (as is most relevant

23 here) an appraisal obtained by Customs.  See id. § 1401a(f).  Of

24 course, when an individual conceals from Customs the fact that he is

25

26 _____

27   [1] The defense does not mention that the sole case cited in its
   brief, United States v. Ismail, 97 F.3d 50 (4th Cir. 1996),
   recognized that the case law "and § 1401a certainly stand for the
28 proposition that transaction value may include more than the 'actual
   price' of the merchandise."  Id. at 63 (emphasis added).

importing an antiquity (and that it is from Syria), and presents a fake invoice purporting to show the purchase price, Customs does not have the opportunity to appraise the import.  Defendant's attempt to limit the value of an imported object to its purchase price would encourage the very type of fraud at issue here:  importers could use phony papers to "prove" that they had paid low amounts for valuable goods, and thereby bypass the entire appraisal process used by Customs for objects such as art and antiquities.

Even more strained is defendant's argument that "whether Mr. Alcharihi knew or believed the mosaic was worth more is irrelevant to the question of whether he accurately reported its purchase price." (Opposition at 6-7.)  This argument defies logic; as in most criminal trials, defendant's intent and state of mind will be a critical focus at trial.  The government will prove that defendant submitted an invoice with a false valuation to Customs in order to import the Mosaic into the United States and sell it for a profit.  Notably, defendant's brief does not mention the Mosaic sales contract value or the actual price that defendant admitted he paid for it ($12,000).

Defendant's knowledge that the Mosaic was a high-value antiquity, and that he paid $12,000 for it, will prove that he knew he was submitting a false invoice to Customs and that he falsely described the Mosaic's quality.  The Mosaic itself -- the focus of his scheme -- is highly relevant to defendant's knowledge and intent, and hence admissible.

    **B.   The Mosaic's Restoration and Restored Condition Are Relevant to a Number of Issues at Trial and Are Not Confusing, Misleading, or Unduly Prejudicial**

Defendant next claims that viewing the Mosaic in its restored condition would not help the jury determine whether he falsely

classified it.  Defendant does not (and could not) object to the
government showing the jury photographs of the restored Mosaic.
Given that photographs of the restored Mosaic are relevant and
admissible, the Mosaic itself is the best evidence and is also
relevant.

Alternatively, defendant claims that even if the Mosaic is
relevant, showing the jury the actual restored Mosaic would be unduly
prejudicial, confusing, and misleading.  As the defense concedes,
"the mosaic appears as an impressive and valuable work of art."  The
defense is correct; defendant knowingly imported an impressive and
valuable work of art irrespective of its subsequent restoration.  And
it is precisely because the Mosaic is an "impressive and valuable
work of art" that defendant falsely classified it.  Though
defendant's brief repeatedly refers to the Mosaic as an "old rug with
stones" -- presumably like the Mona Lisa would be an "old paper with
colors" -- defendant paid significant money for it, lied to Customs
about that fact and its quality, and then spent more than three-times
that amount to restore it.  Photographs of the Mosaic do not provide
the jury with a complete depiction, which is why the actual Mosaic is
the best evidence of the import that was falsely classified even
before restoration.

Further, defendant's decision to pay $40,000 to restore the
Mosaic is highly probative of his motive for the entire scheme: a
windfall resale.  The best evidence of the restoration is, of course,
the Mosaic itself.  The restoration process, the Mosaic's restored
condition, and the admissions defendant made to his own restoration
"expert" about the Mosaic will help to establish defendant's
knowledge that he lied to Customs by falsely declaring the Mosaic.

Allowing the jury to view the Mosaic in person will not mislead or confuse jurors because the restoration process will be explained and itself is relevant to proving defendant's intent, knowledge, and motive.

Defendant fails to explain how viewing the Mosaic in person would confuse the jury any more than post-restoration photographs would.  To the contrary, excluding from trial the very thing that defendant imported and restored would confuse and mislead jurors because they would be deprived of the best evidence of what the Mosaic actually looks like.

**C.   Photographic Evidence is Inadequate and Cannot Convey the Size, Scope, and Other Features of the Mosaic**

Finally, defendant claims that this is "a simple case about a customs form" that should not be turned into "an extravagant show" by permitting the jury to view the Mosaic.  As with defendant's other arguments, prohibiting the jury from viewing the central piece of evidence in this case is a thinly veiled attempt at nullification.

It is not surprising that the defense wants to restrict the jury from viewing the Mosaic; the Mosaic is critical evidence of defendant's false declaration as to its quality and value.  Most people have never seen a mosaic, never mind an ancient Roman mosaic, particularly one measuring 18 feet x 8 feet that is composed of thousands of individual stone tessera.  Trying to examine a mosaic like this through photographs alone is difficult without also seeing it directly.  (Indeed, defense counsel recently asked to, and did, inspect the Mosaic in person even though they possess numerous photographs of it.)  Photographs cannot convey the incredible detail and overall magnitude of this antiquity, all of which are relevant to

assessing its quality and value.  In short, this Mosaic is no "old rug with stones," as defendant has tried to contend.  Appraisal experts and conservators need to view antiquities in person to determine their authenticity and value, and the jury should be permitted to do the same.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully reiterates its request that the Court issue an order permitting the government to bring the Mosaic to the Courthouse and confirming the Mosaic's admissibility.