CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-307-GW |
| Plaintiff, | **DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE PARTS OF WILLIAM F. TARTER'S PROPOSED EXPERT TESTIMONY; EXHIBITS** |
| v. | |
| MOHAMAD ALCHARIHI, | |
| Defendant. | Hearing Date: 4/20/2023<br>Hearing Time: 10:00 a.m. |

Defendant Mohamad Alcharihi, by and through his counsel of record, hereby moves *in limine* for an order precluding the government from introducing certain portions of William F. Tarter's proposed expert testimony as described further herein.

The government has provided notice of, and confirmed during a meet-and-confer phone call, its intent to call William F. Tarter to testify about imports and the customs process in general, as well as his review of the customs documents at issue in this case.

//

//

1 | This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, and any further evidence and argument as the Court may permit.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 9, 2023             By  /s/ Isabel Bussarakum
                                  ASHLEY MAHMOUDIAN
                                  ISABEL BUSSARAKUM
                                  JOSH WEISS
                                  Deputy Federal Public Defenders
                                  Attorney for MOHAMAD ALCHARIHI

2

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. PROFFERED EXPERT TESTIMONY ........................................................ 1

III. ARGUMENT ................................................................................................. 2

    A.    Tarter's Anticipated Testimony Is Expert Opinion Testimony Subject to Federal Rule of Evidence 702 and *Daubert* .............................................. 2

    B.    Legal Standard Under Federal Rule of Evidence 702 and *Daubert* ............ 3

    C.    A Number of Topics from Tarter's Anticipated Testimony Should Be Excluded as Irrelevant Under Federal Rule of Evidence 702 ...................... 4

    D.    A Number of Topics from Tarter's Anticipated Testimony Should Be Excluded as Unreliable Under Federal Rule of Evidence 702 ................... 7

    E.    A *Daubert* Hearing Is Necessary ............................................................... 10

    F.    Tarter Should Be Precluded from Testifying About Looting .................... 11

    G.    Tarter Should Be Precluded from Using the Term "Correct" ................... 12

IV. CONCLUSION ........................................................................................... 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government has provided notice of its intent to call CBP Import Specialist William F. Tarter as an expert witness to explain the importation process, and opine on the customs entry forms relating to the mosaic in this case. Mr. Alcharihi moves to preclude Tarter from testifying about certain topics specified below because they are irrelevant or unreliable under Federal Rule of Evidence 702 and *Daubert*, or because their probative value is substantially outweighed by unfair prejudice under Federal Rule of Evidence 403.

## II. PROFFERED EXPERT TESTIMONY

Attached as Exhibit 1 is a copy of the government's expert disclosure dated February 8, 2023, summarizing Tarter's anticipated testimony. Attached as Exhibits 2 and 3 are copies of FBI Reports of Investigation summarizing interviews with Tarter on January 18, 2023 and February 3, 2023, respectively. While Tarter's anticipated testimony is captured more fully in these exhibits, the following is brief summary.

It is anticipated that Tarter will testify about the importation process, and his review of the customs documents associated with the mosaic in this case. (Ex. 1 at 2.) He will testify that for artwork, the importer should declare the amount he anticipates the artwork to be valued at auction. (*Id.*) He will testify that because Israel was listed as the country of origin in the customs entry form, Mr. Alcharihi failed to pay certain fees, and that CBP would have further scrutinized the mosaic had Turkey or Syria been listed as the Country of Origin. (*Id.*)

Tarter will testify about a September 25, 2013 red list issued by the International Council of Museums regarding Syrian cultural objects at risk; a February 12, 2015 resolution by the United Nations Security Council, condemning pillaging of cultural artifacts from Syria; and an August 15, 2016 CBP amendment to its policies regarding the importation of cultural artifacts from Syria. (*Id.*)

1

Tarter will further testify about how imported goods are classified using the Harmonized Tariff Schedule ("HTSUS"), that the mosaic was incorrectly classified under Chapter 69 and under an Israel trade agreement, and that the mosaic should have been classified under Chapter 97 of the HTSUS. (*Id.*) He will testify that imports under Chapter 97 are scrutinized, especially if the importer is not a known museum or art gallery. (*Id.*)

Tarter will further testify that a Formal Entry is required for imports exceeding $2,500, and that if an importer uses an informal entry, he is required to appear in person to fill out a simplified form and receive clearance in the presence of a CBP officer. (*Id.*) Tarter gives more scrutiny to items declared to be worth $10,000 or more. (*Id.*)

Finally, he will testify that paying $12,000 for an item, but declaring a total of $2,199, would be considered false invoicing, and constitutes providing false material information. (*Id.* at 3.) Tarter will explain that "generally, undervaluing imported items can deprive the United States of revenues." (*Id.*) And that "had the correct value and country of origin been declared" for the mosaic, "the shipment would have received additional scrutiny by CBP." (*Id.*)

## III. ARGUMENT

**A.   Tarter's Anticipated Testimony Is Expert Opinion Testimony Subject to Federal Rule of Evidence 702 and *Daubert***

On February 8, 2023, the government disclosed its intent to call CBP Import Specialist William F. Tarter as a witness in this case, in lieu of previously disclosed CBP Import Specialist Heather Sparks. (Ex. 1.) Although the government provided an expert disclosure for Tarter, they stated in a footnote that "we do not view the testimony of William F. Tarter as 'expert testimony' per se because he will primarily testify concerning facts, investigative steps, and the importation process associated with the Mosaic at issue in this case." (*Id.* at 1 n.1.) However, they designated him as an expert "out of an abundance of caution." (*Id.*)

2

Tarter's anticipated testimony is clearly expert testimony, as opposed to lay testimony. Tarter is not a percipient fact witness. He is not the CBP Import Specialist who reviewed Mr. Alcharihi's customs forms back in August 2015 when they were submitted. Instead, the government reached out to him more than 2 years after filing this criminal case and while preparing for trial to utilize his "specialized knowledge" as a CBP Import Specialist. Fed. R. Evid. 702(a). Much of Tarter's anticipated testimony explains how the importation process works, how CBP reviews imports, and what types of information trigger additional scrutiny. This information is based on a form of "specialized knowledge" that falls within Rule 702. *Compare* Fed. R. Evid. 702 *with* Fed. R. Evid. 701 (describing lay witness testimony as "*not* based on scientific, technical, or other specialized knowledge") (emphasis added).

Moreover, Tarter's anticipated testimony contains a number of opinions that are *not* simple descriptions of "facts," "investigative steps," or "the importation process." (Ex. 1 at 1 n.1.) He will opine that if Mr. Alcharihi had listed Syria or Turkey as the country of origin, "the import would have been scrutinized and held for further processing"; if Mr. Alcharihi had classified the mosaic under Chapter 97 of the Harmonized Tariff Schedule, it would have been "scrutinized," especially because Mr. Alcharihi is not a "known museum or art gallery"; and if the "correct value and country of origin" had been declared, "the shipment would have received additional scrutiny by CBP." (*Id.* at 2-3.) These are not observations about facts, but opines on hypothetical scenarios, which falls squarely within Rule 702. Tarter's opinions are clearly based on "specialized knowledge" outside the realm of appropriate lay witness opinion. *Compare* Fed. R. Evid. 701 *with* Fed. R. Evid. 702.

Because Tarter will offer expert testimony, it must meet the requirements of Federal Rule of Evidence 702 and *Daubert* before being deemed admissible.

**B.     Legal Standard Under Federal Rule of Evidence 702 and *Daubert***

Federal Rule of Evidence 702 permits opinion testimony by an expert who is qualified by "knowledge, skill, expertise, training, or education," if four conditions are

3

met: (a) "the expert's . . . specialized knowledge will help the trier or fact to understand the evidence or to determine a fact in issue," (b) "the testimony is based on sufficient facts or data," (c) "the testimony is the product of reliable principles and methods," and (d) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'" *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell DowPharms., Inc.*, 509 U.S. 579, 589 (1993)) (holding that *Daubert*'s gatekeeping obligation applies not only to "scientific" testimony, but to all expert testimony). The Court's gatekeeping function is of utmost importance because "[u]nlike an ordinary witness . . . , an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge," and "expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 592, 595.

"It is the proponent of the expert who has the burden of proving admissibility." *Lust By and Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). The party presenting the expert must demonstrate that the expert's findings are based on sound principles. *Daubert v. Merrell Dow Pharms., Inc.* ("*Daubert II*"), 43 F.3d 1311, 1316 (9th Cir. 1995).

C. **A Number of Topics from Tarter's Anticipated Testimony Should Be Excluded as Irrelevant Under Federal Rule of Evidence 702**

Rule 702 requires that the proffered evidence "help the trier of fact to understand the evidence or to determine a fact in issue." F. R. Evid. 702. "This condition goes primarily to relevance." *Daubert*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (everything omitted); *see also United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir. 1985) ("An additional consideration under Rule 702—another aspect of relevancy—is whether

expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.").

A number of topics from Tarter's anticipated testimony are irrelevant.

*First*, Mr. Tarter will testify about (1) a red list issued by the International Council of Museums on September 25, 2013, alerting law enforcement and customs officials to Syrian cultural objects at risk, including floor mosaics; and (2) a resolution issued by the United Nations Security Council on February 12, 2015, condemning the pillaging of cultural artifacts from Syria. (Ex. 1 at 2.) These are references to documents external to the CBP agency. It is unclear how they relate to CBP's policy or practice, or affect the importation process in August 2015. Absent such a showing, the Court should exclude any reference to these documents as irrelevant.

*Second*, "Tarter will explain that on August 15, 2016, CBP issued an amendment to its policies regarding the importation of cultural artifacts from Syria." (*Id.* at 2.) In an FBI Report of Investigation summarizing an interview with Tarter on February 3, 2023, he further elaborated that "[o]n August 15, 2016, an amendment was made to the restrictions in order to implement an emergency order issued by the government that stated no mosaic or similar cultural item could be imported if it was removed from Syria on or after March 15, 2011. This regulation would apply to floor mosaics from Syria." (Ex. 3.)

While the August 15, 2016 amendment is actually CBP-specific, it post-dates Mr. Alcharihi's importation of the mosaic into this country. The mosaic was imported into the country a year earlier on August 13, 2015. (ECF No. 1.) CBP's regulations and practices a year later in August 2016 are not relevant to whether Mr. Alcharihi knowingly misclassified the mosaic's value or quality in August 2015. Thus, the Court should preclude Tarter from testifying about the August 15, 2016 CBP Amendment. Because the government has repeatedly attempted to rely on this August 15, 2016 CBP Amendment (ECF No. 60), the Court should preclude the government from introducing any evidence or argument at trial about the August 15, 2016 CBP Amendment. Indeed,

5

unless the government can make some further showing of relevance, it should be precluded from referring to any laws, regulations, or practices that were not in effect or in practice at the time Mr. Alcharihi imported the mosaic into the country.

*Third*, "Mr. Tarter will explain that paying $12,000 for one imported item but declaring the total value of all imported items to be $2,199 is considered false invoicing and constitutes providing false material information." (Ex. 1 at 3.) Mr. Tarter should be precluded from opining that these actions constitute "false invoicing" and "providing false material information" because that is *not* what Mr. Alcharihi is charged with. These terms are taken from a different statute, 18 U.S.C. § 542, which makes it a crime to enter imported merchandise "by means of any fraudulent or false invoice," or "by means of any false statement . . . as to any matter material thereto." 18 U.S.C. § 542. Mr. Alcharihi is *not* charged with violating § 542. Thus, Tarter should be precluded from testifying about false invoicing and providing false material information because it insinuates that Mr. Alcharihi committed another crime.

*Fourth*, "Mr. Tarter will explain that generally, undervaluing imported items can deprive the United States of revenues." (Ex. 1 at 3.) This is a very vague and broad statement. The relevant question, here, is whether *Mr. Alcharihi* knowingly misclassified the mosaic's value or quality. It is irrelevant that "*generally*, undervaluing imported items *can* deprive the United States of revenues." (*Id.* (emphasis added).) This statement is not even helpful to the jury because it only refers to the possibility of lost revenue, and it is not specific to this case. The Court should preclude the government from eliciting this testimony from Mr. Tarter, and from eliciting general and vague statements about the loss of revenue that are not specific or applicable to this case.

*Finally*, Tarter should be precluded from testifying about the mosaic's country of origin, size, style, condition, or period; whether those were misrepresented in the customs entry form; and how those characteristics would have affected CBP's analysis or scrutiny level of the mosaic. Mr. Alcharihi is charged with violating 18 U.S.C. §

6

541, in part, by "knowingly misrepresent[ing] the quality of the mosaic, including what the mosaic depicted."[1] (ECF No. 1 at 2.) As previously briefed by the defense (ECF Nos. 59, 61), it is highly unclear what the government means by "quality," and it did not specify what "quality" means in the Indictment, other than to include "what the mosaic depicted" (ECF No. 1). Thus, Tarter's testimony about the mosaic's country of origin, size, style, condition, or period is irrelevant because (1) those characteristics are not alleged in the Indictment as relating to quality, and (2) they are not covered by the statutory meaning of quality in 18 U.S.C. § 541. (*See* ECF Nos. 59, 61.) Moreover, as briefed in the concurrently filed Motion *in Limine* to Exclude Evidence Regarding Means of Violating 18 U.S.C. § 541 That Are Not Charged in the Indictment, permitting the government to prove means of violating § 541 charged in the Indictment (such as country of origin, size, style, condition, or period) amounts to an unconstitutional amendment of the Indictment.

### D. A Number of Topics from Tarter's Anticipated Testimony Should Be Excluded as Unreliable Under Federal Rule of Evidence 702

Rule 702 further requires that expert testimony be based on "sufficient facts or data," be "the product of reliable principles and methods," and that the expert "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. As summarized in the Advisory Committee's 2000 Notes, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) "set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony." Fed. R. Evid. 702, Advisory Committee's 2000 Notes.

While most of the *Daubert* factors may not strictly apply to Tarter's non-scientific testimony, some of them can be extrapolated and applied to a non-scientific

---

[1] While the Court has noted that these characteristics could theoretically affect value, Tarter does not opine about the relationship between these characteristics and value. He opines on how these characteristics affect CBP's analysis and scrutiny of the mosaic. Thus, these characteristics only appear relevant to "quality" in the context of Tarter's anticipated testimony.

7

context. For example, the first *Daubert* factor is "whether the expert's technique or theory can be or has been tested—that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability." *Id.* Applying this factor to a number of Tarter's anticipated statements, the key question is what are Tarter's statements and opinions based on? Are they based on a statute, regulation, or a CBP manual, policy, or memo? Or are they simply based on Tarter's own individual experience and practice? If Tarter's statements and opinions are based on his own idiosyncratic experience and practice, they are not reliable or representative of CBP practice. The fifth *Daubert* factor—"whether the technique or theory has been generally accepted in the scientific community"—appears to require that, in this context, Tarter testify about policies and practices that are generally accepted in the CBP community, as opposed to his own personal or individual practice.

However, the Court cannot determine whether a number of Tarter's anticipated statements and opinions are reliably grounded in a statute, regulation, or CBP policy or practice, because the statement or opinion lacks any supporting authority or source. For example, it is anticipated that Tarter will offer the following testimony, but it is unclear what the supporting authority is for these statements:

- "[W]ith respect to artwork and items of cultural import, the correct value to declare is the amount an importer anticipates the artwork would be valued at auction." (Ex. 1 at 2.)
- "[H]ad the Country of Origin been listed as Syria or Turkey, the import would have been scrutinized and held for further processing, with a likely request for additional supporting documentation and contact made to other government agencies, including the Department of State." (*Id.*) "CBP would not scrutinize or pay much attention to items from Israel since many goods are imported from there." (Ex. 2 at 2.)

8

- "When the mosaic entered the United States in August 2015, there would have been extra scrutiny just by listing the Country of Origin as Syria. . . . CBP considers items over $100,000 as high value which would also be flagged.  That is especially true for a high value piece of artwork originating from Syria." (*Id.* at 4.)
- "[I]f an importer declared an item to be worth $10,000 or more, he would give the import more scrutiny." (Ex. 1 at 2.)
- "[I]mport specialists scrutinize imports classified under Chapter 97. . . . [T]he company or individual importing artwork and items of cultural import under Chapter 97 are also scrutinized. . . . [A]n importation of artwork under Chapter 97 by an unknown importer—i.e., not a known museum or art gallery—would also be scrutinized." (*Id.*) "[C]laiming the mosaic under Chapter 96 was clever as this would likely have caused it to receive less scrutiny at the time of import." (Ex. 2 at 2.)
- "[T]he mosaic would have caught [Tarter's] eye for further scrutiny because the value was so low relative to its large weight and length. . . . However, even though the mosaic was heavy, the declared value was so low this would have raised less scrutiny and CBP has to prioritize the items they flag and inspect." (Ex. 2 at 4.)
- "[H]ad the correct value and country of origin been declared for the Mosaic import, the shipment would have received additional scrutiny by CBP." (Ex. 2 at 3.)  "[T]he mosaic would not have been legally imported if the Alcharihi 7501 listed the correct description or value." (Ex. 2 at 4.)

The government's expert disclosure states that the reasons and bases for Tarter's anticipated testimony are "his training, experience, familiarity with facts and evidence in this case, and his knowledge and experience concerning imports generally and the techniques antiquities smugglers use to avoid detection or scrutiny by U.S. authorities." (Ex. 1 at 3.)  But this is insufficient to determine the reliability of the above statements

9

and opinions. Rule 702 requires the Court to ensure that Tarter's testimony is based on "sufficient facts or data" and "reliable principles and methods." Applying the *Daubert* factors in this context means scrutinizing the bases for Tarter's statements and opinions, and determining whether they are based on an objective and generally accepted authority, or simply the *ipse dixit* of the expert.

The Court should exclude the statements and opinions in the bullet point list above as unreliable under Rule 702, or hold a *Daubert* hearing to inquire further into the bases of those statements and opinions, and to determine whether they are reliable.

### E.   A *Daubert* Hearing Is Necessary

If the Court is not inclined to grant this Motion, it must at least hold a *Daubert* hearing to fulfill its gatekeeping role before determining that Tarter's testimony is sufficiently relevant and reliable. The district court has the obligation to "perform a gatekeeping role of ensuring that testimony is both relevant and reliable under" Federal Rule of Evidence 702. *United States v. Ruvacalba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)) (quotation marks omitted). Because an expert's testimony must "have a reliable basis in the knowledge and experience of the relevant discipline[,]" the "district court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and properly can be applied to the facts in issue, with the goal of ensuring that the expert employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 1188-89 (citations and quotation marks omitted).

Although "district courts are vested with broad latitude to decide how to test an expert's reliability and whether or not an expert's relevant testimony is reliable[,]" they "do not have discretion to abandon the gatekeeping function altogether, for Rule 702 clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." *Id.* at 1189 (citations and quotation marks omitted). Therefore, "a district court abuses its discretion when it either abdicates its role as gatekeeper by

10

failing to assess the scientific validity or methodology of an expert's proposed testimony, or delegates that role to the jury by admitting the expert testimony without first finding it to be relevant and reliable." *Id.* (quotation marks omitted). An implicit reliability finding is not sufficient—a district court "must make an explicit reliability finding" to "satisfy its gatekeeping duty[.]" *Id.* at 1190 (quotation marks omitted).

Here, the Court should at least hold a *Daubert* hearing to evaluate whether the topics in Section III.C are relevant, and to inquire into the bases and reasons for the statements in Section III.D to determine if they are reliable.

### F. Tarter Should Be Precluded from Testifying About Looting

The expert disclosure and reports of investigation regarding Tarter's anticipated testimony does not explicitly refer to looting. But during a meet-and-confer telephone call with the government, they mentioned that Tarter may testify about looting. And looing serves as the backdrop or context for Tarter's proposed testimony about the International Council of Museums' September 25, 2013 emergency red list regarding Syrian cultural objects at risk, the U.N. Security Council's February 12, 2015 resolution condemning pillaging in Syria, and the August 15, 2016 CBP amendment about cultural artifacts from Syria. (Ex. 1 at 2.) Any testimony about looting, looting in Syria, and the mosaic having been looted should be excluded under Federal Rule of Evidence 403 because its minimal probative value is outweighed by the danger of unfair prejudice.

As explained in the concurrently filed motion *in limine* to exclude Dr. Eric Doehne's testimony, the testimony on looting lacks probative value because there is no concrete evidence that the mosaic was looted, and no concrete evidence that Mr. Alcharihi knew the mosaic was looted. On the flipside, it is extremely prejudicial to Mr. Alcharihi. It insinuates that Mr. Alcharihi was willing to take advantage of a war-torn country to illegally obtain a cultural artifact, when there is no evidence that he did that or had knowledge that the mosaic was looted. Even worse, the looting in Syria has largely been perpetrated by terrorist groups such as the Islamic State in Iraq and the

11

Levant ("ISIL") and Al-Nusrah Front ("ANF"), as the government has stated in prior briefing. (ECF No. 60 at 6.) Thus, allowing testimony on looting would associate Mr. Alcharihi with terrorist groups, which are regularly demonized in American media and official U.S. government statements. Such an association would be terrifying to lay jurors, who may be inclined to convict Mr. Alcharihi simply based on his supposed terrorist ties, rather than any actual evidence in this case.

### G. Tarter Should Be Precluded from Using the Term "Correct"

In the expert disclosure and reports of investigation, Tarter uses the term "correct" at times to refer to the government's theory of what the country of origin should have been (Syria), what the value should have been ($12,000), and what the description should have been (presumably an antique floor mosaic from Syria). (*See, e.g.*, Ex. 1 at 4 ("had the correct value and country of origin been declared . . . , the shipment would have received additional scrutiny by CBP"); Ex. 2 at 4 ("the mosaic would not have been legally imported if the [entry form] listed the correct description or value"). Obviously, what are the "correct" country of origin, value, and description should have been are facts in dispute in this case. Permitting Tarter to refer to the government's theory of these items as "correct" is unduly prejudicial to Mr. Alcharihi. Nor did Tarter independently verify the country of origin, value, or description of the mosaic, but was directed to make certain assumptions about those facts by the government. The Court should preclude Tarter from using the term "correct" in this erroneous and prejudicial manner.

//
//
//
//
//
//

## IV. CONCLUSION

The Court should preclude Tarter from testifying about the topics specified in Section III.C because they are irrelevant under Rule 702, the topics specified in Section III.D because they are unreliable under Rule 702, and the topics specified in Sections III.E and F because their probative value is substantially outweighed by unfair prejudice under Rule 403.

                        Respectfully submitted,

                        CUAUHTEMOC ORTEGA
                        Federal Public Defender

DATED: March 9, 2023          By  */s/ Isabel Bussarakum*
                        ASHLEY MAHMOUDIAN
                        ISABEL BUSSARAKUM
                        JOSH WEISS
                        Deputy Federal Public Defenders
                        Attorney for MOHAMAD ALCHARIHI