E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3359/8644/1785
    E-mail: Mark.A.Williams@usdoj.gov
              Matthew.O'Brien@usdoj.gov
              Maxwell.Coll@usdoj.gov

KENNTEH A. POLITE
Assistant Attorney General
Criminal Division
CHRISTIAN A. LEVESQUE (D.C. Bar No. 501778)
Trial Attorney
Human Rights and Special Prosecutions Section
United States Department of Justice
    1301 New York Ave
    Washington, DC 20530
    Telephone: (202) 538-2373
    E-mail: Christian.Levesque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-307-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE DEFENDANT'S PRIOR CONDUCT UNDER RULES 403 AND 404 |
| v. | |
| MOHAMAD YASSIN ALCHARIHI, aka "Mohamad al-Sharihi" and "Mohamad AlCharihi, | Hearing Date: April 20, 2023<br>Hearing Time: 8:00 a.m.<br>Location: Courtroom of the Hon. George H. Wu |
| Defendant. | |

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Williams, Matthew O'Brien, and Maxwell Coll, and Trial Attorney Christian Levesque, hereby files its opposition to defendant's motion *in limine* to exclude defendant's prior conduct under Rules 403 and 404 (Dkt. No. 80).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 23, 2023            Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division


              */s/*
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
MAXWELL COLL
Assistant United States Attorneys

KENNETH A. POLITE
Assistant Attorney General
Criminal Division


              */s/*
CHRISTIAN A. LEVESQUE
Trial Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant MOHAMAD YASSIN ALCHARIHI ("defendant") moves to exclude a variety of evidence that he characterizes as governed by Federal Rule of Evidence 404(b).  The Motion should be denied because none of the evidence is governed by Rule 404(b).  Some of the evidence – such as evidence of how defendant paid for the restoration of the Mosaic – is direct evidence of defendant's scheme and hence falls outside the ambit of Rule 404(b).  The remainder of the evidence is not evidence that the government intends to introduce in its case-in-chief.

**II.  ARGUMENT**

    **A.  The Evidence of How Defendant Paid for the Restoration of the Mosaic**

Defendant objects to the admission of evidence regarding how defendant paid for half ($20,000) of the $40,000 restoration of the Mosaic after he imported it.  (Motion at 1:14-2:10, 7:10-8:8.)  How defendant acquired the funds to pay for the restoration of the Mosaic is direct evidence of the crime, or, at minimum, inextricably intertwined, and thus it does not implicate Rule 404(b).

The restoration of the Mosaic is relevant because the fact that defendant paid $40,000 to restore the Mosaic strongly suggests that he knew that the Mosaic was worth more than the few hundred dollars he claimed on the Customs paperwork.  Because the restoration is relevant, so too is how defendant paid for the restoration.

The government intends to elicit testimony from T.P. (who controlled the bank account of the company "Aeronix") that he lent $20,000 to defendant for the restoration of the Mosaic and defendant

never paid him back.  Further, defendant offered to let T.P. take part in the Mosaic "business" and told T.P. that the Mosaic came from Syria, through Turkey, and into the United States.  (Bates no. ALC-GOV-000413.)  The government will also introduce documentary evidence of the loan payments made using the Aeronix account.  Related background information – such as the fact that T.P. channeled the loan payments through the Aeronix account – is relevant and necessary to provide context.  *See, e.g., United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996) (evidence is considered "inextricably intertwined" when it "'constitutes a part of the transaction that serves as a basis for the criminal charge' or is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'") (*quoting United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).  If the government cannot explain to the jury what Aeronix was, for example, jurors will not understand why T.P.'s loan payments to defendant were channeled through the Aeronix account.

The fact that T.P. loaned defendant the money is itself relevant.  Defendant was not a wealthy man; he could not afford to pay for the restoration himself (just as he needed a loan from T.P. for the car-export business).  This goes to motive:  defendant saw the importation and re-sale of the Mosaic as a potential windfall (and admitted to T.P. that he intended to sell the Mosaic after restoring it); he viewed the expenditure of $40,000 to restore the Mosaic – a sum he could not afford himself – as a good investment given the hundreds of thousands of dollars in profit he hoped he could reap when he sold the Mosaic.

2

None of the foregoing is unfairly prejudicial. Indeed, when compared to some of the government's other evidence (like defendant's admissions and forged documents), the $20,000 loan from T.P. is not even that prejudicial, let alone unfairly prejudicial. Rather, it is straightforward evidence to prove a (relatively) minor point at trial. Nor will the introduction of this evidence waste time – the questioning on this issue should not last more than 20 minutes or so. Likewise, the evidence will not confuse jurors; to the contrary, it will prevent confusion as to the source of the funds spent to restore the Mosaic.

### B. The Sale of Gold Coins

Unlike the evidence discussed above, defendant's sale of gold coins via Heritage Auctions arguably would be governed by Rule 404(b). (Motion at 2:12-15, 8:9-25.) While the government maintains that defendant's use of an auction house to sell the allegedly ancient coins in 2015 would be admissible under Rule 404(b), the government does not intend to rely on this evidence in its case-in-chief. Hence the issue is moot.

### C. The Emails About Objects and Statues

Defendant objects to the introduction of two emails from August 2015 in which he tried to sell pieces of art from Syria to an arts dealer. (Motion at 2:16-22, 8:26-9:10.) Defendant's attempts to sell art from Syria to a dealer at the exact same time he was importing the Mosaic from Syria so that he could re-sell it likely would be admissible under Rule 404(b). However, the government does not intend to rely on this evidence in its case-in-chief, and hence the issue is moot.

### D. The Sale of Vases/Fountains

Defendant objects to the introduction of evidence relating to his request to his neighbor, L.O., for L.O. to advertise for sale vases/fountains that defendant had imported from Turkey. (Motion at 2:23-3:2, 9:11-24.) While the government maintains that defendant's efforts to sell these imported objects would be admissible under Rule 404(b), the government does not intend to rely on this evidence in its case-in-chief. Hence the issue is moot.

### E. The Email Inquiry About the Mosaic

On December 15, 2015 (not December 2018, as the Motion claims), defendant made a strange request to "Aphrodite Antiquities," a seller on eBay who was attempting to sell an ancient Roman mosaic. As noted in the Motion, defendant wrote to the seller:

> My wife and I want to buy this item to donate to a museum and trying to get a write off tax. I need you to send us a copy of all papers and documents for this item to pure file a donation pressedure [sic].

(Motion at 3:4-8.)

Defendant's email is admissible as direct evidence of the charged crime, or, at a minimum, because it is inextricably intertwined with the charged crime. The government believes that defendant was attempting to obtain the mosaic-related documents from Aphrodite Antiquities in order to see what legitimate importation and provenance-related documents for an ancient Roman mosaic looked like, so that defendant could create such documents for the Mosaic. There is no other explanation for the email; there is no evidence that defendant ever attempted to actually purchase the ancient Roman mosaic from Aphrodite Antiquities, or that that defendant ever attempted to donate anything to a museum (for tax purposes or any

4

other reason).  And December 2015 was precisely the timeframe when defendant was attempting to legitimize his importation of the Mosaic. Because defendant's email is direct evidence of the crime, or at a minimum inextricably intertwined, it is admissible.

Nor is there any concern regarding Rule 403.  To the extent the defense disagrees that the email evidences defendant's criminal intent, the defense is free to articulate such concerns via cross-examination and closing argument.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's Motion.