E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
    130ial0 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3359/8644/1785
    E-mail:    Mark.A.Williams@usdoj.gov
               Matthew.O'Brien@usdoj.gov
               Maxwell.Coll@usdoj.gov

KENNTEH A. POLITE
Assistant Attorney General
Criminal Division
CHRISTIAN A. LEVESQUE (D.C. Bar No. 501778)
Trial Attorney
Human Rights and Special Prosecutions Section
United States Department of Justice
    1301 New York Ave
    Washington, DC 20530
    Telephone:  (202) 538-2373
    E-mail:    Christian.Levesque@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>MOHAMAD YASSIN ALCHARIHI,<br>  aka "Mohamad al-Sharihi" and<br>  "Mohamad AlCharihi,<br><br>          Defendant. | No. CR 20-307-GW<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF MICHAEL COHN<br><br>Hearing Date: April 20, 2023<br>Hearing Time: 8:00 a.m.<br>Location:     Courtroom of the<br>              Hon. George H. Wu |

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Williams, Matthew O'Brien, and Maxwell Coll, and Trial Attorney Christian Levesque, hereby files its opposition to defendant's Motion *In Limine* to Exclude Expert Testimony of Michael Cohn. (Dkt. No. 77.)

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 23, 2023          Respectfully submitted,

                               E. MARTIN ESTRADA
                               United States Attorney

                               SCOTT M. GARRINGER
                               Assistant United States Attorney
                               Chief, Criminal Division


                                    */s/*
                               _____
                               MARK A. WILLIAMS
                               MATTHEW W. O'BRIEN
                               MAXWELL COLL
                               Assistant United States Attorneys

                               KENNETH A. POLITE, JR.
                               Assistant Attorney General
                               Criminal Division


                                    */s/*
                               _____
                               CHRISTIAN A. LEVESQUE
                               Trial Attorney

                               Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

TABLE OF AUTHORITIES...............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I.    INTRODUCTION..................................................1

II.   COHN'S QUALIFICATIONS AND ANTICIPATED TESTIMONY...............2

III.  ARGUMENT.....................................................3

      A.    Legal Standard.........................................3

      B.    Cohn's Proffered Testimony Is Highly Relevant,
            Probative and Will Aid the Jury, and Is Admissible
            Under FRE 702 And Daubert..............................6

            1. Cohn's Testimony Concerning Value is Highly
               Relevant and Probative.............................6

            2. Cohn's Testimony Concerning the Fair Market
               Value of the Mosaic at the time of Post-
               Restoration is Relevant and Probative.............10

      C.    Cohn's Testimony Is Based on Sufficient Facts or Data
            and Facts Reasonably – and Regularly – Relied on By
            Art Appraisers and Thus Satisfies FREs 702, 703, and
            Daubert...............................................11

            1. Cohn's Testimony is Based on Sufficient Facts and
               Data and Satisfies Rule 702.......................11

            2. Cohn's Testimony Is Based on Facts Reasonably
               Relied Upon by Appraisers and Satisfies Rule 703....14

      D.    Cohn's Testimony Reliably Applies the Market Data
            Comparison Approach to his Appraisal of the Mosaic's
            Value.................................................16

      E.    No Daubert Hearing Is Necessary.......................20

      F.    Cohn's Testimony Is Admissible and More Probative Than
            Prejudicial...........................................20

IV.   CONCLUSION..................................................22

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**Cases**

*Alaska Rent-A-Car, Inc. v. Avis Budget Group., Inc.*
      738 F.3d 960, 969 (9th Cir. 2013)..................... 4,5,18
*City of Pomona v. SQM North America Corp.*
      750 F.3d 1036, 1053 (9th Cir. 2014)....................... 4
*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
      509 U.S. 579, 588 (1993).............................. passim
*F.C. Wheat Maritime Corp. v. United States*
      663 F.3d 714, 720 (4th Cir. 2011)........................ 19
*Hamling v. United States*
      418 U.S. 87, 108 (1974)................................... 3
*Hurst v. United States*
      882 F.2d 306, 311 (8th Cir. 1989) ..................... 16
*Kopf v. Skyrm*
      993 F.2d 374,377 (4th Cir.1993).......................... 9
*Hopkins v. Dow Corning Corp.*
      33 F.3d 1116, 1124 (9th Cir. 1994)...................... 20
*Kumho Tire Co. v. Carmichael*
      526 U.S. 137, 147 (1999).......................... 3,5,17,18
*Loftin & Woodard, Inc. v. United States*
      577 F.2d 1206, 1223-25 (5th Cir. 1978)................... 19
*Masayesva for and on Behalf of Hopi Indian Tribe v. Hale*
      118 F.3d 1371, 1379 (9th Cir. 1997)..................... 15
*Messick v. Novartis Pharm., Corp.*
      747 F.3d 1193, 1199 (9th Cir. 2014)..................... 4,9
*Thomas v. Newton Int'l Enters.*
      42 F.3d 1266, 1269 (9th Cir. 1994)....................... 4
*Trout Ranch, LLC v. C.I.R.*
      493 Fed. Appx. 944, 949-51 (10th Cir. 2012)............. 19
*United States v. 0.161 Acres of Land, more or less, situated in City of Birmingham, Jefferson County, Alabama, et al.*
      837 F.2d 1036 (11th Cir. 1988).......................... 14
*United States v. 0.376 Acres of Land*

838 F.2d 819 (6th Cir. 1988)................................. 15

*United States v. 22.80 Acres of Land, More or Less, in San Benito County, State of Cal.*

839 F.2d 1362 (9th Cir. 1988)................................ 13

*United States v. Alatorre*

222 F.3d 1098, 1100 (9th Cir. 2000)...................... 20

*United States v. Finley*

301 F.3d 1000, 1007 (9th Cir. 2002)........................ 3

*United States v. Hankey*

203 F.3d 1160, 1172 (9th Cir. 2000)....................... 20

*United States v. Holguin*

51 F.4th 841 (9th Cir. 2022) ................................ 4

*United States v. Ismail*

97 F.3d 50 (4th Cir. 1996).................................. 7

*United States v. Sandoval-Menxoza*

472 F.3d 645, 654 (9th Cir. 2006)....................... 5,14

*United States v. Simmons*

470 F.3d 1115, 1123 (5th Cir. 2006)..................... 5,18

**Statutes**

18 U.S.C. § 541............................................ passim

19 U.S.C. § 1401.......................................... 6,7

Fed Rules Evid 702........................................ passim

Fed Rules Evid 703........................................ passim

Fed Rules Evid 403........................................ passim

**Other**

Uniform Standards of Professional Appraisal Practice

https://www.appraisalfoundation.org........................ 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The government opposes defendant's motion to exclude the expert testimony of Michael Cohn and his request for a Daubert hearing.

The government has charged defendant MOHAMAD YASSIN ALCHARIHI ("defendant") with one count of violating 18 U.S.C. §§ 541, 2(b). Specifically, in August 2015, defendant effected the entry of an ancient Roman floor mosaic of Syrian origin (the "Mosaic") into the United States from the Republic of Turkey.  He did so by, first, falsely classifying the value of the Mosaic as far less than he later admitted he paid.  Second, defendant falsely classified the quality of the Mosaic as a generic ceramic mosaic cube from Turkey.  In fact, it was an ancient Syrian work of art depicting a Greco-Roman mythological scene on a Mosaic measuring approximately 18 feet in length and 8 feet in height and weighing approximately 2,000 pounds.

Defendant seeks to preclude the government from introducing at trial the expert testimony of Michael Cohn concerning the value of the Mosaic.  Defendant's motion is not a challenge to the expertise or qualifications of the government's proposed expert, but instead to the relevance of his proposed testimony and the method of valuing antiquities in the absence of a so-called "mathematical" calculation by which the value can be determined.  These challenges should be rejected.  The value of the Mosaic is relevant; the expert's "Market Data Comparison" approach is a widely used method to determine the value of art and antiquities, including a mosaic of the kind at issue here; and Cohn's expertise will be helpful to the jury.  As a result, the motion should be denied.

## II.   COHN'S QUALIFICATIONS AND ANTICIPATED TESTIMONY

The government intends to introduce Cohn as an appraiser with specialized experience and knowledge in evaluating the value of antiquities and artwork.  Specifically, Cohn will testify concerning his review and analysis of the Mosaic, including a comparison to other art works, and his valuation of the Mosaic at $450,000.

The testimony will help the jury assess the value of the Mosaic, which is at the heart of this case, as well as defendant's knowledge, intent, and motivation when he falsely classified the value and quality of the antiquity in an effort to avoid government scrutiny and sell the Mosaic for a huge profit after importation.  As described herein, Cohn's expert testimony is relevant and reliable and should be admitted.

Cohn has extensive experience as an appraiser, dealer, and collector of Asian antiquities and cultural objects, and has served as an educator, lecturer, and writer concerning these objects. Specifically, he is a certified appraiser in Asian Antiquities and Asian Contemporary Art and has been a member of the Appraisers Association of America ("AAA") since 1997.  He has written numerous donation appraisals that are compliant with the Uniform Standards of Professional Appraisal Practice ("USPAP") for major museums and other cultural institutions throughout the United States.

Cohn has served on the AAA's committee authoring the organization's Specialist Examination.  He has lectured on art and the art market, having taught various courses in Appraisal Studies at New York University.  Additionally, he has lectured at museums, art fairs, and other events.  He has written on appraising and the art market, including contributing chapters titled "Science and Art" to

2

*An Approach to the Advanced Problems of Appraising Art* (2013) and "Asian Art" to *Appraiser Art: The Definitive Guide* (2012). Cohn's expertise is constantly renewed and updated, as he attends more than 40 hours of lectures and symposiums each year, attending art fairs and conferences throughout the world.

Further, Cohn's expert report satisfies all the factors of Federal Rule of Evidence 702 by, for example, (1) providing a statement of his opinions, and his basis and reasons for them; (2) providing the facts or data he considered in forming his opinions; (3) including detailed descriptions and photos of comparable art works used to support his opinions; (4) providing his qualifications; and (5) including other relevant information explaining the methodology he used to arrive at his appraisal value.   For all these reasons, Cohn is a qualified expert with specialized knowledge and experience that will help the jury understand the evidence and facts at issue in this trial.

**III. ARGUMENT**

   **A.   Legal Standard**

   Trial courts have "wide discretion in [their] determination to admit [or] exclude evidence, and this is particularly true in the case of expert testimony." <u>Hamling v. United States</u>, 418 U.S. 87, 108 (1974).  The Supreme Court has adopted a flexible test for determining whether to admit scientific expert testimony under Rule 702.  <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 588 (1993). The Supreme Court later extended <u>Daubert</u> making clear that an expert can be qualified "by knowledge, skill, experience, training, or education." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 147 (1999). The Ninth Circuit has clarified, in <u>United States v. Finley</u>, 301 F.3d

3

1    1000, 1007 (9th Cir. 2002), that Rule 702 requires the subject matter

2    at issue in an expert's testimony to be "beyond the common knowledge

3    of the average layman." This is a "liberal" standard. United States

4    v. Holguin, 51 F.4th 841, 854 (9th Cir. 2022).  The Ninth Circuit

5    also has found that Rule 702 "contemplates a broad conception of

6    expert qualifications." Thomas v. Newton Int'l Enters., 42 F.3d 1266,

7    1269 (9th Cir. 1994).

8         With respect to the testimony of a sufficiently qualified

9    expert, it should be admitted when it is both "relevant and

10   reliable." City of Pomona v. SQM North America Corp., 750 F.3d 1036,

11   1053 (9th Cir. 2014) ("Expert testimony may be excluded by a trial

12   court under Rule 702 of the Federal Rules of Evidence only when it

13   is either irrelevant or unreliable."); Messick v. Novartis Pharm.,

14   Corp., 747 F.3d 1193, 1199 (9th Cir. 2014) (holding that any

15   concerns regarding the correctness of an expert's opinion "are a

16   matter of weight, not admissibility" and reversing the district

17   court's grant of summary judgment where relevant and reliable

18   expert testimony was improperly excluded).

19        The Ninth Circuit has held that "the relevancy bar is low,

20   demanding only that the evidence 'logically advances a material

21   aspect of the proposing party's case.'" Messick, 747 F.3d at 1196

22   (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II),

23   43 F.3d 1311, 1315). The reliability threshold is a "flexible" one

24   requiring only that the expert's testimony have a sound basis in

25   the knowledge and experience of the relevant discipline. Alaska

26   Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th

27   Cir. 2013). The reliability of expert testimony is not based on

28   mathematical precision. Rather, courts may consider: (1) whether the

                                     4

theory or technique can be, or has been, tested; (2) whether it is subjected to peer review and publication; (3) whether it has a known or potential rate of error; and (4) whether it has been generally accepted in the scientific community. Daubert, 509 U.S. at 593-94.

These factors apply "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire, 526 U.S. at 141 (quoting FRE 702). Not all areas of expertise, however, "have the exactness of hard science methodologies," as "there are areas of expertise, such as the social sciences in which the research, theories and opinions" form the basis of expert opinion. United States v. Simmons, 470 F.3d 1115, 1123 (5th Cir. 2006) (citing Kumho, 526 U.S. at 153) (internal citations and quotation marks omitted). For this reason, trial judges are given broad discretion to determine whether Daubert's specific factors are "reasonable measures of reliability in a particular case." Id. Courts have stated that "[i]n such instances, other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations." Id.

Tasked with a gatekeeping role, the court must "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." Alaska Rent-A-Car, Inc., 738 F.3d at 969. This is because the trial court is "a gatekeeper, not a fact finder." United States v. Sandoval-Menxoza, 472 F.3d 645, 654 (9th Cir. 2006). Once the prerequisites of relevance and reliability are established, the expert's testimony should be admitted and remaining questions as to the weight to be afforded that testimony are left to the jury. Alaska Rent-A-Car, Inc., 738 F.3d at 970.

**B.   Cohn's Proffered Testimony Is Highly Relevant, Probative and Will Aid the Jury, and Is Admissible Under FRE 702 And Daubert**

Defendant contends Cohn's proffered testimony is irrelevant because (1) the relevant value for the charged offense is the purchase price, not the fair market value, and (2) even if the fair market value is relevant, only the value of the Mosaic at the time of importation, "before it was restored," is relevant.  The first contention is incorrect, and the second contention misconstrues Cohn's report.

**1. Cohn's Testimony Concerning Value is Highly Relevant and Probative.**

To limit the government's proffered expert testimony, the defense advances an overly narrow conception of value – as it did when it tried to prevent the government from showing the post-restoration Mosaic to the jury.  The defense erroneously claims that the "value" determination for imported merchandise is limited to the price that defendant paid for the Mosaic (presumably, as evidenced by a fake invoice).  (Mot. at 3.)

There are numerous methodologies for determining the value of an imported object, as the regulation the defense relies upon makes clear.  See 19 U.S.C. § 1401a(a)-(f). In different circumstances from those involving artwork and antiquities, the purchase price can determine the value (specifically, the "transaction value").  See id. § 1401a(a). But an object's value may also be ascertained by alternative means when the transaction value is indiscernible, as it is here, because of the nature of the item being imported or because false information is provided concerning purchase price.  See id. § 1401a(f).  Indeed, defendant acknowledges that subsection (f) permits

6

"reasonably adjusted" appraisals "'to the extent necessary to arrive
at value.'" (Mot. at 7 (citing 19 U.S.C. § 1401a(f)(1))) The fact
that subsection 1401a(f) does not "explicitly refer to fair market
value" (id.) is of no consequence when the provision clearly
envisions circumstances when "transaction value" is inapplicable and
"adjusted" appraisals are required. Here, defendant concealed from
Customs the fact that he was importing an antiquity and the
antiquity's Syrian origin, and he presented a fake invoice purporting
to be the purchase price. Customs, therefore, did not have the
opportunity to appraise the import, as 19 U.S.C. § 1401a(f)(1)
contemplates.

The sole case the defense cites for its contention that the
value should be determined by the purchase price is United States v.
Ismail, 97 F.3d 50 (4th Cir. 1996).  That case does not support the
defense's narrow interpretation of value.  As the Fourth Circuit
recognized, the case law "and § 1401a certainly stand for the
proposition that transaction value may include more than the 'actual
price' of the merchandise."  Id. at 63. Similarly, defendant's
citation to the District of South Carolina's Pattern Jury
Instructions (Mot. at 4) is unavailing because it provides only
general guidance, fails to account for the valuation of art and
antiquities, and does not apply under these circumstances.

On the issue of value determination for artwork and antiquities,
the government will proffer the testimony of CBP Specialist William
Tarter as an expert.  As explained in the government's opposition to
defendant's motion in limine to exclude portions of Tarter's expert
testimony, Tarter has extensive experience concerning imports and the
documentation associated with the importation of cultural items such

7

as the Mosaic.  He will testify concerning the proper way to classify the value of artwork and Customs and Border Protection's ("CBP") scrutiny of imports of cultural property.  He will explain that – when importing artwork and cultural items – the correct value for an importer to declare is the amount he/she anticipates the artwork will yield at auction.  Tarter also will testify that CBP consults third-party appraisers, including experts at Art Recovery International, an investigation firm that specializes in the recovery of stolen and/or looted works of art, to determine the value and authenticity of artwork and related imports.  Of course, defendant's misclassification as to value, quality, and provenance of the Mosaic in this case not only prevented CBP from accurately assessing value (and the legality of the import itself), but also makes Cohn's expert testimony as to the fair market value of the Mosaic all the more relevant and probative so the jury can understand the value defendant, as the importer, should have declared (or caused his import broker to declare) on the relevant import forms.

Defendant's attempt to homogenize ancient artifacts with regular merchandise items and thus limit the value of the Mosaic to its purchase price defies common sense and encourages the very type of fraud at issue here:  importers could readily use phony papers to "prove" that they had paid low amounts for valuable antiquities and cultural artifacts, and thereby bypass the entire appraisal process used by Customs for art and antiquities.

Defendant's contention, therefore, that fair market value is irrelevant for the purpose of determining whether defendant knowingly misclassified the value of the Mosaic is unpersuasive. The value of the Mosaic is at the heart of the government's case,

and defendant's intent and state of mind will be a critical focus at trial.  The government will prove defendant's knowledge that the Mosaic was a high-value antiquity – defendant has admitted that he paid $12,000 for it – and his knowledge that he was submitting a false invoice to Customs.  When asked by federal agents why a lower number was reported to Customs instead of the $12,000 defendant had paid, defendant admitted that he did so to lower the duties he would pay.  Defendant also admitted to agents that he thought he could sell the Mosaic for $130,000.

Accordingly, evidence of the actual value, based on a fair market value assessment by an expert appraiser, will assist the jury in determining whether defendant knowingly and falsely misclassified the value of the Mosaic, which was far greater than the value defendant declared to Customs and fair greater than his purported purchase price.  Cohn's proffered testimony, therefore, is highly relevant to the jury's task of determining whether the Mosaic defendant imported was worth more than the amount he declared.

The Ninth Circuit has held that "the relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" Messick, 747 F.3d at 1196 (quoting Daubert II, 43 F.3d at 1315). "Testimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).  Jurors are not likely to know the value of an ancient Syrian mosaic.  Cohn has specialized experience and knowledge of these facts and can explain them to the jury.

1        **2. Cohn's Testimony Concerning the Fair Market Value of
2        the Mosaic at the time of Import is Relevant and
         Probative.**

3        Defendant contends that even if fair market value is relevant,

4   Cohn's testimony should be precluded because he opines on the value

5   of the Mosaic in its restored condition.  This interpretation

6   misconstrues Cohn's report and the value appraisal he provided.[1]

7   Cohn's Appraisal Report identifies August 13, 2015, as the "effective

8   valuation date." (Mot., Ex. 1, at 6.) The report's appraisal reflects

9   the value of the Mosaic as of the effective date – which corresponds

10  to the date the Mosaic was imported into the United States, before

11  Stephen Miotto restored it.  Although the report references the

12  condition of the Mosaic at the time of the report in 2018 and the

13  fact that it was previously restored, the report does not indicate

14  the Mosaic was appraised in its final state. Appraisals with

15  effective date valuations are not uncommon.

16      Although the defense contests the use of a fair market

17  valuation, it does not – and cannot – dispute the relevance of

18  valuation at the time the Mosaic was imported.  The Mosaic's value,

19  much like viewing the Mosaic *even* in its restored form, is relevant

20  to the jury's determination concerning the defendant's motivation and

21  intent. Specifically, as defendant has conceded, "[t]he mosaic

22  appears as an impressive and valuable work of art." (Dkt. No.

23  63,Def's Opp. to the Government's MIL, at 12.)  It is precisely

24

25  ───────────────

26      [1] Recently, the government informed the defense that it will provide
    a supplemental report, which will contain a pre-restoration appraisal.
    However, after additional consultation, Cohn clarified that his Appraisal
27  Report, dated September 27, 2018, was an appraisal of the Mosaic at the
    time of importation before it had been restored by Stephen Miotto. The
28  government will produce to defense a report of investigation documenting
    this consultation and Cohn's clarification concerning his Appraisal Report.

because the Mosaic is an "impressive and valuable work of art" that defendant falsely classified its value to avoid scrutiny by Customs, and then spent more than three times the amount he paid for it (approximately $40,000) to restore it.  Cohn's testimony concerning the value will assist the jury in assessing the Mosaic and is probative of defendant's motivation for the scheme – a windfall resale.  The value of the Mosaic also is probative of the jury's determination concerning defendant's contention that the Mosaic appeared to be, as he has previously represented to the Court in pre-trial filings, an "old rug with stones." (Dkt. No. 63, Def's Opp. to the Government's MIL, at 12.) To that end, the restoration process, the Mosaic's condition at the time of import and later after Miotto restored it, as well as the Mosaic's value, on which Cohn will opine, among other evidence, will help to establish defendant's knowledge that he was lying to Customs when he falsely declared the value of the Mosaic.

    **C.  Cohn's Testimony Is Based on Sufficient Facts or Data and Facts Reasonably – and Regularly – Relied on By Art Appraisers and Thus Satisfies FREs 702, 703, and <u>Daubert</u>.**

Defendant challenges Cohn's proffered testimony on two grounds: (1) it is purportedly not based on "sufficient comparative data this is reflective of the actual art market" (Mot. at 10); and (2) it is purportedly based on "facts not reasonably relied upon by art appraisers." (<u>Id.</u> at 11.)  The Court should reject both contentions.

    <u>1. Cohn's Testimony is Based on Sufficient Facts and Data and Satisfies Rule 702.</u>

Rule 702 allows a witness who is qualified as an expert by knowledge, skill, experience, training, or education to testify

11

concerning his opinion if, among other requirements "the testimony is based on sufficient facts or data." FRE 702(b). Cohn has used a "Market Data Comparison Approach," which the defense argues does not satisfy Rule 702's requirement because the data are allegedly incomplete or inaccurate. Specifically, defendant argues that because Cohn indicates the market has softened, has become thin in the public sphere, and much of the sales are done privately, conclusions based on publicly available data are unreliable. (Mot. at 11.) Defendant implicitly suggests a near mathematical approach to valuation is required. This is neither necessary, nor applicable or appropriate when assessing the value of artwork and cultural antiquities.

Cohn, like many qualified art appraisers, used the most common methodology for assessing the value of artwork and antiquities – the market data comparison approach, which "analyzes recent sales of comparable articles at major international and regional fine art auctions, private and public sales, shows and exhibitions, as well as prevailing prices at retail shops and galleries where the article may normally be traded." (Mot., Ex. 1 (Cohn's Report, at 18.)) In applying this methodology, Cohn selected four sales comparisons, analyzing their size, condition, period, and provenance, which are important factors in valuing an object. (Id. at 15.) He acknowledges that where an absolute direct correlation is not available, these factors will nevertheless guide his valuation assessment. Cohn's assessment was not done in a vacuum. Rather, it was informed by his experience as a certified appraiser in Asian Antiquities, his membership in the Appraisers Association of America for approximately 25 years (id. at 19), his work as a dealer of Asian art, and the

1  numerous appraisals he has done in the past, in addition to his other
2  experience as identified in his report and curriculum vitae.

3        The methodology Cohn used, and his Appraisal Report were
4  prepared in conformity with the 2018-19 Uniform Standards of
5  Professional Appraisal Practice ("USPAP"), which is written by the
6  Appraisal Standards Board of the Appraisal Foundation, a
7  Congressionally authorized not-for-profit organization dedicated to
8  the advancement of professional valuation for appraisers to ensure
9  public trust in the appraisers' work. (Id. at 7.)  USPAP provides a
10  minimum set of quality standards for appraisals in the United States.
11  It guides appraisers to use those methods that are acceptable to
12  other appraisers familiar with the subject matter.  See generally,
13  Uniform Standards of Professional Appraisal Practice, available at:
14  Uniform Standards of Professional Appraisal Practice (USPAP)
15  (appraisalfoundation.org).  In his appraisal, also in compliance with
16  USPAP, Cohn outlined the Scope of Work, in which he demonstrates
17  that he gathered preliminary data about the project, including the
18  nature of the cultural property to be appraised, identified the basis
19  of value (fair market) and the approach to valuation (Market Data
20  Comparison), and identified important assumptions made, among other
21  information contained in this section of his Appraisal Report.
22  (Mot., Ex. 1 at 17.)

23        In terms of methodology, the Market Data Comparison approach is
24  widely used by art and antiquities appraisers, and it reflects recent
25  sales of comparable articles.  Cohn's reliance on such data does not
26  render the methodology unreliable and indeed such comparable sales
27  methodologies have been frequently upheld by courts in different
28  contexts.  See, e.g., United States v. 22.80 Acres of Land, More or

13

1  Less, in San Benito Cnty., State of Cal., 839 F.2d 1362, 1363-65 (9th
2  Cir. 1988) (holding in eminent domain proceedings that landowner's
3  comparable sales valuation methodology for determining fair market
4  value for condemned rock taken from landowners' property was
5  acceptable and generally recognized as valid and appropriate, and
6  noting the district court was not restricted to a particular method
7  in arriving at fair market value).  Cf. United States v. 0.376 Acres
8  of Land, 838 F.2d 819, 821, 827 (6th Cir. 1988) (noting, in an
9  eminent domain case, that "[a]ppraising real estate is more an art
10 than a science; it is incapable of mathematical precision and
11 implicates methods of judgment" and the government's appraiser was
12 acting reasonably as a well-qualified expert).

13      It was well-established in Daubert, and successive precedent,
14 that "[v]igorous cross-examination, presentation of contrary
15 evidence, and careful instruction on the burden of proof are the
16 traditional and appropriate means of attacking [even] shaky but
17 admissible evidence." Daubert, 509 U.S. at 596. This is because the
18 district court is a "gatekeeper, not a fact finder." Sandoval-
19 Menxoza, 472 F.3d at 654. Thus, any concerns that the defense may
20 have about differences in public and private markets, the softening
21 of markets, or comparative sales should be addressed through cross-
22 examination at trial, not exclusion of Cohn's testimony, which is
23 based on accepted methodology and reliance on sufficient facts and
24 data.

25          2. Cohn's Testimony Is Based on Facts Reasonably Relied
26             Upon by Appraisers and Satisfies Rule 703.

27      Defendant argues that Cohn's testimony should be excluded
28 because it does not satisfy Federal Rule of Evidence 703, as it is

purportedly based on facts not reasonably relied upon by art appraisers. (Mot. at 11.) Not so. As defendant acknowledges, an expert can base their opinion on facts they have been made aware of and may rely on hearsay or other facts or data "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." FRE 703.

Cohn relied on certain facts and assessments by Basileus Zeno, a specialist with a Master's Degree in Archeology who had performed extensive research on Syrian mosaics. (Mot., Ex. 1, at 9-10; Ex. 2 at ALC-GOV-000276.) As is standard practice, Cohn identified these facts and "assumptions" about the artwork he was appraising (the Mosaic), namely the description, condition, and authenticity of the Mosaic, in the Scope of Work section of his appraisal. (Mot., Ex. 1, at 9-10, 17-18.) Contrary to defendant's suggestion, Cohn was not relying on the facts or opinions of law enforcement agents "who are not experts in antient mosaics." (Mot. at 12.) Rather, FBI agents interviewed Zeno and memorialized the interview in a report.

Cohn's reliance on the opinions and documents provided to him concerning description, condition, and authenticity of the Mosaic are appropriate. Cohn is not providing testimony regarding the accuracy of this information, and indeed he explicitly discloses his assumptions. Rather, after viewing the Mosaic himself, he also relied on certain information for context and background to formulate his opinion concerning the value of the Mosaic based on recent sales of comparable artwork.

Courts have time and again upheld experts' reliance on external and third-party facts, including appraisers. See, e.g., Masayesva for and on Behalf of Hopi Indian Tribe v. Hale, 118 F.3d 1371, 1379

1   (9th Cir. 1997) (district court did not err in admitting expert
2   appraiser's testimony regarding the value of corn based on what
3   others told him about corn prices because "such reliance is
4   permissible, since experts in the field, i.e. appraisers, regularly
5   go to third parties for sales figures . . ."); <u>Hurst v. United</u>
6   <u>States</u>, 882 F.2d 306, 311 (8th Cir. 1989) (expert witnesses may give
7   their opinions based on documents, reports, and testimony of other
8   witnesses and a trial court should exclude an expert opinion only if
9   it is so fundamentally unsupported that it cannot help the
10  factfinder because any weaknesses in the factual underpinnings of an
11  expert opinion go to its weight and credibility, not its
12  admissibility); <u>U.S. v. 0.161 Acres of Land, more or less, situated</u>
13  <u>in City of Birmingham, Jefferson Cnty., Ala.</u>, 837 F.2d 1036, 1040-41
14  (11th Cir. 1988) (in an eminent domain proceeding, expert's
15  testimony could rely on assumptions other than evidence of
16  comparable sales, provided there is a rational foundation for those
17  assumptions).

18       For all these reasons, Cohn's testimony is based on sufficient
19  facts and data and is reliable.

20       **D.   Cohn's Testimony Reliably Applies the Market Data
21            Comparison Approach to his Appraisal of the Mosaic's Value.**

22       Defendant seeks to exclude Cohn's testimony under Rule 702
23  because he contends Cohn has "not 'reliably' applied the principles
24  and methods to the facts of this case." (Mot. at 13.)  In essence,
25  defendant challenges Cohn's report for its purported failure to
26  explain the "how and why" Cohn selected certain artworks to compare
27  to the Mosaic, and how Cohn reached a fair market value of $450,000
28  when he purportedly provided no calculations or quantitative

1    explanation. (Mot. at 14-15.)  Factually and legally, defendant's

2    challenges are misplaced.

3        First, Cohn provided a lengthy report containing a detailed

4    description of the four comparable artworks and an analysis of

5    value discussing the size, condition, period, and provenance for

6    them. (Mot., Ex. 1 at 15.)  Cohn further described the bearing that

7    each factor had on his value assessment. (<u>Id.</u> at 15-16.)  In the

8    report's Scope of Work section, Cohn defined the market data

9    comparison approach, explained the market examined, and identified

10   the assumptions he made concerning authenticity and condition. (<u>Id.</u>

11   at 17-18.)  In sum, Cohn explained exactly how he reached his value

12   assessment of $450,000 and the method he employed to do so.[2]

13       The <u>Daubert</u> reliability requirement "is flexible" and

14   "<u>Daubert's</u> list of specific factors neither necessarily nor

15   exclusively applies to all experts or in every case." <u>Kumho Tire</u>

16   <u>Co. Ltd. v. Carmichael</u>, 526 U.S. 137, 141, 119 S.Ct. 1167, 143

17   L.Ed.2d 238 (1999). "The 'list of factors was meant to be helpful,

18   not definitive' and the trial court has discretion to decide how to

19   test an expert's reliability as well as whether the testimony is

20   reliable, based on 'the particular circumstances of the particular

21   case.'" <u>Id.</u> at 151.  As the Ninth Circuit has noted, "[t]he

22

23       [2] In an effort to attack Cohn's use of certain artwork
     comparables, defendant points out a difference between a draft and
24   final version of Cohn's Object Reports. In his draft Object Report
     (Mot. 1, Ex. 3), Cohn uses three comparables. In his final report,
25   Cohn added a fourth comparable. (<u>Id.</u> at Ex. 1.) Defendant states
     "[i]t appears that one main difference between the draft and the
26   final report is that Cohn found a fourth 'comparable' article with a
     higher sales price to justify a higher conclusion." (Mot. at 14.) The
27   price of the fourth comparison ($124,239) was far less than the price
     of the highest valued comparable ($6,000,000). The higher-valued
28   comparable was included in both reports. The defense is free to
     explore these comparables during cross-examination at trial.

district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." Alaska Rent-A-Car, Inc., 738 F.3d at 970 (rejecting challenges "to three aspects of the witnesses' testimony: using Alamo as the comparator, using the national rather than the Alaska market as a baseline, and extrapolating from the Juneau market to the entire Alaska market. None of these challenges make the district judge's decision to admit the testimony an abuse of discretion.  They all go to the weight of the testimony and its credibility, not its admissibility.").

Second, as to defendant's argument that Cohn does not provide calculations or quantitative explanation, this defies reason when contemplating the appraisal of antiquities.  Nor does the law require it.  To determine the reliability of expert testimony, courts recognize that "[b]ecause there are areas of expertise, such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies, trial judges are given broad discretion to determine whether Daubert's specific factors are, or are not, reasonable measures of reliability in a particular case." United States v. Simmons, 470 F.3d 1115, 1123 (5th Cir. 2006) (citing Kumho, 526 U.S. at 153) (internal citations and quotation marks omitted).  Courts have stated that "[i]n such instances, other indicia of reliability are considered under Daubert, including professional experience, education, training, and observations." Id. The trial court enjoys "broad latitude" in deciding how to determine the reliability of proposed expert testimony. Kumho, 526 U.S. at 141-42.

Cohn's extensive professional experience, education, training,

and observations of the Mosaic and other artwork all demonstrate indicia of reliability. The admissibility of expert testimony to establish fair market value or otherwise employ a comparative sales approach to valuation does not chart new territory, as it has been frequently upheld by courts. The result should be no different here. See, e.g., F.C. Wheat Mar. Corp. v. United States, 663 F.3d 714, 720, 724-25 (4th Cir. 2011) (district court's reliance, during a bench trial, on expert testimony regarding contemporaneous sales was sufficient to establish a fair market value for a yacht, despite the yacht owners' contention that other valuations such as unique suitability to the owners should also be considered); Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1223-25 (5th Cir. 1978) (expert opinion on value was admissible and holding in part that weight to be given to an expert opinion on the subject of fair market value, as regards a determination of the benefit conferred by a constructive dividend, depends on the expert's qualifications, his peculiar knowledge of the facts under consideration, and the reasons he tenders in support of his conclusion). Moreover, courts have also upheld the use of alternative methods of valuation even when market comparables are preferable, showing the broad latitude courts have when determining reliability.  See, e.g., Trout Ranch, LLC v. C.I.R., 493 F. App'x 944, 949-51 (10th Cir. 2012) (expert appraisal that opted to use a before-and-after analysis for determining the value of a charitable deduction for a conservation easement, as opposed to considering sales of comparable easements – as per U.S. Treasury regulations, was a valid appraisal). Cf. United States v. 33.5 Acres of Land, More or Less, Okanogan Cnty, State of Wash., 789 F.2d 1396, 1400-01 (9th Cir. 1986) (holding in a condemnation proceeding that

19

while referring to sales of comparable property is the preferred means of determining land value, expert witnesses may give their opinions on just compensation based on other methods as long as there is a factual basis for forming their opinion and the expert is qualified to appraise value of subject property).

In sum, contrary to defendant's contention, Cohn's testimony is the product of reliable principles and methods, which were appropriately applied to the facts of the case. His testimony should be admitted.

### E.    No Daubert Hearing Is Necessary

The Court is not required to hold a Daubert hearing, "but rather must merely make a determination as to the proposed expert's qualifications." Hopkins v. Dow Corning Corp., 33 F.3d 1116, 1124 (9th Cir. 1994).  The Ninth Circuit has held that:

> [i]n light of the Supreme Court's emphasis on the broad discretion granted to trial courts in assessing the relevance and reliability of expert testimony, and in the absence of any authority mandating such a hearing, we conclude that trial courts are not compelled to conduct pretrial hearings in order to discharge the gatekeeping function.

United States v. Alatorre, 222 F.3d 1098, 1100 (9th Cir. 2000).

No Daubert hearing is necessary because defendant raises no serious questions about Cohn's methodology or opinions.

### F.    Cohn's Testimony Is Admissible and More Probative Than Prejudicial.

Defendant argues Cohn's testimony should be excluded under Rule 403 because its probative value is substantially outweighed by a "danger of . . . confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403.  For the reasons already discussed herein,

Cohn's testimony is relevant and probative and should not be excluded under Rule 403. <u>See</u>, <u>e.g.</u>, <u>U.S. v. Hankey</u>, 203 F.3d 1160, 1172 (9th Cir. 2000).

As set forth above, the value of the Mosaic is not limited to the purchase price of the Mosaic, but rather is determined by the fair market value. <u>See</u> <u>supra,</u> Section III.B.  The government's expert on the importation and classification of cultural property (William Tarter), will testify concerning the classification of the value of artwork and cultural property, which should reflect the amount the importer anticipates the item will yield when it is sold at auction.

Here, defendant's false classifications as to the value and quality of the Mosaic deprived CBP of the opportunity to properly scrutinize the import and engage with the importer and a third-party appraiser to determine what a buyer would have been willing to pay for the Mosaic, which ultimately should have been used as the value declared on the CBP Form 7501.  This makes Cohn's expert testimony as to the fair market value of the Mosaic – "the price that property would sell for on the open market between a willing buyer and a willing seller . . ." (Mot., Ex. 1, at 23) — even more relevant and probative so the jury can understand not only defendant's knowledge and motivation for the scheme, but also the value the defendant, as the importer, should have declared on the  import forms. Contrary to defendant's contentions, this evidence is not cumulative, as defendant's own admissions and other evidence do not provide a substitute for a certified appraiser's assessment of the fair market value of the Mosaic.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court deny defendant's motion and permit Cohn's expert testimony at trial.