CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MOHAMAD ALCHARIHI,<br><br>　　　　　Defendant. | Case No. CR 20-307-GW<br><br>**DEFENDANT MOHAMAD ALCHARIHI'S REPLY TO MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF MICHAEL COHN**<br><br>Hearing Date: 4/20/2023<br>Hearing Time: 8;00 a.m. |

Defendant Mohamad Alcharihi, by and through his counsel of record, hereby files this reply in support of his motion *in limine* to exclude the expert testimony of Michael Cohn.

//

//

//

//

This reply is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence and argument the Court permits.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 6, 2023        By  */s/ Isabel Bussarakum*
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSH WEISS
Deputy Federal Public Defenders
Attorney for MOHAMAD ALCHARIHI

2

## **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A.    Cohn's Testimony Should Be Excluded Under Rule 702 Because the Fair Market Value of the Mosaic is Irrelevant ............................................. 2

    B.    The New Information That Cohn's Appraisal Applies to the Mosaic In Its Unrestored Condition Raises Additional Concerns About the Reliability of His Methodology and Opinion ................................................. 5

    C.    Cohn's Testimony Should Be Excluded Under Rules 702 and 703 Because the Government Failed to Demonstrate That It Is Based on Sufficient Comparative Data, and Facts Reasonably Relied On by Art Appraisers .................................................................................................. 6

    D.    The Government Fails to Address Questions About the Reliability of Cohn's Application of the Market Data Comparison Approach, Thereby Supporting the Exclusion of Cohn's Testimony ........................... 8

    E.    Cohn's Testimony Should Be Excluded Under Rule 403 ......................... 9

III. CONCLUSION .............................................................................................. 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The expert testimony of Michael Cohn regarding the fair market value of the mosaic at issue in this case should still be excluded because, as demonstrated in the Motion and below, it is irrelevant and unreliable under Federal Rules of Evidence 702 and 703, and its probative value is substantially outweighed by numerous factors under Rule 403. (ECF No. 77.) Instead of demonstrating otherwise, the government's Opposition raises additional bases either to exclude Cohn's testimony or hold a *Daubert* hearing.

In particular, the government argues in its Opposition that for artwork and cultural items, the declared value should be the anticipated auction value. Contrary to the defense's definition of value—which is supported by case law, another district's pattern jury instruction, a statute, and CBP publications—the government's definition is based, not on any published authority, but solely on the anticipated testimony of a CBP Specialist. To the extent there is any ambiguity in the statute, the rule of lenity requires the Court to side with Mr. Alcharihi's definition, which would make Cohn's testimony about the fair market value of the mosaic would be irrelevant. However, if the Court accepts the government's definition of value, that definition fails to give an ordinary person notice of how to conform their behavior to the law, rendering the charged statute, 18 U.S.C. § 541, void for vagueness as applied to this case, and requiring dismissal of the Indictment as to value.

What is more, in the Opposition, the government argues for the first time that Cohn's appraisal applies to the mosaic in its unrestored condition—an assertion that appears to conflict with the government's prior briefing, as well as statements made during a meet-and-confer call. This new information raises additional concerns about the reliability of Cohn's methodology and conclusion as explained below.

For all of these reasons, the Court should exclude Cohn's testimony or hold a *Daubert* hearing before permitting his testimony at trial.

## II. ARGUMENT

### A. Cohn's Testimony Should Be Excluded Under Rule 702 Because the Fair Market Value of the Mosaic is Irrelevant

As briefed in the Motion, Cohn's appraisal of the mosaic's fair market value is irrelevant because the relevant "value" for the purpose of the charged offense, 18 U.S.C. § 541, is the "transaction value" or purchase price that Mr. Alcharihi paid for the mosaic. (Mot. at 3-7.) Not the fair market value. Not only did the defense support its definition of value in the Motion with case law, *United States v. Ismail*, 97 F.3d 50, 62 (4th Cir. 1996),[1] and the District of South Carolina's Pattern Jury Instructions for Federal Criminal Cases, but the defense also explained that transaction value was the default value used by the governing statute, 19 U.S.C. § 1401a, as well as publications by the U.S. Customs and Border Protection. (Mot. at 3-7.)

In contrast, the government cites no case law, pattern instructions, publications, or published authority of any kind to support its theory that the declared value for artwork and antiquities is supposed to be the anticipated auction amount. As noted in the Motion, fair market value is not explicitly listed as a valuation methodology in 19 U.S.C. § 1401a. Subsection (a)(1) of the statute provides a hierarchy of six forms of valuation. The first form of valuation—that is, the default definition of declared value—is "transaction value." 19 U.S.C. § 1401a(a)(1)(A). If value cannot be determined using the first 5 valuation methodologies, the statute permits deriving a

---

[1] The government argues that in *Ismail*, the Fourth Circuit recognized that case law and "§1401a certainly stand for the proposition that transaction value may include more than the 'actual price' of the merchandise." (Opp. at 7.) This is irrelevant to the dueling arguments at issue in this case. In that quote from *Ismail*, the Fourth Circuit is referring to the appellants' argument that transaction value can include other costs or expenses, in addition to the "actual price" of the merchandise. The Fourth Circuit notes that, in another case, *Moss*, for example, transaction value included a "commission" because it was "necessary to allow the purchase of the goods." *Ismail*, 97 F.3d at 63. In contrast, "the amount by which appellants inflated the price" of goods in *Ismail* "did not in any way assist in [the] acquisition" of the goods. *Id.* This discussion has nothing to do with the alternative means of valuation listed in 19 U.S.C. § 1401a. Moreover, the Fourth Circuit rejected the appellants' arguments and maintained that "transaction value" was the relevant value for 18 U.S.C. §§ 541 and 542.

2

value from methods set forth in subsections (b) through (e) "with such methods being reasonably adjusted to the extent necessary to arrive at a value." 19 U.S.C. §§ 1401a(a)(1)(F), 1401a(f). This provision of last resort is the only possible methodology that "fair market value" could fit into. But even then, subsection (f) does not actually refer to fair market value. Contrary to the government's conclusory assertion, §1401a(f) does not "clearly envision[]" fair market value appraisals. (Opp. at 7.)

It appears that the government will rely on the expert testimony of CBP Specialist William Tarter to argue that the correct value to declare for artwork and cultural items is the amount the importer anticipates the artwork will yield at auction. (Opp. at 7-8.) As explained by the government in its separation Opposition to Defendant's Motion *in Limine* to Exclude Parts of William Tarter's Expert Testimony:

> Mr. Tarter will explain that based on his experience in the trade of ancient artifacts and works of art, the typical importer is a museum or known entity involved in the trade. CBP then engages with those importers and a third-party appraiser to determine what a buyer is willing to pay for the imported good. That amount is subsequently used as the correct value to declare on the CBP Form 7501.

(Govt.'s Opp. to MIL re: Tarter (ECF No. 86) at 13.) Tarter's opinion appears to be based on his own practice and experience. Neither Tarter nor the government has provided any published authority that the declared value for artwork and cultural items is the amount the importer anticipates it will yield at auction.

All of the authority cited in the Motion supports the defense's position that, for the purposes of 18 U.S.C. § 541, value refers to the transaction value. However, if the Court finds that there is any ambiguity in the statute, in light of the government's argument, the "rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). Under the rule of lenity, the relevant value is transaction value, and Cohn's testimony on the mosaic's fair market value should be excluded as irrelevant.

3

1        If the Court adopts the government's understanding of value—which is that
2   "[t]here are numerous methodologies for determining the value of an imported object,"
3   and that "[i]n different circumstances from those involving artwork and antiquities, the
4   purchase price can determine the value," but that for artwork and antiquities, value
5   means the anticipated auction value based on CBP Specialist William Tarter's practice,
6   but not any published authority (Opp. at 6-8)—that would obviously render 18 U.S.C.
7   § 541 void for vagueness as applied to the facts of this case.  The Fifth Amendment
8   provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due
9   process of law."  U.S. Cont., amend. v.  "[T]he Government violates this guarantee by
10  taking away someone's life, liberty, or property under a criminal law so vague that it
11  fails to give ordinary people fair notice of the conduct it punishes, or so standardless
12  that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595
13  (2015).
14       The default definition of value under 19 U.S.C. § 1401a and CBP's own
15  publications is transaction value.  That definition gives fair notice to ordinary people as
16  to what value should be declared in a customs form.  Based on Tarter's anticipated
17  testimony, it appears that only "museum[s] or known entit[ies] in the trade" might be
18  aware that the value of artwork and cultural items is the anticipated auction value, and
19  that they should contact CBP to jointly determine this value *before* declaring an item
20  for importation.  (Govt.'s Opp. to MIL re: Tarter (ECF No. 86) at 13.)  But neither
21  Tarter nor the government have pointed to a published authority that would give
22  "ordinary people fair notice" of *this* definition of value.  *Johnson*, 576 U.S. at 595.
23       Thus, the government's definition of value would render 18 U.S.C. § 541 void
24  for vagueness as applied to the facts of this case, in which an ordinary person imported
25  a mosaic into the country.  The Court should reject the government's definition, and
26  find that Cohn's testimony about the fair market value is irrelevant.  If it accepts the
27  government's definition, it should dismiss the Indictment as to value because the statute
28  is void for vagueness as applied to Mr. Alcharihi's case.

Finally, the government argues that limiting value to transaction value would "encourage the very type of fraud at issue here: importers could readily use phony papers to 'prove' that they had paid low amounts for valuable antiquities and cultural artifacts, and thereby bypass the entire appraisal process used by Customs for art and antiquities." (Opp. at 8.) This argument makes no sense. It is still a violation of law to use "phony" papers and declare a lower transaction value, than the actual one. Indeed, one way in which the government intends to prove the instant offense is by showing that while Mr. Alcharihi declared an amount of $2,199, he actually paid $12,000 for the mosaic. (*See, e.g.*, ECF No. 60 at 7, 9; ECF No. 86 at 14.) Even if the Court were to correctly limit value to transaction value, the government is free to present evidence that Mr. Alcharihi actually paid more for the mosaic, than the value he declared.

**B.     The New Information That Cohn's Appraisal Applies to the Mosaic In Its Unrestored Condition Raises Additional Concerns About the Reliability of His Methodology and Opinion**

The government now asserts that Cohn's valuation of the mosaic was based on the mosaic in its unrestored condition. This comes as a complete surprise to the defense. Cohn's report includes a photograph of the mosaic in its restored condition. (Mot., Ex. 1 at 9.) His report also describes the condition of the mosaic as "'previously restored" (*id.* at 10), and Cohn comments that "[r]estoration on the appraised piece is acceptable given that a substantial part is original and the restoration allows the piece to be presented well" (*id.* at 15). In a prior brief, the government noted that its "appraisal expert valued the Mosaic at $410,000 without any restoration work" (ECF No. 66 at 5), which equals the $450,000 value in Cohn's report minus the $40,000 that Mr. Alchairhi invested in the restoration. Thus, the government's prior briefing seemed to indicate that Cohn's $450,000 appraisal was of the restored mosaic. Finally, when the defense met and conferred with the government about this Motion, the government did not correct the defense's understanding that Cohn's appraisal was of the restored mosaic.

5

1  In fact, the government told the defense that it would provide a supplemental report by
2  Cohn containing a pre-restoration appraisal.  (Mot. at 8 n.3; Opp. at 10 n.1.)
3        The confusion around Cohn's report, and the newly received information that his
4  report supposedly appraised the mosaic in its unrestored condition, raises additional
5  concerns about his methodology and the reliability of his resulting conclusion.  For
6  example, why did it seem unclear even to the government that the appraisal was of the
7  unrestored mosaic?  Additionally, the most recently produced Report of Investigation
8  indicates that while the effective date of valuation in the final report was August 13,
9  2015, which was before the mosaic was restored, the valuation was "based on the
10 market" in September 2018, which was when the report was written and post-dates the
11 mosaic's restoration.  (Ex. 4 at 3.)  Indeed, the first comparable mosaic used by Cohn
12 was sold in July 2018.  (Mot., Ex. 1 at 11.)  This begs the question of whether Cohn's
13 appraisal truly valued the mosaic in its unrestored condition?  If so, why did Cohn base
14 his valuation on market data that post-dated the effective valuation date?  These
15 questions raise concerns about the reliability of Cohn's methodology and conclusion.
16 A *Daubert* hearing is necessary for the Court to fulfil its gatekeeping function and
17 ensure that Cohn's methodology and conclusion are reliable.

**C.  Cohn's Testimony Should Be Excluded Under Rules 702 and 703 Because the Government Failed to Demonstrate That It Is Based on Sufficient Comparative Data, and Facts Reasonably Relied On by Art Appraisers**

22       As briefed in the Motion, Mr. Alcharihi moves to exclude Cohn's testimony
23 under Federal Rules of Evidence 702 and 703, or in the alternative, requests a *Daubert*
24 hearing, because his conclusion is based on insufficient comparative data, and facts not
25 reasonably relied on by art appraisers.  (Mot. at 10-13.)  The government completely
26 fails to address these arguments in its Opposition.
27       *First*, with regard to the insufficient comparative data, Mr. Alcharihi noted in the
28 Motion that Cohn provides no explanation of how he picked the 4 comparable mosaics

6

in his report, and no explanation of why they are considered "comparable." (Mot. at 10-11.) The mosaics range widely in size, quality, style, subject matter, and date of sale. (*Id.*) What is more, Cohn himself notes in his own report that in recent times, the market has "become very thin in the public sphere," as "much of the sales are done privately." (Mot., Ex. 1 at 16.) This acknowledgement, coupled with the wide-ranging comparables, raise concerns that Cohn's valuation is not based on mosaics that are truly comparable, or that it is not based on a sufficient or representative set of comparables.

The government completely fails to address this concern in its Opposition. Instead, the government explains why the general methodology that Cohn uses—the market data comparison approach—is reliable. (Opp. at 12-14.) The government cites cases that have upheld this general approach. (*Id.* at 13-14.) But Mr. Alcharihi's Motion did not attack the market data comparison approach in general. Instead, the Motion raised specific concerns about the sufficiency of the comparative data used by Cohn, and that concern was never addressed in the Opposition.

*Second*, with regard to facts not reasonably relied on by art appraisers, Cohn relied, in part, on a Report of Investigation, in which FBI agents summarized an interview with another expert, Basileus Zeno. (Mot. at 11-13.) This was not a report written by Zeno, but by law enforcement agents, and thus, contains a double level of hearsay. As argued in the Motion, a law enforcement report of investigation prepared by agents for the purposes of investigating and charging a criminal offense is not the type of information an art appraiser would reasonably rely on. (Mot. at 12-13.)

Again, the government completely fails to address this concern in its Opposition. Instead, the government argues that Cohn can rely on facts and assessments made by Zeno, and that it is appropriate for him to rely on opinions about the description, condition, and authenticity of the mosaic. (Opp. at 14-15). That was not the specific concern raised by Mr. Alcharihi. None of the cases cited by the government support the notion that art appraisers typically or reasonably rely on law enforcement reports in rendering their appraisal. (Opp. at 15-16.)

7

Because the government fails to resolve the concerns about Cohn's comparative data, and reliance on an FBI Report of Investigation, the Court should still exclude Cohn's testimony for the above reasons, or hold a *Daubert* hearing to inquire into these concerns.

However, if the Court permits Cohn to testify about the assumptions he made based on the Report of Investigation summarizing the interview with Zeno, Mr. Alcharihi makes two requests. First, the Court should limit Cohn's testimony to only the facts or assumptions that "assis[t] the jury in evaluating" Cohn's opinion, and whose "probative value" in doing so "substantially outweighs their probative effect." Fed. R. Evid. 703, Advisory Committee's 2000 Notes. For example, in Cohn's report, he states that Zeno "previously worked on about 1,000 similar mosaics when he was in Syria." (Mot., Ex. 1 at 10.) Cohn should not be testifying about Zeno's qualifications. That is not helpful to the jury in assessing Cohn's opinion. Moreover, this circumvents the rules against hearsay, as Mr. Alcharihi would not have the opportunity to cross-examine Zeno about his qualifications. Second, if the Court permits Cohn to testify about assumptions based on the Report of Investigation, Mr. Alcharihi requests that a limiting instruction that informing the jury that the information from the Report of Investigation must *not* be used for substantive purposes. Fed. R. Evid. 703, Advisory Committee's 2000 Notes.

### D. The Government Fails to Address Questions About the Reliability of Cohn's Application of the Market Data Comparison Approach, Thereby Supporting the Exclusion of Cohn's Testimony

In the Motion, Mr. Alcharihi moved to exclude Cohn's testimony on the basis that he failed to reliably apply the market data comparison approach. (Mot. at 13-16.) In particular, the defense raised concerns about the 4 comparable mosaics ranging in quality, size, subject matter, and condition, as well as concerns about the lack of explanation, including lack of calculations or quantitative explanation, for how Cohn arrived at his valuation.

In response, the government states that Cohn's report is sufficient, and that he need not provide calculations or quantitative explanations. (Opp. at 17, 18.) The government quotes *United States v. Simons*, 470 F.3d 1115, 1123 (5th Cir. 2006), as stating that "there are areas of expertise, such as the social sciences in which the research, theories and opinions cannot have the exactness of hard science methodologies." (Opp. at 18.) While that may be true, Cohn, here, is providing a valuation. He is providing a quantitative opinion. Still, the defense understands that this is not a black-and-white science with an exact answer. And if the 4 comparable mosaics all fell within a narrow range of values, perhaps it would be clearer how Cohn reached his valuation. But here the four comparable mosaics ranged in price from $6,875 to $6 million. (Mot., Ex. 1 at 11-14.) There is a huge differential of $5,993,125 between the least and most valuable comparable, and Cohn has not provided any quantitative explanation for how he reached $450,000 as the value for the mosaic at issue here. Even one of the cases the government cites provides some support for the notion that a valuation should be somewhat scientific. *See F.C. Wheat Maritime Corp. v. United States*, 663 F.3d 714, 724 (4th Cir. 2011) (affirming the district court's discrediting of one expert's valuation, noting that there was "ample reason to doubt [his] credibility," including, in part, that he "admitted that his valuation process was not very scientific").

Given the nearly $6 million differential in the 4 comparable mosaics, there is insufficient information in Cohn's report to determine whether he reliably applied the market data comparison approach to arrive at his valuation. The Court should exclude his opinion, or hold a *Daubert* hearing to assess the reliability of his opinion.

E.  **Cohn's Testimony Should Be Excluded Under Rule 403**

As briefed in the Motion, Cohn's testimony should be excluded under Federal Rule of Evidence 403 because its minimal probative value is substantially outweighed by a danger of confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. (Mot. at 17-18.) Rather than belabor the

point, the defense simply notes that the argument above detailing why fair market value is irrelevant also demonstrates why Cohn's testimony has minimal probative value, and thus, further bolsters the basis to exclude his testimony under Rule 403.

### III. CONCLUSION

For the reasons stated above, the Court should exclude Cohn's testimony, or hold a *Daubert* hearing. Alternatively, if the Court accepts the government's definition of value, it should dismiss the Indictment as to value. Moreover, if the Court permits Cohn to testify about the FBI Report of Investigation summarizing the interview with Basileus Zeno, Mr. Alcharihi asks the Court: (1) to limit Cohn's testimony to only the facts or assumptions that "assis[t] the jury in evaluating" Cohn's opinion, and whose "probative value" in doing so "substantially outweighs their probative effect; and (2) to instruct the jury that the information from the Report of Investigation must not be used for substantive purposes.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 6, 2023          By  */s/ Isabel Bussarakum*
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSH WEISS
Deputy Federal Public Defenders
Attorney for MOHAMAD ALCHARIHI

10