CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>MOHAMAD ALCHARIHI,<br><br>　　　　Defendant. | Case No. CR 20-307-GW<br><br>**DEFENDANT MOHAMAD ALCHARIHI'S REPLY TO MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY OF DR. ERIC DOEHNE**<br><br>Hearing Date: 4/20/2023<br>Hearing Time: 8:00 a.m. |

　　　　Defendant Mohamad Alcharihi, by and through his counsel of record, hereby files this reply in support of his motion *in limine* to exclude the expert testimony of Dr. Eric Doehne.

//

//

//

This reply is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence and argument the Court permits.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 6, 2023            By  /s/ Isabel Bussarakum
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSH WEISS
Deputy Federal Public Defenders
Attorney for MOHAMAD ALCHARIHI

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT ........................................................................................................1

    A. Dr. Doehne's Anticipated Testimony Based on the May 20, 2019 Materials Report Should Be Excluded Under Rule 702 ........................1

        1. The government has not demonstrated that the May 20, 2019 Materials Report is reliable ..................................................1

        2. The May 20, 2019 Materials Report is irrelevant to the government's valuation of the mosaic ..........................................3

    B. The Court Should Exclude Dr. Doehne's Testimony on the Mosaic's Iconography, Characteristic Wear, and Stylistic Similarities to Other Mosaics in Syria, or Hold a *Daubert* Hearing on These Topics ................................................................................4

        1. The Court should preclude testimony, or hold a *Daubert* hearing, if Dr. Doehne will testify about these topics as his own expert analysis and opinion ......................................................4

        2. If Dr. Doehne's testimony on these topics relies on the work of other experts, the Court must engage in a balancing test before permitting it, and issue a limiting instruction if permitting it ........................................................................................7

    C. The Court Should Exclude Dr. Doehne's Testimony on Looting ........10

    D. The Government Should Be Precluded from Presenting Any Evidence or Argument About Terrorist Groups or Occupying Military Forces ..................................................................................11

III. CONCLUSION ..................................................................................................12

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The expert testimony of government witness Dr. Eric Doehne should still be excluded for all of the reasons stated in the Motion because the government has not adequately addressed problems with regard to relevance, reliability, qualifications, and undue prejudice. What is more, there is still quite a bit of uncertainty as to whether Dr. Doehne's testimony on certain topics relies on or incorporates the work of other experts. The government does not elucidate if he is or is not relying on other experts' work, but, instead attempts to simplify the issue by arguing in its Opposition that an expert can incorporate information learned from another expert. As explained further below, the analysis is far more complicated. The Court must determine if Dr. Doehne is relying on the work of other experts, if doing so is reasonable for an expert in his field, and if permitting his testimony about the other expert's work outweighs the prejudice of doing so. If the Court permits Dr. Doehne's testimony about other expert's work, it must give a limiting instruction that it is not to be used for substantive purposes. If the Court is not inclined to exclude Dr. Doehne's testimony, a *Daubert* hearing is absolutely necessary for the reasons stated below.

### II. ARGUMENT

**A. Dr. Doehne's Anticipated Testimony Based on the May 20, 2019 Materials Report Should Be Excluded Under Rule 702**

    **1. The government has not demonstrated that the May 20, 2019 Materials Report is reliable**

The government fails to address a number of arguments raised by Mr. Alcharihi as to the reliability of Dr. Doehne's anticipated testimony based on the May 20, 2019 Materials Report.

In particular, it is still unclear how Dr. Doehne makes the leap from his sub-conclusions about the samples from the mosaic to his overall conclusions, in particular, that the mosaic is likely from Syria. In its Opposition, the government lists the types of

1

testing that Dr. Doehne performed, and the types of articles that he cites to, but there is still no explanation of how he jumps from the testing, the data, and those articles to the conclusion that the mosaic is likely from Syria.  Without this information, the Court cannot gauge the reliability of Dr. Doehne's methodology and resulting conclusion, as required by Federal Rule of Evidence 702.

As noted in the Motion, this unexplained leap from the facts and data to the conclusion triggers concerns with regard to one non-*Daubert* reliability factor cited in Federal Rule of Evidence 702's Advisory Committee Notes.  That is, "[w]hether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion."  Fed. R. Evid. 702 Advisory Committee's 2000 Notes (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).  Notably, Dr. Doehne's analysis of the individual samples from the mosaic do not seem to point to Syria.  Of the 16 individual samples, only his sub-conclusion about the black tesserae reference Syria, and it is only because basalt is a rock found in Syria, not because the black tesserae in the mosaic can be traced directly to Syria. (Mot., Ex. 1 at 11.)  The government completely fails to address this concern in its Opposition.  It does not explain how Dr. Doehne makes the leap from the mosaic samples to his conclusion that the mosaic is from Syria.

Another non-*Daubert* reliability factor cited in Rule 702's Advisory Committee Notes is "[w]hether the expert has adequately accounted for obvious alternate explanations."  Fed. R. Evid. 702, Advisory Committee's 2000 Notes (citing *Claar v. Burlington, N.R.R.*, 29 F.3d 499 (9th Cir. 1994)).  As noted in the Motion, Dr. Doehne found that the pink tesserae in the mosaic was consistent with pink limestone quarried in ancient times near Bethlehem and Jerusalem, and that the white tesserae was typical of Eastern Mediterranean mosaics. (Mot. at 9.)  But there is no explanation in the May 20, 2019 report as to why Israel or other Eastern Mediterranean countries were ruled out as possible countries of origin.  Nor has the government addressed this concern in its Opposition.

Furthermore, in his May 20, 2019 report, Dr. Doehne himself comments that "[d]eciding on questions of authenticity and source depends on evaluating probabilities *in context*, which is different for every object." (Mot., Ex. 1 at 6.) However, Dr. Doehne does not explain how he evaluated the probability that the mosaic at issue here is authentic and from Syria. He simply concluded that "by gathering multiple threads of evidence this report makes a significant contribution of evidence for authenticity and a likely Syrian source of the mosaic." (*Id.*) In its Opposition, the government offers no explanation of how Dr. Doehne evaluated the "probabilities in context" in this case, which seems relevant for the Court to assess the reliability of Dr. Doehne's testimony.

Given these gaps in the bases and reasons for Dr. Doehne's conclusion, the Court should exclude his opinions based on the May 20, 2019 Materials Report; or, at the very least, hold a *Daubert* hearing to assess the reliability of his methodology and conclusion before permitting his testimony at trial.

### 2. The May 20, 2019 Materials Report is irrelevant to the government's valuation of the mosaic

In general, Mr. Alcharihi's relevance argument is set forth in the Motion. (Mot. at 4-5.) He briefly addresses one point here. The government argues that Dr. Doehne's testimony is relevant to value because it "establishes that the Mosaic is an authentic antiquity," and an "authentic antiquity is obviously worth more than a fake." (Opp. at 6.) This, however, does not respond to Mr. Alcharihi's specific argument in the Motion that the government's own expert on the fair market value of the mosaic, Michael Cohn, did not rely on Dr. Doehne's report in his appraisal. (Mot. at 8 n.2.) Instead, Cohn relied on a report of investigation summarizing an interview with a different expert, Basileus Zeno. (ECF No. 77-1 at 10 (Cohn referencing March 10, 2017 FBI report); ECF No. 77-2 (March 10, 2017 FBI Rreport summarizing interview with Basileus Zeno).) Accordingly, it does not appear that Dr. Doehne's opinion is relevant to the government's valuation of the mosaic as Cohn's testimony was not based on Dr. Doehne's opinion in any way.

3

**B.     The Court Should Exclude Dr. Doehne's Testimony on the Mosaic's Iconography, Characteristic Wear, and Stylistic Similarities to Other Mosaics in Syria, or Hold a *Daubert* Hearing on These Topics**

There is some uncertainty whether Dr. Doehne's testimony on the following topics are based on his own or another expert's analysis and conclusions about the mosaic: (1) the mosaic's iconography, (2) the mosaic's characteristic wear, and (3) the mosaic's stylistic similarities to other mosaics in Syria.[1]

    **1.     The Court should preclude testimony, or hold a *Daubert* hearing, if Dr. Doehne will testify about these topics as his own expert analysis and opinion**

If Dr. Doehne's testimony on these three topics is based on his own analysis and conclusions, that testimony should be precluded, or at least, the subject of a *Daubert* hearing, for the following reasons:

*First*, Dr. Doehne is not qualified to opine on either the mosaic's iconography, or the mosaic's stylistic similarities to other mosaics in Syria. Fed. R. Evid. 702. He is a scientist, not an art historian or archaeologist. (*See* Mot. at 12; Mot., Ex. 1 at 30.)

With regard to the mosaic's depiction of Prometheus's punishment, the government argues that "[t]his information is less opinion than fact." (Opp. at 10.) However, it is not a fact that anyone can observe about the mosaic, as it requires some specialized knowledge of Greco-Roman mythology, and how that mythology was

---

[1] At the time of filing the Motion, the defense had assumed that the reference in Dr. Doehne's May 20, 2019 Materials Report to the mosaic's stylistic similarities to other mosaics in Syria was a reference to the work of another expert, Basileus Zeno. (Mot. at 8 & n.2.) It is unclear from the government's Opposition whether this assumption was correct. (Opp. at 9 (referring to "the stylistic similarities to other mosaics from the Syrian region" without clear attribution as to whose analysis and opinion this is)). Accordingly, the defense preserves the argument herein that such testimony should be precluded if presented by Dr. Doehne as his own work because he is unqualified to opine on this topic, and the government has not sufficiently disclosed the bases and reasons for his opinion on this topic. Alternatively, if this testimony incorporates the work of another expert (such as Zeno), the Court must engage in the analysis described in Section II.B.2 before permitting it, and issue a limiting instruction if it does permit the testimony.

4

depicted in Roman mosaics. While it is possible that Dr. Doehne is qualified to opine on this, the government has not demonstrated so. In their Opposition, they refer generally to his "background with cultural heritage resources" (Opp. at 10), but this vague reference is insufficient. A *Daubert* hearing is required to ensure that Dr. Doehne is qualified to opine on the mosaic's iconography.

With regard to the mosaic's stylistic similarities to other mosaics in Syria, Dr. Doehne is absolutely unqualified. Not only does he lack any knowledge, training, or experience in art, art history, or archaeology. He also has no specialized knowledge, training, or expertise in Roman mosaics from Syria. He should be precluded from testifying on this topic, if it is based on his own work.

*Second*, there is insufficient information about Dr. Doehne's analysis and conclusions on all three topics to determine that they are reliable under Rule 702(c) and (d), if they are based on his own work.

With regard to the mosaic's iconography, the government still has not explained how Dr. Doehne determined what the mosaic depicts. His initial report dated May 20, 2019 contains no analysis of the mosaic's iconography. And the paragraph about the mosaic's iconography in the January 17, 2023 supplemental statement appears to be taken from Eduardo Sánchez's report. (*See* Mot. at 10-11 (containing side-by-side comparison of Dr. Doehne's statement and Sánchez's report).) In its Opposition, the government does not provide further explanation of how Dr. Doehne analyzed the mosaic's iconography or reached his conclusion about what it depicts. (Opp. at 10.)

With regard to the mosaic's characteristic wear, this anticipated testimony is summarized in paragraph three of Dr. Doehne's January 17, 2023 supplemental statement. (Mot., Ex. 2 at 3.) As noted in the Motion, this paragraph again appears to be taken largely from Eduardo Sánchez's report. (*See* Mot. at 11 (containing side-by-side comparison of Dr. Doehne's statement and Sánchez's report).) The government appears to concede this at least partially in its Opposition. (Opp. at 10-11 (arguing that Dr. Doehne can be made aware of characteristic about the mosaic by another expert).)

5

1        But even if the paragraph about the mosaic's wear reflects Dr. Doehne's own
2   analysis and conclusions, the January 17, 2023 supplemental statement lacks sufficient
3   explanation of the underlying bases and reasons. (Mot. at 13.) In its Opposition, the
4   government argues that "these characteristics were observed and recorded by Dr.
5   Doehne in his report," and they cite to pages 22 and 23 of the report as "noting
6   corrosion." (Opp. at 10.) Upon reviewing these two pages of Dr. Doehne's report, the
7   primary reference to corrosion is of the green glass tesserae. (Mot., Ex. 1 at 22.) But
8   corrosion in the green glass appears to be only one small part of the analysis of the
9   mosaic's characteristic wear, as the January 17, 2023 supplemental statement refers to
10  wear in both the "stone and glass tesserae," and specifically to "surface wear patterns,
11  weathering, deterioration, coloring, pitting, corrosion, and other characteristics." (Mot.,
12  Ex. 2 at 3.) The explanation or analysis of these other forms of "wear" are not
13  sufficiently set forth in the May 20, 2019 Materials Report. Nor does the government
14  provide further explanation in its Opposition.
15       With regard to the mosaic's stylistic similarities to other mosaics in Syria, there
16  is absolutely no information about the analysis underlying this conclusion, if it is Dr.
17  Doehne's own work. There is zero information about the bases and reasons for this
18  conclusion in Dr. Doehne's May 20, 2019 report or his January 17, 2023 supplemental
19  statement.
20       Therefore, if Dr. Doehne will testify about any of these three topics as his own
21  expert analysis and opinion, he should be precluded from doing so; or, at the very least,
22  the Court should hold a *Daubert* hearing to ensure that he is qualified on the topics of
23  the mosaic's iconography and stylistic similarities to other mosaics in Syria, and that
24  his bases and reasons are reliable as to all three topics.

### 2. If Dr. Doehne's testimony on these topics relies on the work of other experts, the Court must engage in a balancing test before permitting it, and issue a limiting instruction if permitting it

If Dr. Doehne's testimony about (1) the mosaic's iconography, (2) the mosaic's characteristic wear, and/or (3) the mosaic's stylistic similarities to other mosaics in Syria, relies on the work of other experts—which appears to be the case as explained above and in the Motion—he cannot simply parrot their opinions. Permitting Dr. Doehne to testify in this manner would permit the government to circumvent both the rules against hearsay, F. R. Evid. 802, and the Sixth Amendment's confrontation clause, U.S. Const., amend. VI. *See Tokio Marine & Fire Ins. Co. v. Norfolk & W. Ry. Co.*, No. 98-1050, 98-1077, 1999 WL 12931, *4 (4th Cir. 1999) (finding that "one expert may not give the opinion of another expert who does not testify," and the hearsay problem "may not be cured by merely having another expert testify that he agrees with its conclusions"); *Flagstone Dev., LLC v. Joyner*, No. CV-08-100-BLG-RFC, 2011 WL 5040663, at *3 (D. Mont. Oct. 24, 2011), *aff'd*, 545 F. App'x 602 (9th Cir. 2013) ("an expert's opinion must be excluded if that expert is merely 'parroting' some other person's opinion rather than formulating his own"); *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013) (holding that an expert's reliance on testimonial hearsay "becomes a problem [under *Crawford*] where the witness is used as little more than a conduit or transmitter for testimonial hearsay, rather than as a true expert whose considered opinion sheds light on some specialized factual situation").

With regard to the mosaic's characteristic wear, the government seems to concede, in part, that Dr. Doehne was made "aware of certain characteristics about the Mosaic" by another expert. (Opp. at 10-11.) But the government argues that Dr. Doehne can "incorporate that information into his analysis and render his own independent conclusions based on it." (*Id.* at 11.) The government cites Federal Rule of Evidence 703 as permitting an expert to "base an opinion on facts or data in the case that the expert has been made aware of."

While this is true, Rule 703 specifies that "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for *the opinion* to be admitted." Fed. R. Evid. 703 (emphasis added). Thus, if Dr. Doehne is relying on the work of other experts in forming his ultimate opinion, the Court must determine that the work of the other experts is the kind of "facts or data" that an art conservation scientist would "reasonably rely on" before admitting Dr. Doehne's ultimate opinion. A *Daubert* hearing would facilitate this kind of analysis.

However, the Court is still not done there. Even if it determines that Dr. Doehne's ultimate opinion is admissible, that does not necessarily mean the facts or data underlying them are admissible if they constitute hearsay. *See* Fed. R. Evid. 703, Advisory Committee's 2000 Notes ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, *the underlying information is not admissible simply because the opinion or inference is admitted*." (emphasis added)). Rule 703 goes on to state that "if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury *only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect*." Fed. R. Evid. (emphasis added); *see also* Fed. R. Evid. 703, Advisory Committee's 2000 Notes ("When information is reasonably relied upon by an expert and yet is *admissible only for the purpose of assisting the jury in evaluating an expert's opinion*, a trial court applying this Rule must consider the information's probative value in assisting the jury to weigh the expert's opinion on the one hand, and the risk of prejudice resulting from the jury's potential misuse of the information for substantive purposes on the other." (emphasis added)). Based on meeting and conferring with the government, the defense understands that the government no longer intends to call Basileus Zeno or Eduardo Sánchez as witnesses at trial. Therefore, if Dr. Doehne is relying on those experts' work in forming his ultimate opinion, his testimony about *their* analysis and findings is

hearsay, or "otherwise . . . inadmissible." Fed. R. Evid 703. The Court must engage in the balancing test set forth in Rule 703 before permitting Dr. Doehne to testify about other experts' work. The defense asserts that the government has not even provided sufficient information about Dr. Doehne's to engage in this balancing test, as it is not even clear how much of Dr. Doehne's testimony is based on the work of other experts. If the Court is not inclined to exclude Dr. Doehne's testimony on these topics, it should at least hold a *Daubert* hearing to untangle his opinion from the work of other experts, which would then enable the Court to perform the required balancing test.

Finally, even if the Court performs the balancing test and permits Dr. Doehne to testify about other experts' work, Mr. Alcharihi request that the Court give the limiting instruction set forth in the Advisory Committee Notes to Rule 703. As the Advisory Committee explains: "If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must *not* be used for substantive purposes." Fed. R. Evid. 703, Advisory Committee's 2000 Notes (citing Federal Rule of Evidence 105) (emphasis added); *see also Williams v. Illinois*, 567 U.S. 50, 78 (2012) ("The purpose of disclosing the facts on which the expert relied is . . . not to prove the truth of the underlying facts."); *United States v. 0.59 Acres of Land*, 109 F.3d 1943 (9th Cir. 1997) (error to admit hearsay offered as the basis of an expert opinion, without a limiting instruction); *United States v. Sowards*, 339 F.2d 401, 402 (10th Cir. 1964) ("As a general rule, an expert may testify as to hearsay matters, not to establish substantive facts, but for the sole purpose of giving information upon which the witness relied in reaching his conclusion as to value. When evidence is given for this purpose, the jury should be so instructed.") (citation omitted). Furthermore, "[i]n determining the appropriate course, the trial court should consider the probable effectiveness or lack of effectiveness of a limiting instruction under the particular circumstances." Fed. R. Evid. 703, Advisory Committee's 2000 Notes. For the record, the defense is concerned that under the guise of scientific exert testimony presented by Dr. Doehne, a limiting

9

instruction would be insufficient to prevent the jury from believing that all of Dr. Doehne's testimony is being offered for the truth of the matter asserted. Nonetheless, as stated above, if the Court were to admit Dr. Doehne's testimony, Mr. Alcharihi requests the limiting instruction set forth in the Advisory Committee Notes to Rule 703.

### C. The Court Should Exclude Dr. Doehne's Testimony on Looting

With regard to Dr. Doehne's qualifications on looting, Mr. Alcharihi maintains that a *Daubert* hearing is necessary to ensure that he is qualified. The government has proffered additional information in its Opposition about Dr. Doehne's qualifications to testify about looting. (Opp. at 11.) However, given that some information has only been proffered in the Opposition, a *Daubert* hearing is necessary to fulfill the Court's gatekeeping function with regard to Dr. Doehne's qualifications on this topic.

With regard to the reliability of Dr. Doehne's conclusion that the mosaic is consistent with having been looted likely from a floor location in Syria, the government argues that "a combination of evidence stablishes that the Mosaic was likely looted," including (1) the mosaic's authenticity, (2) the defendant's own statements and false documents, and Dr. Doehne's analysis that the mosaic is likely from Syria, (3) Dr. Doehne's testimony that looting was prevalent in Syria in 2015, (4) Dr. Doehne's testimony that the fractured mortar and tesserae in the mosaic indicate that it was lifted from the ground and crudely rolled, and (5) the mosaic was rolled up and placed behind other items in a shipping container, instead of being properly packaged and securely shipped. (Opp. at 12.) However, not all of these factors were referenced Dr. Doehne's January 17, 2023 supplemental statement. Thus, it is unclear whether all of these factors form the basis of Dr. Doehne's conclusion or whether they form the basis of the government's argument. If they inform Dr. Doehne's conclusion, the government has provided insufficient notice of the bases and reasons for his opinion to the defense, as the government has not identified which of Mr. Alcharihi's statements or false documents are being relied on by Dr. Doehne. Nor have they given notice of what information or documents Dr. Doehne was provided about the mosaic's packaging and

shipping. And still, even with the additional information in the Opposition, it is unclear what methodology or criteria Dr. Doehne is applying.

Accordingly, Dr. Doehne should be precluded from testifying about looting due to insufficient information about the bases, reasons, and methodology underlying his opinions; or at the very least, the Court should hold a *Daubert* hearing to assess his qualifications, the complete bases and reasons for his opinions, and their reliability.

## D. The Government Should Be Precluded from Presenting Any Evidence or Argument About Terrorist Groups or Occupying Military Forces

With regard to the prejudice of permitting Dr. Doehne to testify about looting, specifically, the government argues that "Dr. Doehne's report does not mention terrorist groups, and the government does not intend to elicit testimony from Dr. Doehne regarding terrorist groups." (Opp. at 13.) While Dr. Doehne's report and supplemental statement do not explicitly reference terrorist groups, the supplemental statement referenced "other factors," and the articles he relies on to form his opinion do reference terrorist groups. The government's Opposition explained that "[t]o deepen his knowledge of" looting in Syria, "Dr. Doehne reviewed additional materials related to looting in Syria." (Opp. at 11.) The government attached Exhibit 2 to its Opposition, which included references to terrorist groups such as ISIS, as well as occupying military forces engaged in looting. (*See, e.g.*, Opp. Ex. 2 at 3, 4, 5.)

Therefore, Mr. Alcharihi respectfully requests that the Court issue an Order precluding the government from presenting any evidence or argument that refers to terrorist groups or occupying military forces in general or by name. Given that this is not a terrorism case, but a customs case, any reference to terrorist groups is irrelevant. Moreover, such reference could inflame fear, hatred, or other extreme emotions in the jury, and would be extremely prejudicial to Mr. Alcharihi. *See United States v. Mehanna*, 735 F.3d 32, 64 (1st Cir. 2013) ("[T]errorism-related evidence is often emotionally charged. Courts, with good reason, have on occasion termed such evidence alarming, disturbing, and even blood curdling.") (cleaned up); *United States v.*

*Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979) ("Crimes of bombing and terrorism, especially if committed as a protest against governmental behavior," therefore "more easily arouse the prejudices of prospective jurors[.]").

### III. CONCLUSION

For all of the reasons stated above, the Court should exclude Dr. Doehne's testimony, or, at the very least, hold a *Daubert* hearing to assess his qualification on certain topics, the relevance and reliability of his testimony, and to engage in the balancing test under Rule 403. Moreover, a *Daubert* hearing is at least necessary to determine whether Dr. Doehne's testimony is based on the work of any other experts, and, if so, to engage in the ensuing analysis set forth in Rule 703.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 6, 2023   By  */s/ Isabel Bussarakum*
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSH WEISS
Deputy Federal Public Defenders
Attorney for MOHAMAD ALCHARIHI

12