CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOHAMAD ALCHARIHI,<br><br>Defendant. | Case No. CR 20-307-GW<br><br>**DEFENDANT MOHAMAD ALCHARIHI'S REPLY TO MOTION *IN LIMINE* TO EXCLUDE PARTS OF WILLIAM TARTER'S EXPERT TESTIMONY**<br><br>Hearing Date: 4/20/2023<br>Hearing Time: 8:00 a.m. |

Defendant Mohamad Alcharihi, by and through his counsel of record, hereby files this reply in support of his motion *in limine* to exclude parts of William Tarter's expert testimony.

//
//
//
//

This reply is based on the attached memorandum of points and authorities, the files and records in this case, and any further evidence and argument the Court permits.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 6, 2023    By  */s/ Isabel Bussarakum*
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSH WEISS
Deputy Federal Public Defenders
Attorney for MOHAMAD ALCHARIHI

# **TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .......................................................................................................1

    A.    The Court Should Exclude Tarter's Testimony That for Works of Art and Cultural Items, the Declared Value Is the Anticipated Auction Value Because It is Irrelevant, Unreliable, and Renders the Charged Statute Void for Vagueness As Applied .......................................................1

    B.    Consistent with Federal Rule of Evidence 702's Relevance Requirement, the Court Should Limit Tarter's Testimony on One Topic, and Exclude Others ................................................................................4

    C.    The Court Should Preclude Tarter from Testifying About a Number of Topics Because the Government Has Not Demonstrated a Reliable Basis or Methodology for Them ..............................................................7

    D.    Tarter Should Be Precluded from Testifying About Looting, and At the Very Least, from Referencing Terrorist Groups ...........................................7

    E.    The Court Should Limit Tarter's Use of the Term "Correct" .......................8

III. CONCLUSION ...................................................................................................9

i

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Mr. Alcharihi moved to preclude CBP Import Specialist William F. Tarter from testifying about certain proffered topics because they are irrelevant and/or unreliable under Federal Rule of Evidence 702, or because their probative value is substantially outweighed by unfair prejudice under Federal Rule of Evidence 403. (ECF No. 79.)

The government's Opposition provides additional basis to preclude Tarter from testifying that for artwork and cultural items, the declared value should be the anticipated auction amount. As explained further below, Tarter's testimony on this topic should be excluded because it is not only unreliable, but also irrelevant. If the Court accepts his definition of value, renders the charged statute, 18 U.S.C. § 541, void for vagueness as applied to this case, thereby requiring dismissal of the Indictment as to value. This is primarily because Tarter's testimony is not based on any published authority, but on his own practice and experience, and that simply does not provide fair notice to an ordinary person so that they can conform their conduct to the law.

Based on the government's Opposition, Mr. Alcharihi also modifies his request to limit, rather than preclude, Tarter's testimony on two documents external to the CBP. But he otherwise maintains that the remainder of topics addressed in the Motion should be precluded for the reasons stated therein and below.

## II. ARGUMENT

**A.  The Court Should Exclude Tarter's Testimony That for Works of Art and Cultural Items, the Declared Value Is the Anticipated Auction Value Because It is Irrelevant, Unreliable, and Renders the Charged Statute Void for Vagueness As Applied**

It is anticipated that Tarter will testify that for "artwork and items of cultural import, the correct value to declare is the amount an importer anticipates the artwork would be valued at auction." (Mot., Ex. 1 at 2.) In the Motion, Mr. Alcharihi moved to

1

exclude this opinion because it lacked a reliable basis. (Mot. at 8.) In the Opposition, the government further explains the basis for this opinion as follows:

> Mr. Tarter will explain that based on his experience in the trade of ancient artifacts and works of art, the typical importer is a museum or known entity involved in the trade. CBP then engages with those importers and a third-party appraiser to determine what a buyer is willing to pay for the imported good. That amount is subsequently used as the correct value to declare on the CBP Form 7501.

(Opp. at 13.) In other words, it appears that Tarter's opinion is based on his own practice and experience. Neither Tarter nor the government has cited any published authority supporting the notion that the declared value for artwork and cultural items is the anticipated auction amount.

The complete lack of a published source or authority for this definition of value not only bolsters the argument that Tarter's opinion on this topic is unreliable, but also demonstrates that this opinion is irrelevant and, moreover, would render the charged statute, 18 U.S.C. § 541, void for vagueness as applied to this case for the same reasons stated in the Reply to Motion *in Limine* to Exclude Expert Testimony of Michael Cohn. As explained in the defense's briefing to exclude Cohn's testimony, the relevant value for purposes of 18 U.S.C. § 541 is the transaction value of the mosaic. *See United States v. Ismail*, 97 F.3d 50, 62 (4th Cir. 1996). In those briefs, Mr. Alcharihi cited case law, a pattern jury instruction from the District of South Carolina, a federal statute, and a CBP publication, all of which demonstrate that the declared value for imported goods is the transaction value. (*See, e.g.*, ECF No. 77 at 3-6.) In contrast, the government offers no published authority supporting its definition of value as the anticipated auction value, and it appears that the sole basis for their proffered definition is Tarter's opinion.

The authorities cited in the defense briefs clearly establish that, for the purposes of 18 U.S.C. § 541, value refers to the transaction value. However, if the Court finds

that there is any ambiguity in the statute, in light of the government's argument, the "rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). Under the rule of lenity, the relevant value is transaction value, and any testimony by Tarter defining value otherwise should be excluded not only as unreliable, but also as irrelevant.

If the Court adopts the government's and Tarter's understanding of value, it would render 18 U.S.C. § 541 void for vagueness as applied to the facts of this case, thereby requiring dismissal of the Indictment as to value, as explained in the briefs to exclude Cohn's testimony. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Cont., amend. v. "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Tarter's opinion about the definition of value appears to be based on his own experience of CBP practice, rather than any published authority or guidance. As such, his definition fails to give notice to an ordinary person of what value to declare for a work of art or cultural item. That is especially true, where multiple published authorities cited by the defense indicate that the declared value of imported goods is the transaction value. Thus, if the Court accepts Tarter's definition of value, that renders 18 U.S.C. § 541 void for vagueness as applied to the facts of this case, in which an ordinary person imported a mosaic into this country, and the Court should dismiss the Indictment as to value.

### B. Consistent with Federal Rule of Evidence 702's Relevance Requirement, the Court Should Limit Tarter's Testimony on One Topic, and Exclude Others

In the Motion, Mr. Alcharihi explained why Tarter should be precluded from testifying about five topics because they are irrelevant.

*First*, Mr. Alcharihi moved to preclude testimony about (1) a red list issued by the International Council of Museums ("ICOM") on September 25, 2013, and (2) a resolution issued by the United Nations Security Council on February 12, 2015. (Mot. at 5.) In the Motion, Mr. Alcharihi argued that it is unclear how these documents related to CBP's policy or practice, or the importation process in August 2015. (*Id.*) In its Opposition, the government asserts that "a CBP import specialist references ICOM Red Lists when an imported item is classified as a work of art or originates from a conflict area covered by the list" (Opp. at 7), and that Tarter's testimony on the February 2015 U.N. Security Council resolution "will be limited and tailored to the impact the resolution had on CBP policies and procedures regarding works of art originating from the region" (*id.* at 8). Accepting the government's proffer, the defense simply asks the Court to issue an Order limiting Tarter's testimony about these documents to how they affected CBP's practice in August 2015 relating to works of art or artifacts from Syria.

The government also explained in its Opposition that ICOM published the September 25, 2013 red list "[f]ollowing reports of widespread damage and looting at cultural heritage sites in Syria by the Islamic State of Iraq and al-Sham and Al-Nusra Front." (Opp. at 6.) For the same reasons stated in Section III.C below and in the concurrently filed Reply to Motion *in Limine* to Exclude Expert Testimony of Dr. Eric Doehne, the government should be precluded from presenting evidence or argument that looting in Syria was performed by terrorist groups, whether referenced in general or by specific name. Such reference is irrelevant to this case, and would be extremely

prejudicial to Mr. Alcharihi because it could sway the jury to convict him based on fear, hatred, or other extreme emotion.

*Second*, Mr. Alcharihi moved to exclude testimony on a CBP amendment dated August 15, 2016 because it post-dated Mr. Alcharihi's importation of the mosaic in August 2015. (Mot. at 5-6.) In its Opposition, the government argues that even though CBP's final amendment post-dated the importation in this case, "the legislation history predates the importation," including that "[t]he House of Representatives passed the bill on June 6, 2015" before the importation at issue in this case. (Opp. at 8-9.) However, it is still unclear how the amendment's legislative history is relevant. Did it affect CBP practice in August 2015 in some way? Or is there evidence that Mr. Alcharihi was following this legislative activity, and somehow knew about the House of Representatives passing a bill in June 2015? The government's argument defies logic. Absent additional information demonstrating its relevance, the Court should preclude Tarter from testifying about the August 15, 2016 CBP Amendment because it post-dates Mr. Alcharihi's importation of the mosaic in August 2015, and thus, is irrelevant.

*Third*, Mr. Alcharihi moved to exclude Tarter's testimony that paying $12,000 for an imported item, and declaring its value as $2,199 constitutes "false invoicing" and "providing false material information." (Mot. at 6.) As noted in the Motion, this constitutes a violation of a different statute, 18 U.S.C. § 542, than the one with which Mr. Alcharihi is charged, 18 U.S.C. § 541. (*Id.*) Upon reviewing the government's Opposition, the defense adds that Tarter's anticipated testimony on this topic is not something that appears to require expert testimony. If the jury determines that Mr. Alcharihi knowingly used a fake invoice to support his declared transaction value, it would be common sense that this was a misrepresentation of the value. Thus, Tarter's opinion that this constitutes "false invoicing" and "providing false material information" is unnecessary and unhelpful to the jury.

*Fourth*, Mr. Alcharihi moved to exclude Tarter's testimony that, in general, the act of undervaluing imported items can deprive the United States of revenues. (Mot. at

5

6.) Testimony about how undervaluing imported items can *generally* deprive the United States of revenues is irrelevant because it is not specific to the facts of this case. This type of general statement is also prejudicial because the general loss of revenues to the country could anger jurors, yet it does not have any tendency to prove that Mr. Alcharihi committed the instant offense.

In its Opposition, the government does not demonstrate how this testimony is relevant to Mr. Alcharihi's case specifically or to proving that he committed the charged offense. They argue that it is necessary to "explain the CBP forms," "the import-classification process," "why an importer must correctly declare the value of a good," and "why the submission of false documentation impacts that declaration." (Opp. at 10.) But the law does not require the jury to understand the legislative history or legislative purpose of the charged offense in a criminal case. Moreover, none of the government's proffered reasons is specific to Mr. Alcharihi, or explains how Tarter's testimony will help the jury to understand Mr. Alcharihi's conduct. As such, Tarter should be precluded from making general statements about how undervaluing imported items can deprive the United States of revenues because it is irrelevant and unduly prejudicial.

*Fifth*, Mr. Alcharihi moved to exclude Tarter from testifying about the mosaic's county of origin, size, style, condition, or period because those characteristics were not alleged in the Indictment as relating to quality. (Mot. at 7.) In its Opposition, the government argues that "the quality of an imported good impacts which tariff classification the piece should receive." (Opp. at 10.) However, the government did not allege in the Indictment that Mr. Alcharihi misclassified all of the factors that could affect the mosaic's tariff classification. Moreover, the only factors that affect the tariff classification are whether it is a work of art, and whether it exceeds 100 years. *See* Chapter 97 of the Harmonized Tariff Schedule of the United States, *available at* https://hts.usitc.gov/view/Chapter%2097?release=2022HTSABasich. The size, country of origin, style, condition, or period do not affect the tariff classification. The Court

should preclude Tarter from testifying about these factors for the above reasons, as well as the reasons stated in the Motion *in Limine* to Exclude Evidence Regarding Means of Violating 18 U.S.C. § 541 That Are Not Charged in the Indictment (ECF No. ), and the reply brief thereto.

### C. The Court Should Preclude Tarter from Testifying About a Number of Topics Because the Government Has Not Demonstrated a Reliable Basis or Methodology for Them

In addition to Tarter's testimony defining the declared value for artwork and cultural items as the anticipated auction value, which was already addressed above, Mr. Alcharihi moved to preclude Tarter from testifying about six other topics because they lacked a reliable basis, absent additional information. (Mot. at 7-10.) In particular, the defense noted that there was insufficient information to determine whether Tarter's testimony on these topics was based on general CBP policies or practices, or Tarter's own personal or individual practice. (Mot. at 8.) In response, the government primarily argues that Tarter is qualified and has extensive experience, and thus, he can testify about all of these topics. (Opp. at 11-15.) These other six topics involve Tarter testifying that the mosaic would have received more scrutiny if a different country of origin, value, importer, or tariff classification had been listed on the customs form. (Mot. at 8-9.) Given that Tarter would be testifying about the increased scrutiny that different responses on CBP Form 7501 would have received from CBP in general, the Court should hold a *Daubert* hearing to ensure that these opinions are based on CBP-wide practice before permitting Tarter's testimony on these topics at trial.

### D. Tarter Should Be Precluded from Testifying About Looting, and At the Very Least, from Referencing Terrorist Groups

Tarter should be precluded from testifying about looting for the reasons stated in the Motion. (Mot. at 11-12.) But if the Court is inclined to permit him to testify about looting, it should preclude Tarter from testifying that terrorist groups or occupying military forces are responsible for the looting. Indeed, the defense makes the same

7

request here, as it did in the briefing on Dr. Eric Doehne's testimony, that the Court issue an Order precluding the government from presenting any evidence or argument that refers to terrorist groups or occupying military forces in Syria whether in general or by specific name. Given that this is not a terrorism case, but a customs case, any reference to terrorist groups is irrelevant. Moreover, such reference could inflame fear, hatred, or other extreme emotions in the jury, and would be extremely prejudicial to Mr. Alcharihi. *See United States v. Mehanna*, 735 F.3d 32, 64 (1st Cir. 2013) ("[T]errorism-related evidence is often emotionally charged. Courts, with good reason, have on occasion termed such evidence alarming, disturbing, and even blood curdling.") (cleaned up); *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir. 1979) ("Crimes of bombing and terrorism, especially if committed as a protest against governmental behavior," therefore "more easily arouse the prejudices of prospective jurors[.]").

### E. The Court Should Limit Tarter's Use of the Term "Correct"

Given that many facts about the mosaic are in dispute in this case—including the country of origin, its authenticity, and its value—and Tarter did not independently verify what the country of origin is, whether the mosaic is authentic, or what the mosaic's value, the defense simply asks that the government use that term judiciously. For example, if Tarter is going to opine on what country of origin, value, or tariff classification should have been listed on CBP Form 7501, it should be clear that his opinion is based on assumptions provided to him by the government. He should not be opining on what the correct country of origin is, or the correct value, or the mosaic's authenticity or age, but what he believes should have been listed on the form based on assumptions he has not verified himself. The Court should issue an Order to this effect.

//
//

## III. CONCLUSION

For the reasons stated above, the Court should preclude Tarter from testifying about the following topics:

- That for artwork and items of cultural import, the value to declare is the anticipated auction value;
- The CBP Amendment dated August 15, 2016;
- That declaring a value different from what the importer actually paid for an item constitutes false invoicing and providing false material information;
- That, in general, the act of undervaluing imported items can deprive the United States of revenues;
- The mosaic's size, country of origin, style, condition, or period;
- That an item would receive additional scrutiny if Syria or Turkey is listed as the country of origin, as opposed to Israel;
- That an item would receive additional scrutiny if its value is declared at $10,000 or more, or over $100,000;
- That an item would receive additional scrutiny if it is classified under Chapter 97 of the Harmonized Tariff Code, as opposed to Chapter 69;
- That the mosaic would have "caught" Tarter's eye because the value was so low relative to its large weight and length;
- That the mosaic would have received additional scrutiny if the correct value and country of origin were declared;
- That the mosaic would not have been legally imported if the correct description of value was declared;
- That artifacts have been looted from Syria, and any other topics related to looting; and
- That terrorist groups or occupying military forces, whether referenced in general or by name, are responsible for looting in Syria.

9

In addition, Mr. Alcharihi requests that the Court limit Tarter's testimony in the following ways:

- With regard to the ICOM red list dated September 25, 2013, and the U.N. Security Council resolution issued on February 12, 2015, Tarter's testimony should be limited to how these documents affected CBP's practice in August 2015 relating to works of art or artifacts from Syria, and Tarter should be precluded from referencing terrorist groups or occupying military forces in Syria; and
- Tarter should not opine on the correct country of origin, the correct value, or the mosaic's authenticity or age, but what he believes should have been listed on CBP Form 7501 based on assumptions provided to him by the government.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: April 6, 2023          By  /s/ Isabel Bussarakum
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSH WEISS
Deputy Federal Public Defenders
Attorney for MOHAMAD ALCHARIHI