CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOHAMAD ALCHARIHI,<br><br>Defendant. | Case No. CR 20-307-GW<br><br>**THE PARTIES' JOINT SUBMISSION RE: OBJECTIONS TO PROFESSOR DAVID PARRISH'S DEPOSITION**<br><br>**Hearing Date: 5/4/2023**<br>**Hearing Time: 8:00 a.m.** |

Pursuant to the Court's orders regarding Professor David Parrish's deposition (ECF Nos. 97, 102), the parties hereby file their Joint Submission Regarding Objections to Professor David Parrish's Deposition.

//
//
//
//
//

1

1   The parties made their objections during the course of the deposition.  The filing

2   below reflects the responses to those objections (and provides additional bases for the

3   objections, where necessary) to enable the Court to rule on the objections, and notes

4   where the parties have withdrawn their objections or agreed to strike parts of the

5   transcript.

6

7                                         Respectfully submitted,

                                          CUAUHTEMOC ORTEGA
8                                         Federal Public Defender

9   DATED:  April 28, 2023               By  /s/ Isabel Bussarakum

10                                        ASHLEY MAHMOUDIAN
                                          ISABEL BUSSARAKUM
11                                        JOSHUA D. WEISS
                                          Deputy Federal Public Defenders
                                          Attorney for MOHAMAD ALCHARIHI
12

13                                        E. MARTIN ESTRADA
                                          United States Attorney
14

15   DATED:  April 28, 2023              By  /s/ with permission

16                                        MARK A. WILLIAMS
                                          MATTHEW O'BRIEN
17                                        MAXWELL COLL
                                          Assistant United States Attorneys
18

19                                        KENNETH A. POLITE
                                          Assistant Attorney General
20                                        Criminal Division

21

22   DATED:  April 28, 2023              By  /s/ with permission

23                                        CHRISTIAN A. LEVESQUE
                                          Trial Attorney
24
                                          Attorneys for Plaintiff
25                                        UNITED STATES OF AMERICA

26

27

28

                                          2

## GOVERNMENT EVIDENTIARY OBJECTIONS TO
## THE DEPOSITION OF PROFESSOR DAVID PARRISH

RT 6:1-11

**Gov't Obj.:**  This objection is withdrawn as moot given that the Court issued the Rule 15 order authorizing this deposition.

RT 6:12-7:1

**Gov't Obj.:**  Objection to the deposition because the defense did not produce all relevant and discoverable material related to defense witness Belal AlJrad prior to the deposition.

**Def. Response:**  The defense is only required to produce Mr. AlJrad's *Jencks* material "[a]fter [he] testifie[s] on direct examination."  Fed. R. Crim. P. 26.2(a).  Because Mr. AlJrad has not testified on direct examination, the defense was not required to produce any of his *Jencks*.  Nonetheless, prior to Professor Parrish's deposition, the defense produced WhatsApp messages Mr. AlJrad sent to a defense investigator about a YouTube link relating to Ahmet Bostanci, the seller of the mosaic at issue in this case. That was the only defense communication with Mr. AlJrad relating to the mosaic at issue in this case.  All other defense communications with Mr. Aljrad relate to his application for a visa to travel to the United States to testify at trial in this case, which was recently denied.  Communications about Mr. AlJrad's visa application are not relevant to Professor Parrish's deposition testimony about the authenticity of the mosaic.  The government has no basis to exclude Professor Parrish's deposition testimony on this basis.

RT 9:14-19; 10:11-19; 10-22-11:1; 11:25-123

**Gov't Obj.:**  Relevance; hearsay as to Exhibits 1001 and 1002.

**Def. Response:**  Exhibits 1001 and 1002 are respectively Professor Parrish's Curriculum Vitae ("CV") and List of Recent Publications that were not listed in his

3

CV.  The defense seeks to admit these exhibits solely for the Court to make a finding on Professor Parrish's qualifications.  If the Court finds Professor Parrish qualified to testify as an expert, the defense would not seek to publish these exhibits to the jury, and would likely agree to redact the questioning about these exhibits from the deposition video shown to the jury.

RT 16:15-16

**Gov't Obj.:**  Calls for speculation; relevance; move to strike.

**Def. Response:**  The question of how many Roman mosaics Professor Parrish has seen in publications was relevant to establishing Professor Parrish's qualifications about Roman mosaics.  His opinion about the mosaic at issue here is based, in part, on the thousands of Roman mosaics he has viewed and analyzed.  Professor Parrish's response is not speculative, but based on his personal knowledge.  Nor did his answer call for hearsay, as the answer is not an out-court-statement.

RT 20:17-21:7

**Gov't Obj.:**  The government withdraws these objections.

RT 21:25-22:8

**Gov't Obj.:**  Relevance; hearsay.

**Def. Response:**  The question, what the government asked Professor Parrish to determine when he examined the mosaic, is relevant to explain what Professor Parrish was analyzing or looking for when he examined the mosaic.

RT 25:13-19

**Gov't Obj.:**  Leading.

**Def. Response:**  The question was not leading, but a transition question that repeated Professor Parrish's earlier testimony.

RT 25:20-27:4

**Gov't Obj.:**  The government withdraws this objection.


RT 27:5-12

**Gov't Obj.:**  Argumentative

**Def. Response:**  The defense would agree to strike 27:5-6.


RT 29:22-30:17

**Gov't Obj.:**  Move to strike; relevance; beyond the scope of expert disclosure; hearsay.

**Def. Response:**  The defense would agree to strike the 2 sentences in 30:9-13. However, the rest of Professor Parrish's response is relevant to explain his opinion that the mosaic is not consistent with iconographic tradition, and is within the scope of the defense's expert disclosure.  (*See* Ex. B at 1 (consulted the Lexicon Iconographicum Mythologiae Classicae, and upon further review, he has not seen Prometheus's Punishment depicted in other mosaics).)  It is not hearsay as Professor Parrish is not introducing an out-of-court statement, but explaining one source he consulted in forming his opinion, and the fact that he has not seen Prometheus's Punishment in another mosaic.  An expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.


RT 30:18-31:1

**Gov't Obj.:**  The government withdraws these objections.


RT 31:2-12

**Gov't Obj.:**  Misstates testimony; move to strike.

**Def. Response:**  The defense would agree to strike 31:2-12, if 31:13-32:12 is admitted.

RT 31:13-32:15

**Gov't Obj.:**  Speculation.  Relevance.  Move to strike.

**Gov't Basis:**  The government's objection is focused on the witness's statement that "And so what it looks to me is if the makers of this mosaic were creating a sort of pastiche of a few different types of episodes and conflating them into one work of art and not representing them necessarily in the traditional fashion."  It is pure speculation by the witness (or anyone else) regarding what the maker(s) of the Mosaic had in mind when he/she/they created the Mosaic.

**Def. Response:**  If it is technologically possible to cut the following phrase from both the transcript and the video recording of the deposition, the defense would agree to strike the phrase "the makers of."  The sentence would then read "And so what it looks to me is if [] this mosaic were creating a sort of pastiche of a few different types of episodes and conflating them into one work of art and not representing them necessarily in the traditional fashion."  Professor Parrish's opinion that the mosaic's conflation of different episodes is inconsistent with iconographic tradition is not speculative, but is based on his personal observation of the mosaic and his study of thousands of Roman mosaics.  This opinion is relevant to understanding his overall conclusion that the mosaic is not authentic.


RT 32:16-33:16

**Gov't Obj.:**  The government withdraws this objection.


RT 33:19-34:18

**Parties Response:**  The parties met and conferred.  They have agreed to strike the sentence, "I think the person who made this mosaic was sort of trying to do the right thing but not doing it very successfully."  (RT 34:12-15.)

RT 34:19-35:2

**Gov't Obj.:**  Leading.

**Def. Response:**  Defense counsel's question is not leading, but repeated one part of Professor Parrish's prior testimony in this question to focus his testimony.


RT 35:3-22

**Gov't Obj.:**  Calls for speculation; move to strike.

**Def. Response:**  The defense would agree to strike the sentence in 35:18-20.  However, the rest of Professor Parrish's answer is not speculative, but based on his study of thousands of Roman mosaics.


RT 36:12-24; 37:8; 37:24; 38:25

**Gov't Obj.:**  Relevance; confusing and misleading to the jury; lacks foundation as to Exhibit 1007.

**Def. Response:**  Exhibit 1007 shows how Heracles's lion skin was depicted in another Roman mosaic.  The foundation and relevance for Exhibit 1007 is that Professor Parrish relied on this mosaic, in part, in determining that the lion skin, here, was inconsistent stylistically and technically with other Roman mosaics.  In his testimony, Professor Parrish establishes where he got the images in Exhibit 1007.  An expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.  Professor Parrish's testimony about Exhibit 1007 is not confusing or misleading; it is clear that he is using Exhibit 1007 as an example of how Heracles's lion skin is depicted in Roman mosaics, in contrast to the mosaic here.


RT 39:25-40:6

**Gov't Obj.:**  Relevance; calls for speculation; beyond the scope of expert disclosure.

**Def. Response:**  Professor Parrish's explanation of how the lion skin in Exhibit 1007 differs from that in the mosaic at issue in this case is relevant to his analysis that the

7

lion skin, here, is inconsistent stylistically and technically with other Roman mosaics. His explanation is not speculative, but is based on his study of thousand of Roman mosaics, including that depicted in Exhibit 1007. It is within the scope of the defense's expert disclosure. (*See* Ex. A at 2 (lion skin not well-executed because missing head, claws, and longer tail); Ex. B at 1 (discussing contrast with the Drunkenness of Heracles, the mosaic depicted in Exhibit 1007).)

RT 42:22-23

**Gov't Obj.:** The government withdraws this objection.

RT 42:24-44:9

**Gov't Obj.:** Speculative; relevance; lapses into narrative; lacks foundation.

**Gov't Basis:** Specifically, the government moves to strike 44:1-6 as non-responsive and speculative regarding the witness's views of what constitutes "professional standards of ancient Roman mosaicists." This portion of the witness's narrative also lacks foundation and is irrelevant.

**Def. Response:** Professor Parrish's explanation of how the mosaic's border is inconsistent with other Roman mosaics is not speculative or lacks foundation, but is based on his study of thousands of mosaics. He later demonstrates the standard of quality for Roman mosaics from Syria when testifying about Exhibit 1006. His explanation is not irrelevant, but explains why he believes the mosaic is not authentic. His explanation is not narrative, but explains the inconsistencies between the mosaic's border and that in Roman mosaics.

RT 44:10-20

**Gov't Obj.:** Calls for speculation; move to strike.

**Def. Response:** The defense would agree to strike 44:16-18. But the rest of Professor Parrish's answer is based on his study of thousands of mosaics, including Exhibit 1006.

8

1

2   RT 44:21-45:6

3   **Gov't Obj.:**  Relevance; lacks foundation.

4   **Def. Response:**  Exhibit 1006 shows a Roman mosaic depicting a geometric pattern.

5   The foundation and relevance for Exhibit 1006 is that Professor Parrish relied on this

6   mosaic in determining that the border in the mosaic, here, was inconsistent stylistically

7   and technically with other Roman mosaics.  In his testimony, Professor Parrish

8   establishes where he got the images in Exhibit 1006.

9

10   RT 46:8-14; 46:25

11   **Gov't Obj.:**  Hearsay; calls for speculation; lacks foundation; best evidence.

12   **Def. Response:**  Exhibit 1006 is not speculative or lacks foundation.  Professor Parrish

13   identifies the publication where he got the images in Exhibit 1006, and this was

14   disclosed to the government prior to his deposition.  (Ex. B at 1, 3-4.)  With regard to

15   the best evidence, Rule 1003 permits duplicates "unless a genuine question is raised

16   about the original's authenticity or circumstances make it unfair to admit the

17   duplicate."  The government has not raised a genuine question about the original

18   mosaic, or demonstrated circumstances that make it unfair to admit a picture of the

19   mosaic.  Additionally, an expert may base his opinion on facts or data that he "has been

20   made aware of or personally observed."  Fed. R. Evid. 703.

21

22   RT 47:7-48:5

23   **Gov't Obj.:**  Argumentative; calls for speculation; relevance; move to strike.

24   **Def. Response:**  Professor Parrish is explaining why the border in the mosaic, here, is

25   inconsistent with the level of quality or technique in Roman mosaics from Syria, using

26   Exhibit 1006 as an example of the standard of quality in Roman mosaics from Syria.

27   That opinion is not argumentative or speculative, but based on his study of thousands of

28   Roman mosaics, including Exhibit 1006.  This analysis is relevant to explaining his

opinion that the mosaic is not authentic.

RT 48:6-10

**Gov't Obj.:**  Relevance.

**Def. Response:**  The fact that the mosaic in Exhibit 1006 is from Syria is relevant to show why it is an appropriate comparable to the mosaic in this case, which the government is alleging is from Syria.

RT 48:13-18

**Gov't Obj.:**  No question pending.

**Def. Response:**  Professor Parrish was simply trying to complete his answer to the earlier question about where the mosaic in Exhibit 1006 is from.  Because of the audio delay in the remote deposition, his prior answer was interrupted by the objections.

RT 48:23-49:17

**Gov't Obj.:**  Calls for speculation; lacks foundation.

**Def. Response:**  Professor Parrish is explaining how Exhibit 1006 reflects the standard of technique in Roman mosaics from Syria, and why the mosaic here is inconsistent with that standard.  This explanation is not speculative or lacks foundation, but is based on his study of thousands of Roman mosaics, including Exhibit 1006.

RT 49:18-50:3

**Gov't Obj.:**  Lacks foundation; calls for speculation; move to strike.

**Def. Response:**  Professor Parrish's analysis of Exhibit 1006 is based on direct observation and his study of thousands of Roman mosaics.

RT 51:24-52:10

**Gov't Obj.:**  Calls for speculation; hearsay; lacks foundation.

**Def. Response:**  Professor Parrish previously explained why the modeling of figures in the mosaic here is inconsistent with the modeling in Roman mosaics.  Defense counsel's question about what Professor Parrish would expect to see in an authentic Roman mosaic does not call for speculation, hearsay, or lacks foundation.  As Professor Parrish testified before, his understanding of Roman mosaics is based on his study of thousands of Roman mosaics.  Additionally, an expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.

RT 53:14-53:25

**Gov't Obj.:**  The government withdraws this objection.

RT 54:15-55:11

**Gov't Obj.:**  Lacks foundation; relevance; move to strike.

**Def. Response:**  The defense would agree to strike "which is a very common theme in ancient mosaics" on 55:7-8.  But the rest of Professor Parrish's answer is relevant and does not lack foundation.  He is testifying about two other mosaics that he relied on in determining that the mosaic at issue here lacks a technique of tesserae-laying between the figures and the background, which is common in Roman mosaics.  This is relevant to his opinion that the mosaic here is not authentic.  The mosaics he names are subsequently introduced as Exhibits 1004 and 1005.

RT 55:18-24

**Gov't Obj.:**  Lacks foundation; relevance as to Exhibit 1004.

**Def. Response:**  Exhibit 1004 is relevant because it is a Roman mosaic that illustrates the tesserae-laying technique, which Professor Parrish explains is common in Roman mosaics and which is missing from the mosaic at issue here.  Exhibit 1004 does not lack foundation, as Professor Parrish explains that he relied on it in analyzing the mosaic at issue here, and he identifies the publication where he got the images in

Exhibit 1004.  It is not hearsay, as an expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.

RT 57:12-58:6

**Gov't Obj.:**  Calls for speculation; foundation; relevance; move to strike.

**Def. Response:**  The defense would agree to strike 57:25-58:2.  However, the rest of Professor Parrish's explanation is relevant to explaining the tesserae-laying technique common in Roman mosaics, which is present in Exhibit 1004, but not in the mosaic at issue here.  That analysis does not call for speculation or lacks foundation, but is based on Professor Parrish's study of thousands of Roman mosaics, including Exhibit 1004.

RT 59:3-9

**Gov't Obj.:**  Relevance; lacks foundation; calls for speculation as to Exhibit 1005.

**Def. Response:**  Exhibit 1005 is relevance because it is another Roman mosaic that illustrates the tesserae-laying technique, which Professor Parrish explains is common in Roman mosaics and which is missing from the mosaic at issue here.  Exhibit 1005 does not lack foundation, as Professor Parrish explains that he relied on it in analyzing the mosaic at issue here, and he identifies the publication where he got the images in Exhibit 1005.  Exhibit does not call for speculation, but is one of thousands of Roman mosaics Professor Parrish has studied.  Nor is Exhibit 1005 hearsay, as an expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.

RT 62:8-63:16

**Gov't Obj.:**  Vague; ambiguous; calls for speculation; lacks foundation; exceeds the scope of expert disclosure; misstates testimony.

**Gov't Basis:**  Although the witness may be able to testify that an area of the Mosaic appears to have been repaired, it is speculative for him to claim that "I think that gap

12

with the white mortar was left deliberately to make it appear that the mosaic was damaged in antiquity, to suggest it was damaged in antiquity." (RT 63:7-11.)  What a mosaic restorer, repair person, or maker may have been doing with the Mosaic years ago is speculative and outside the scope of this witness's purported expertise.

**Def. Response:**  Professor Parrish sought to opine on why there was partial repair formerly done around the eagle on the lefthand side of the mosaic.  It is unclear what is vague and ambiguous, and Professor Parrish is testifying about one part of his opinion. His opinion is not speculative and does not lack foundation, as it is based on his study of thousands of Roman mosaics, which has included viewing fake mosaics and dialogue with other academics about fake mosaics.  His opinion is within the scope of the defense's expert disclosure.  (*See* Ex. A at 4 (second full paragraph discussing Professor Parrish's opinion of the repair).)  Defense counsel's second question at 62:22-63:2 does not misstate prior testimony, but is reminding Professor Parrish of the question that was interrupted by the government's objection.

RT 64:8-14

**Gov't Obj.:**  Asked and answered.

**Def. Response:**  Defense counsel's questions was intended to address the government's numerous objections to Professor Parrish's analysis about why the craftsmanship of the mosaic at issue here is inconsistent with Roman mosaics by further establishing the basis for Professor Parrish's knowledge and understanding of Roman mosaics.

RT 66:4-25

**Gov't Obj.:**  The government withdraws this objection.

RT 67:10-16

**Gov't Obj.:**  Calls for speculation; beyond the scope of expert disclosure; lacks foundation.

**Gov't Basis:**  Defendant's expert disclosure specifically states that "[w]ith regard to whether the mosaic is from Syria or Turkey, Professor Parrish does not have an opinion."  As such, any testimony by the witness regarding this issue calls for speculation, lacks foundation, and is beyond the scope of the expert disclosure.

**Def. Response:**  Asking Professor Parrish whether he can tell if the mosaic at issue here comes from the Roman province of Syria does not call for speculation or lack foundation.  Professor Parrish has studied thousands of Roman mosaics with a focus on Asian minor, including Roman Syria.  He has the expertise and knowledge to opine on whether the mosaic appears to have come from Roman Syria.  This testimony is within the defense's expert disclosure.  (*See* Ex. A at 4 (no opinion whether the mosaic came from Turkey or Syria); Ex. B at 2 (mosaic does not have sufficient features in common with mosaics from Roman Syria to show clear link).)

RT 67:18-68:10

**Gov't Obj.:**  Nonresponsive; calls for speculation; move to strike.

**Gov't Basis:**  In addition to striking 68:1-2, the witness's testimony that "the maker of this mosaic" was "inspired by ancient sources" is complete conjecture and is therefore speculative and should be stricken.

**Def. Response:**  The defense would agree to strike, "And I think that it could have been made for the art market of the modern era" as nonresponsive.  (RT 68:1-2.)  The rest of Professor Parrish's answer is responsive and not speculative; it is based on his study of thousands of Roman mosaics with a focus on Asian minor, including Roman Syria.

RT 68:11-19

**Gov't Obj.:**  Nonresponsive; calls for speculation; move to strike.

**Gov't Basis:**  Defendant's expert disclosure specifically states that "[w]ith regard to whether the mosaic is from Syria or Turkey, Professor Parrish does not have an opinion."  As such, any testimony by the witness regarding this issue calls for

14

1   speculation, lacks foundation, and is beyond the scope of the expert disclosure.

2   **Def. Response:**  The defense disclosed a Supplemental Statement by Professor Parrish,

3   which stated, in part:  "Professor Parrish cannot determine what country the mosaic at

4   issue in this case is from.  He will testify that while the mosaic may have some features

5   in common with mosaics from the Roman province of Syria, it does not have enough

6   features to show a clear link." (Ex. B at 2.)  His deposition testimony that he cannot

7   determine where the mosaic is from because it is not consistent with the artistic

8   tradition in that part of the world is consistent with his expert disclosure.  This opinion

9   is not speculative or lacks foundation, but is based on his study of thousands of Roman

10  mosaics with a focus on Asian minor, including Roman Syria.

11

12  RT 69:12-21

13  **Gov't Obj.:**  Relevance; calls for speculation; lacks foundation; move to strike.

14  **Def. Response:**  Asking Professor Parrish if he has learned about other fake Roman

15  mosaics is relevant to his opinion that the mosaic at issue here is a fake.  It does not call

16  for speculation or lacks foundation, but as Professor Parrish goes on to explain, as part

17  of his study of Roman mosaics, he has learned of other examples that were determined

18  to be forgeries by experts.

19

20  RT 69:22-70:9; 70:16

21  **Gov't Obj.:**  Nonresponse; move to strike; beyond expert disclosure.

22  **Def. Response:**  Professor Parrish's answer about the black market for forgeries is

23  responsive as it provides background and context.  It is within the defense's expert

24  disclosure.  (*See* Ex. A at 3-4 (paragraph about black market of mosaic forgeries); Ex.

25  B 2 (additional information about Professor Parrish's knowledge of forgeries).)

26

27  RT 71:16-22; 72:13-17

28  **Gov't Obj.:**  Relevance; hearsay; move to strike; beyond the scope of expert

15

disclosure.

**Def. Response:**  Defense counsel's question about whether Professor Parrish had any further communication with the government after examining the mosaic in person is relevant to understanding the full context in which Professor Parrish analyzed the mosaic, and whether he received any additional information about it.  It is not hearsay, but elucidates the information received by Professor Parrish's about the mosaic.  An expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.  This testimony is within the scope of the defense's expert disclosure.  (*See* Ex. A at 4 (Professor Parrish reviewed Eduardo Sánchez's report, which was provided by the government).)


RT 72:18-73:7; 73:12-13

**Gov't Obj.:**  Hearsay; misstates prior testimony.

**Def. Response:**  Due to the government's objections earlier, defense counsel sought to clarify Professor Parrish's prior testimony.  Defense counsel did not misstate the prior testimony.  (*Compare* RT 71:24-72:12 *with* RT 72:21-24.)  Professor Parrish's review of another expert's report is not hearsay.  The other expert's report is not being offered for the truth of the matter asserted, but to establish information Professor Parrish received about the mosaic.  Additionally, an expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.


RT 73:18-23; 74:5-9

**Gov't Obj.:**  Hearsay; lacks foundation; relevance.

**Gov't Basis:**  The witness was asked, and answered, what the government's expert report says, which is hearsay.  That testimony was not elicited for its effect on the listener.  The testimony also lacks foundation because the government's expert report is not in evidence.

**Def. Response:**  Professor Parrish's review of another expert's report is not hearsay.

16

The other expert's report is not being offered for the truth of the matter asserted, but to establish information Professor Parrish received about the mosaic.  Additionally, an expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.  Professor Parrish's testimony does not lack foundation, as he testified earlier that he reviewed the other expert's report.  The testimony is relevant because the Eduardo Sánchez's report is information the government gave to Professor Parrish, and is potentially evidence they may seek to admit in this trial.

RT 74:10-19

**Gov't Obj.:**  Hearsay; lacks foundation; calls for speculation; beyond the scope of expert testimony; confusing and misleading to the jury.

**Gov't Basis:**  The witness was asked, and answered, what the government's expert report says and what the report concludes, which is hearsay.  That testimony was not elicited for its effect on the listener.  The testimony also lacks foundation because the government's expert report is not in evidence.

**Def. Response:**  Professor Parrish's review of another expert's report is not hearsay.  The other expert's report is not being offered for the truth of the matter asserted, but to establish information Professor Parrish received about the mosaic.  Additionally, an expert may base his opinion on facts or data that he "has been made aware of or personally observed."  Fed. R. Evid. 703.  Professor Parrish's testimony does not lack foundation and is not based on speculation, as he testified earlier that he reviewed the other expert's report.  This testimony is within the scope of the defense's expert disclosure.  (*See* Ex. A at 4 (Professor Parrish reviewed Eduardo Sánchez's report, which was provided by the government).)  This testimony is not confusing or misleading, as Professor Parrish is clearly testifying about his understanding of another expert's report.

RT 75:7-15

**Gov't Obj.:**  Same objection

**Def. Response:**  The defense counsel simply asked whether Professor Parrish received Eduardo Sánchez's report after he examined the mosaic in person.  Professor Parrish's answer is relevant to understanding the timing of when he received this information. His answer is not hearsay, and is based on his own personal knowledge.

RT 75:16-76:12

**Gov't Obj.:**  Calls for speculation; lacks foundation; relevance.

**Gov't Basis:**  Testimony regarding whether or not it is "possible for a mosaic to have authentic tesserae or stone and still be a modern fake" is irrelevant and calls for speculation by this witness.

**Def. Response:**  Professor Parrish is explaining why Mr. Sánchez's report did not change his opinion that the mosaic at issue here is not authentic.  His explanation is not speculative or lacks foundation, but is based on Professor Parrish's study of thousands of Roman mosaics, his analysis of the mosaic in this case, and his review of Mr. Sánchez's report.  Professor Parrish's testimony that a mosaic can have authentic tesserae, but still be fake, is relevant to understanding why Mr. Sánchez's report did not change his opinion.  It is not speculative, but based on Professor Parrish's study of thousands of Roman mosaic, which has included viewing and learning about fake mosaics.

RT 76:20-25

**Gov't Obj.:**  Relevance; calls for speculation; move to strike.

**Def. Response:**  Professor Parrish testified earlier that Mr. Sánchez's report did not change his opinion, in part, because a forger can reuse ancient tesserae.  Defense counsel's question about where Professor Parrish learned of this practice is relevant to explaining a basis for Professor Parrish's opinion.  His testimony about this practice is

18

1    not speculative, but based on his study of Roman mosaics.

2

3    <u>RT 77:14-16; 77:17-21</u>

4    **Gov't Obj.:** Relevance.

5    **Def. Response:** Questions about whether Professor Parrish was contacted by defense

6    counsel and when are relevant to establishing the context of Professor Parrish's

7    involvement in this case, and to establishing his lack of bias.

8

9    <u>RT 102:17-21</u>

10    **Gov't Obj.:** Move to strike; no question pending; unresponsive.

11    **Def. Response:** Professor Parrish's answer is responsive to the government's question,

12    and should not be stricken.

13

14    <u>RT 105:2-5</u>

15    **Gov't Obj.:** Move to strike; nonresponsive.

16    **Def. Response:** Professor Parrish's answer is responsive to the government's question,

17    and should not be stricken.

18

19    <u>RT 107:20-108:10</u>

20    **Gov't Obj.:** Move to strike; nonresponsive.

21    **Def. Response:** Professor Parrish's answer is responsive to the government's question,

22    and should not be stricken.

23

24    <u>RT 118:9-119:1</u>

25    **Gov't Obj.:** Incomplete hypothetical; calls for speculation; outside the scope of expert

26    disclosure.

27    **Gov't Basis:** These objections specifically apply to the testimony that "modern forgers

28    can reuse ancient materials" and "I think that's maybe what happened in this case of the

mosaic in LA."  Conjecture about what modern forgers may do and what "maybe" happened with the Mosaic at issue in this case is guesswork and speculative.

**Def. Response:**  The hypothetical in defense counsel's question is complete and logical.  It does not call for speculation, as an expert witness can answer hypothetical questions.  *See* Fed. R. Evid. 702, Advisory Committee Notes (the use of hypothetical questions with experts "is not abolished by the rule"); *id.*, 2000 Advisory Committee Note ("The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence."); *id.* ("an expert opinion need not be excluded simply because it is based on hypothetical facts").  Professor Parrish's testimony about modern forgers' reuse of ancient materials is based on his study of thousands of Roman mosaics, which has included viewing and learning about fake mosaics.  This question on redirect examination was intended to address issues that arose during the government's cross-examination.  Because it is rebuttal information, it was not required to be within the scope of the defense's expert disclosure.

RT 119:2-15

**Gov't Obj.:**  Same objection.

**Gov't Basis:**  As with the prior objection, these objections apply to testimony that "it could be reused materials" and what the artist intended to make the Mosaic look like.

**Def. Response:**  The hypothetical in defense counsel's question is complete and logical.  It does not call for speculation, as an expert witness can answer hypothetical questions.  *See* Fed. R. Evid. 702, Advisory Committee Notes (the use of hypothetical questions with experts "is not abolished by the rule"); *id.*, 2000 Advisory Committee Note ("The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence."); *id.* ("an expert opinion need not be excluded simply because it is based on hypothetical facts").  Professor Parrish's testimony about modern forgers' reuse of ancient materials is based on his study of thousands of Roman mosaics, which has included viewing and learning about fake

1   mosaics.  This question on redirect examination was intended to address issues that

2   arose during the government's cross-examination.  Because it is rebuttal information, it

3   was not required to be within the scope of the defense's expert disclosure.

4

5   RT 119:24-120:6; 120:13-21

6   **Gov't Obj.:**  Same objection; misstates facts not in evidence.

7   **Def. Response:**  The hypothetical in defense counsel's question is complete and

8   logical.  It does not call for speculation, as an expert witness can answer hypothetical

9   questions.  *See* Fed. R. Evid. 702, Advisory Committee Notes (the use of hypothetical

10   questions with experts "is not abolished by the rule"); *id.*, 2000 Advisory Committee

11   Note ("The language 'facts or data' is broad enough to allow an expert to rely on

12   hypothetical facts that are supported by the evidence."); *id.* ("an expert opinion need

13   not be excluded simply because it is based on hypothetical facts").  This question on

14   redirect examination was intended to address issues that arose during the government's

15   cross-examination.  Because it is rebuttal information, it was not required to be within

16   the scope of the defense's expert disclosure.  Defense counsel's question is a

17   hypothetical based on facts that are not yet in evidence; however, based on the

18   discovery, the defense thinks it is likely that the government will introduce these facts

19   at trial.  (*See, e.g.*, ECF No. 78-1 at 2 (one "lin[e] of evidence" supporting Dr.

20   Doehne's conclusion are "previously cited stylistic similarities to mosaics found near

21   Idlib, Syria").)

22

23   RT 122:6-123:1

24   **Gov't Obj.:**  Calls for speculation; relevance; lacks foundation; beyond scope of

25   expertise; beyond scope of expert disclosure; move to strike.

26   **Gov't Basis:**  These objections apply to testimony that Belal Aljrad, an unindicted co-

27   conspirator, "probably just wanted to make a sale and took advantage of the potential

28   buyer's interest in acquiring a mosaic, and so accommodated him.  That's the way I

21

think it could have happened." That testimony is pure speculation, lacks any sort of foundation, is irrelevant, and is not included anywhere in defendant's expert disclosure for this witness.

**Def. Response:** Defense counsel's hypothetical question, here, is responding to the government's cross-examination of Professor Parrish regarding whether he was aware of communications between the defendant, Mohamad Alcharihi, and a third-party, Belal AlJrad, who helped him purchase the mosaic. The hypothetical question does not call for speculation and does not lack foundation, as an expert witness can answer hypothetical questions. *See* Fed. R. Evid. 702, Advisory Committee Notes (the use of hypothetical questions with experts "is not abolished by the rule"); *id.*, 2000 Advisory Committee Note ("The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence."); *id.* ("an expert opinion need not be excluded simply because it is based on hypothetical facts"). It is relevant because of the government's cross-examination. Because it is rebuttal information to the government's cross-examination, it was not required to be within the scope of the defense's expert disclosure. The hypothetical is within Professor Parrish's expertise, as it addresses his opinion about the mosaic's authenticity.

RT 125:20-126:24

**Gov't Obj.:** Move to strike; nonresponsive.

**Def. Response:** The defense would agree to strike 126:20-22. But the rest of Professor Parrish's answer attempts to respond to the question.

RT 126:25-128:6

**Gov't Obj.:** Narrative; unresponsive; relevance.

**Def. Response:** The defense would agree to strike 127:24-128:3. But the rest of Professor Parrish's answer attempts to respond to the question.

<u>RT 128:7-129:9</u>

**Gov't Obj.:**  Relevance; move to strike; nonresponsive.

**Def. Response:**  The defense would agree to strike 128:17-129:9.  But the question at 128:7-12 and the response at 128:13, 16 is relevant to explaining what a "looted mosaic" is to the jury.


<u>RT 129:18-130:3; 130:4-9</u>

**Gov't Obj.:**  Nonresponsive; move to strike.

**Def. Response:**  The defense would agree to strike 129:24-130:9.  But Professor Parrish's answer at 129:21, 23 is responsive.


<u>RT 134:4-18</u>

**Gov't Obj.:**  Move to strike.

**Def. Response:**  The defense would agree to strike 134:2-17.

1
2

# DEFENSE EVIDENTIARY OBJECTIONS TO
# THE DEPOSITION OF PROFESSOR DAVID PARRISH

3
4   RT 82:5-82:14
5   **Def. Obj.:**  Facts not in evidence.
6   **Gov't Response:** The witness was asked if he was aware that defendant described the
7   Mosaic as "the 2000 year old Roman Era mosaic" under penalty of perjury in a court
8   filing with the Hon. John F. Walter in the related civil case (18-CV-4420-JFW, Dkt.
9   No. 19).  Those facts will be admitted in as admissions during the government's case in
10  chief.  Moreover, the government is entitled to cross examine the witness regarding
11  information he has received and reviewed (or not received) in forming his opinions.
12
13  RT 83:10-13
14  **Def. Obj.:**  Facts not in evidence; lack of personal knowledge.
15  **Gov't Response:** The witness was asked about defendant's co-conspirator, Belal
16  Aljrad, who helped defendant smuggle the Mosaic into the United States.  Evidence
17  regarding Mr. Aljrad's interactions with defendant and involvement with the Mosaic
18  will be admitted during the government's case in chief.  Given Mr. Aljrad's
19  connections to the Mosaic's provenance and familiarity with the Mosaic's true origin,
20  the government is entitled to ask this witness about his familiarity with Mr. Aljrad's
21  activities and if he analyzed that information in forming his opinions.
22
23  RT 83:16-21
24  **Def. Obj.:**  Lack of personal knowledge.
25  **Gov't Response:** Same response.
26
27  RT 84:14-15
28  **Def. Obj.:**  Facts not in evidence.

**Gov't Response:** Same response.

RT 85:2-85:15

**Def. Obj.:**  Outside the scope of direct examination.

**Gov't Response:**  On direct, the witness was asked questions about the black market for mosaics, looting of mosaics, and the authenticity of mosaics.  This cross examination question regarding contraband mosaics is within the scope of that direct examination.  Further, on cross the government is entitled to inquire regarding this witness's familiarity with contraband mosaics because his lack of experience in that area undermines his conclusions regarding this Mosaic's authenticity.

RT 85:23-87:3

**Def. Obj.:**  Standing objection that questions about Belal AlJrad are irrelevant, assumes facts not in evidence, and Professor Parish lacks personal knowledge.

**Gov't Response:**  The witness was asked about defendant's co-conspirator, Belal Aljrad, who helped defendant smuggle the Mosaic into the United States.  Evidence regarding Mr. Aljrad's interactions with defendant and involvement with the Mosaic will be admitted during the government's case in chief.  Given Mr. Aljrad's connections to the Mosaic's provenance and familiarity with the Mosaic's true origin, the government is entitled to ask this witness about his familiarity with Mr. Aljrad's activities and if he analyzed that information in forming his opinions.

RT 87:24-25; 88:2-5; 88:16-18

**Def. Obj.:**  Government's use of term "looted" and "smuggled" is argumentative.

**Gov't Response:**  These are factual terms, not arguments, and this witness's lack of experience assessing looted and/or smuggled mosaics is a key deficiency with respect to his expert opinion that the jury is entitled to hear about.  Moreover, defense counsel used the term "looted" a number of times on direct.

1

2  RT 90:22-91:1

3  **Def. Obj.:**  Outside scope of direct examination; irrelevant; assumes facts not in

4  evidence.

5  **Gov't Response:** This witness testified regarding Syria on direct multiple times,

6  including comparing other Syrian mosaics (see, for example, exhibit 1006) to the

7  Mosaic in this case.  The government is entitled to question defendant's background

8  and knowledge regarding looted Syrian mosaics in order to test his opinion that the

9  instant Mosaic was not looted.

10

11  RT 91:25-92:6; 92:15-17

12  **Def. Obj.:**  Assumes facts not in evidence; speculation.

13  **Gov't Response:**  Same response.  Given that this witness is opining that the Mosaic is

14  a fake that was not looted, the government is entitled to cross examine him regarding

15  that opinion.

16

17  RT 92:25-93:5

18  **Def. Obj.:**  Outside scope of direct examination; lack of personal knowledge.

19  **Gov't Response:**  On direct, defense counsel inquired about whether or not this witness

20  reviewed Eduardo Sanchez's expert report (and what that report said).  Mr. Sanchez is

21  one of the government's experts.  Dr. Eric Doehne, who worked with Mr. Sanchez, also

22  prepared an expert report regarding the Mosaic and will testify at trial that the Mosaic

23  is authentic.  The government is entitled to ask the witness whether he read Dr.

24  Doehne's report and factored it into his analysis.

25

26  RT 93:12-15

27  **Def. Obj.:**  Relevance; outside scope of direct examination.

28  **Gov't Response:**  Same response.

26

<u>RT 95:5-15</u>

**Def. Obj.:** Outside scope of direct examination; relevance; assumes facts not in evidence.

**Gov't Response:** As indicated above, on direct defense counsel inquired about whether or not this witness reviewed one of the government's expert reports prepared by Eduardo Sanchez.  Basilius Zeno is another government expert who prepared a report finding that the Mosaic was authentic.  The government is entitled to ask this witness if he reviewed Mr. Zeno's materials when he formed his opinions regarding the Mosaic.

<u>RT 96:3-5</u>

**Def. Obj.:** Relevance.

**Gov't Response:** Defense counsel asked this witness about Syrian mosaics and museums on direct, including "what you saw in those museums." (RT 14:17.)  Cross examination about what museums this witness went to is therefore relevant.

<u>RT 96:19-25; 97:5-10</u>

**Def. Obj.:** Outside scope of direct examination; irrelevant.

**Gov't Response:** Looting was asked about on direct examination.  The government is entitled to inquire about this witness's familiarity (or lack thereof) with looted and smuggled mosaics.

<u>RT 98:11-18</u>

**Def. Obj.:** Speculation; lack of knowledge; outside scope of direct examination.

**Gov't Response:** This witness's assessment of the Mosaic and familiarity (or lack thereof) with how ancient mosaics deteriorate over hundreds of years are relevant to determining the Mosaic's authenticity.  This witness testified that the Mosaic was not authentic.  As such, the government is entitled to cross examine him regarding his

27

familiarity with evidence that the Mosaic has signs of decades-long deterioration that indicate that the Mosaic is authentic and ancient.

<u>RT 99:5-18</u>

**Def. Obj.:** Outside scope of direct examination; irrelevant; lack of expertise.

**Gov't Response:** Same response. Given that this witness testified that the Mosaic is not authentic, the government is entitled to confront him with evidence that the Mosaic *is* authentic.

<u>RT 99:25-100:3</u>

**Def. Obj.:** Same objection.

**Gov't Response:** Same response. Cross examination based on information from Dr. Doehne's report showing that the Mosaic is authentic is appropriate given this witness's opinion that the Mosaic is not ancient. Defense counsel questioned this witness based on related reports prepared by Eduardo Sanchez, so cross examination based on this witness's familiarity with the other expert reports is appropriate.

<u>RT 100:9-17</u>

**Def. Obj.:** Outside scope of direct examination; irrelevant; lack of expertise.

**Gov't Response:** Same response.

<u>RT 100:24-101:3</u>

**Def. Obj.:** Same objection.

**Gov't Response:** Same response.

<u>RT 101:19-102:3</u>

**Def. Obj.:** Beginning of question was argumentative; same objection.

**Gov't Response:** Same response.

1

2  RT 105:25-106:5

3  **Def. Obj.:**  Misstates previous testimony.  (*See* RT 70:20-22 (Professor Parrish testified

4  about seeing several examples of forgeries, not looted mosaics.).)

5  **Gov't Response:**  That is incorrect.  In response to the question "how many black

6  market looted mosaics have you seen," the witness testified "I would say, I don't know,

7  maybe ten" or "10 to 20" out of the hundreds or thousands of authentic mosaics he has

8  viewed in his career.  (See RT 81:3-14.)

9

10  RT 106:25-107:4

11  **Def. Obj.:**  Misstates previous testimony.  (*See* RT 70:20-22 (Professor Parrish testified

12  about seeing several examples of forgeries, not looted mosaics.).)

13  **Gov't Response:**  Same response.  In response to the question "how many black

14  market looted mosaics have you seen," the witness testified "I would say, I don't know,

15  maybe ten" or "10 to 20" out of the hundreds or thousands of authentic mosaics he has

16  viewed in his career.  (*See* RT 81:3-14.)

17

18  RT 108:13-112:4; 132:5-23

19  **Def. Obj.:**  The defense objects to this line of questioning about whether Professor

20  Parrish recalled that Special Agent Razmik Madoyan emailed him Eric Doehne's

21  report, and whether it affected his analysis.  After the deposition, the defense reviewed

22  the discovery produced by the government in this case, and the government never

23  produced the email from Special Agent Madoyan to Professor Parrish attaching Eric

24  Doehne's report.[1]  This violates the government's obligation under Federal Rule of

25  Criminal Procedure 16(a)(1)(E)(i) to produce items material to preparing the defense.

26  _____

27  [1] The defense did not raise this objection during the deposition because it needed
to review the discovery to determine that there was an objection on this basis.

28  Accordingly, there is good cause to permit this objection to be heard after the
deposition.

29

The email between Special Agent Madoyan and Professor Parrish is clearly "material" given that the government thought it was important enough to cross-examine Professor Parrish about it for several minutes.  Yet, the government never produced this email to the defense.  In discovery, the government produced Professor Parrish's response to two reports sent by Special Agent Madoyan, but his response only referenced Sánchez by name, not Dr. Eric Doehne.  (Ex. C.)  Because the deposition has already taken place, the only appropriate remedy is to "prohibit" the government "from introducing the undisclosed evidence," which, in this case, amounts to the line of cross-examination about the email at issue.  Fed. R. Crim. P. 16(d)(2)(C).

**Gov't Response:** On direct, defense counsel inquired about communications this witness had with Special Agent Madoyan and the government.  Defense counsel also certainly thoroughly inquired about those communications with the witness prior to this Rule 15 deposition.  As such, cross examination about these communications is proper.

Moreover, the email referenced above from Special Agent Madoyan to the witness stated: "Thank you for taking time from your busy schedule and assisting us.  I am including the two reports that we discussed.  Please look over those and give me a call when you get a chance."  That email was not material until the witness, on direct, lied repeatedly about not receiving Dr. Doehne's report.  (*See, e.g.*, RT 93:6-11, 93:25-94:7, 94:14-19, 94:25-95:4.)   Given that the witness falsely stated that he did not receive one of the reports that Special Agent Madoyan sent him, the government is entitled to cross examine him about it.

Importantly, the government produced in discovery this witness's response to the reports of Sanchez and Dr. Doehne sent over by Special Agent Madoyan.  There, the witness confirmed "I read the two scientific reports you sent me, and now I wish to give you my reaction."  (*See* Ex. C.)  In fact, this email was provided back to the government as part of the defendant's expert disclosure package.  Defense counsel was therefore well aware, prior to the Rule 15 deposition, that this witness received and reviewed the reports from both Eduardo Sanchez *and* Dr. Eric Doehne.  Any objection

30

about not receiving other emails regarding the same information is meritless.  When the witness falsely claimed that he never received or reviewed Dr. Doehne's report, it was entirely proper for the government to cross examine him regarding his false statement. By not objecting during the deposition, defense counsel waived their objection and cannot now claim that this area of questioning is inappropriate for cross examination.

RT 113:6-11

**Def. Obj.:**  Irrelevant; argumentative; outside scope of direct examination; outside scope of expertise.

**Gov't Response:** This question was rephrased.  The government withdraws the original question.

RT 115:2-10

**Def. Obj.:**  Misstates previous testimony; outside scope of direct examination; irrelevant.

**Gov't Response:** The witness testified that a looted mosaic was offered for sale to the Getty Villa in Los Angeles but the curator realized it was stolen and informed the government about it.  (RT 91:21-24.)  This question about looting does not misstate the previous testimony.  Moreover, as stated above, looted was raised on direct.  Given the substantial evidence showing that the Mosaic in question was looted and authentic, and hence undermining this expert's opinion, this line of inquiry is appropriate on cross examination.

RT 116:1-6

**Def. Obj.:**  Irrelevant; broad; vague.

**Gov't Response:** Whether or not this expert witness reviewed evidence related to the Mosaic in question is directly relevant to assessing his opinions regarding the Mosaic. That area of inquiry is entirely appropriate for cross examination.

RT 116:17-21

**Def. Obj.:**  Outside scope of direct examination; lack of expertise.

**Gov't Response:** The value of modern and ancient mosaics is relevant to this purported expert's knowledge, training, and experience regarding mosaics.  On direct, defense counsel asked this witness extensive questions regarding his qualifications, and the government is entitled to inquire about the extent of his experience and knowledge regarding mosaics.

RT 130:23-131:10

**Def. Obj.:**  Vague.

**Gov't Response:** The witness was asked about "unique art" being discovered all the time and he testified that "it depends how you define unique."  He was then asked how he defined "unique," and he answered that question.  (RT 130:22.)  The question was not vague because it was clear, concise, and sought to clarify a term used by the witness in his answer.

RT 132:11-16

**Def. Obj.:**  Argumentative; asked and answered.

**Gov't Response:** Asking an expert witness if he disregarded and did not review another expert's report is not argumentative.  Moreover, this question was a follow up to the witness's defensive answer that he thought one report was simply "repetitive" of another, and cross examination showing that this expert witness disregarded certain material is highly relevant to undermining his opinions.

//

//

//

//

32

RT 133:14-19

**Def. Obj.:**  Asked and answered.

**Gov't Response:** The witness provided evasive answers prior to this question.  As such, the government is entitled to ask the question again and receive a clear answer.