CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
ASHLEY MAHMOUDIAN (Bar No. 316638)
(E-Mail: ashley_mahmoudian@fd.org)
ISABEL BUSSARAKUM (Bar No. 295046)
(E-Mail: isabel_bussarakum@fd.org)
JOSHUA D. WEISS (Bar No. 338918)
(E-Mail: Josh_Weiss@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
MOHAMAD ALCHARIHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 20-307-GW |
| Plaintiff, | **MOHAMAD ALCHARIHI'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL UNDER FED. R. CRIM. P. 29** |
| v. | |
| MOHAMAD ALCHARIHI, | |
| Defendant. | **Hearing: 3/21/2024, at 8:00 a.m.** |

Mohamad Alcharihi, by and through his counsel of record, Deputy Federal Public Defenders Ashley Mahmoudian, Isabel Bussarakum, and Joshua Weiss, hereby moves this Court for a judgment of acquittal under Federal Rule of Criminal Procedure 29.

//

//

This Motion is based upon the attached memorandum of points and authorities, the concurrently-filed declaration of counsel and attached exhibits, the trial transcripts filed on the docket, the files and records in this case, and any further evidence and argument as the Court may permit.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  January 25, 2024                    By   */s/ Isabel Bussarakum*
ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSHUA WEISS
Deputy Federal Public Defenders
Attorneys for MOHAMAD ALCHARIHI

# **TABLE OF CONTENTS**

Page

1    I. INTRODUCTION ................................................................................ 1

2    II. SUMMARY OF RELEVANT FACTS ............................................... 3

3    III. ARGUMENT ................................................................................... 5

4        A.    The Court Must Grant this Motion If No Rational Juror Could Have Found That the Government Proved Each Element of the Offense

5            Beyond a Reasonable Doubt ......................................................... 5

6        B.    The Government Presented Virtually No Evidence That the Mistakes on the CBP Entry Forms *Effected* Entry of the Mosaic .............................. 7

7

8        C.    There Was No Evidence That Mr. Alcharihi Himself Effected Entry of the Mosaic Upon a False Classification of Quality or Value ................... 10

9        D.    There Was No Evidence That Mr. Alcharihi's Conduct or The Mistakes on the CBP Entry Forms Deprived the United States of

10           Revenue ...................................................................................... 12

11        E.    There Was Insufficient Evidence That Mr. Alcharihi Caused the Customs Broker to Falsely Classify the Mosaic's Quality ....................... 13

12    IV. CONCLUSION .............................................................................. 17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Burks v. United States,*
    437 U.S. 1 (1978) ................................................................................................ 6

*Chiarella v. United States,*
    445 U.S. 222 (1980) ......................................................................................... 12

*Ciminelli v. United States,*
    143 S. CT. 1121 (2023) .................................................................................... 12

*Jackson v. Virginia,*
    443 U.S. 307 (1979) ........................................................................................ 5, 6

*In re Winship,*
    397 U.S. 358 (1970) ........................................................................................... 5

*Maquiz v. Hedgpeth,*
    907 F.3d 1212 (9th Cir. 2018) ..................................................................... 6, 10

*McCormick v. United States,*
    500 U.S. 257 (1991) ......................................................................................... 12

*United States v. Navarrette-Aguilar,*
    813 F.3d 785 (9th Cir. 2015) .............................................................................. 6

*United States v. Nevils,*
    598 F.3d 1158 (9th Cir. 2010) (en banc) ........................................................ 6, 9

*United States v. Velazquez,*
    1 F.4th 1132 (9th Cir. 2021) .............................................................................. 5

**Federal Statutes**

18 U.S.C. § 2(B) .................................................................................................. 1.3,9

18 U.S.C. § 541 ................................................................................................. *passim*

**Other Authorities**

Federal Rule of Criminal Procedure 29 .......................................................... 1, 6. 16

Federal Rule of Criminal Procedure 33 ............................................................... 16

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I. INTRODUCTION

In June 2023, Mr. Alcharihi was convicted by a jury of knowingly effecting entry of a mosaic upon a false classification as to quality or value, in violation of 18 U.S.C. § 541.  (ECF No. 165.)  However, the Court must grant a judgment of acquittal under Federal Rule of Criminal Procedure 29 because no rational juror could have found that the government proved each element of the offense beyond a reasonable doubt.  In fact, given the trial evidence, the government failed to present sufficient evidence to prove *any* element beyond a reasonable doubt.  Without waiving or forfeiting that general insufficient-evidence claim, Mr. Alcharihi will discuss below certain particular ways the evidence cannot sustain a conviction.

First, the government failed to prove that the information on the mosaic's customs entry forms *effected* the entry of the mosaic.  A critical element of the offense is that Mr. Alcharihi "knowingly *effected the entry* of a good, ware, or merchandise into the United States upon a false classification as to quality and/or value."  (ECF No. 160 at 4 (final jury instructions) (emphasis added).)  Or as the government told the jury in closing, "did [Mr. Alcharihi] effect *or cause the entry* of the ancient mosaic into the United States?"  (ECF No. 185 at 954:17-18 (emphasis added).)  The government's theory at trial was that the Customs and Border Protection ("CBP" or "Customs") Entry Forms for Mr. Alcharihi's shipment contained the wrong value, country of origin, and Harmonized Tariff Schedule ("HTS") classification code.  But the government presented virtually no evidence that these mistakes caused the mosaic to enter or be released into the country.  Thus, the government presented insufficient evidence that these mistakes and/or Mr. Alcharihi's conduct "effected the entry" of the mosaic.

Second, the government failed to prove that Mr. Alcharihi himself effected entry of the mosaic upon a false classification of quality or value.  It is undisputed that Mr. Alcharihi did not fill out or submit the CBP Entry Forms for his shipment himself.  Rather, he hired a customs broker to do so.  This is presumably why the Indictment

1

contained a citation to, and language from, the aiding and abetting statute, 18 U.S.C. § 2(b).  (ECF No. 1.)  Yet, the jury was not presented with an aiding and abetting instruction at the end of trial (ECF No. 160), and the jury did not make any finding as to aiding and abetting in the verdict form (ECF No. 165).  Absent a jury instruction on aiding and abetting and a verdict form reflecting an aiding and abetting finding, a judgment of acquittal must be entered because Mr. Alcharihi *himself* did not effect entry of the mosaic upon a false classification of value or quality.

Third, as the defense previously argued, a necessary element of the offense is the loss of revenue to the United States.  (ECF No. 130 at 19-23; ECF No. 138.)  While the Court ruled against the defense on this issue (ECF Nos. 144, 145), it is raised here to preserve the record.  The Court should enter a judgment of acquittal because the government failed to prove at trial that Mr. Alcharihi's conduct and/or the mistakes in the CBP Entry Forms deprived the United States of any revenue.

Fourth, even if the Court were to find that Mr. Alcharihi could be directly liable for effecting false entry of the mosaic absent an aiding and abetting instruction, the government failed to prove that he caused a false classification as to the mosaic's quality.  The defense assumes, without conceding, for the purposes of this Motion that quality encompasses an item's country of origin and HTS code.  Here, the evidence at trial established that a customs broker employee mistakenly listed Israel as the country of origin in the CBP Entry Forms, even though Mr. Alcharihi provided documents indicating that Turkey was the country of origin.  Additionally, the evidence at trial established that based on the information provided by Mr. Alcharihi, the customs broker should have classified his mosaic as artwork and further inquire as to whether any mosaic was older than 100 years old.  The customs broker failed to do either.  Thus, there was insufficient evidence that Mr. Alcharihi caused the customs broker's false classification of the mosaic's quality.

For all these reasons, the Court should enter a judgment of acquittal.

## II. SUMMARY OF RELEVANT FACTS

The Indictment in this case alleged that Mr. Alcharihi effected the entry of a mosaic into this country on August 13, 2015 upon a false classification of quality and value, in violation of 18 U.S.C. § 541.  (ECF No. 1.)  The Indictment cited to the aiding and abetting statute, 18 U.S.C. § 2(b), and included both a theory of direct liability and an aiding and abetting theory.  (*See id.* (alleging that Mr. Alcharihi "knowingly effected the entry of goods, wares, and merchandise, and *willfully caused* the entry of goods, wares, and merchandise, upon a false classification as to quality and value of such material") (emphasis added).)

Specifically, the government sought to prove that the mosaic that Mr. Alcharihi imported in 2015 was an ancient, Roman mosaic.  (*See* ECF No. 141 at 9.)  At trial, the government presented expert testimony that the mosaic was most likely an authentic Roman mosaic.  (ECF No. 184 at 600:2-11.)  However, the defense presented competing expert testimony that the mosaic is not authentic, but a forgery or reconstruction.  (ECF No. 183 at 370:21-371:3, 383:22-391:13; ECF No. 185 at 905:8-15.)  The mosaic was packed with other mosaics and vases in a container (ECF No. 182 at 217:10-16), and left Turkey on a cargo ship in June 2015 (*id.* at 225:1-3).  It arrived at the port of Long Beach in the United States in August 2015.  (*Id.* at 225:6-8.)

Mr. Alcharihi hired a customs brokerage called Soo Hoo Customs to prepare and submit the CBP Entry Forms required to import an item into the United States.  (ECF No. 183 at 303:8-14; ECF No. 184 at 739:4-9, 742:21-743:3.)  Customs brokers are licensed individuals or entities authorized to prepare CBP Entry Forms on behalf of an importer.  (ECF No. 183 at 302:19-303:7; ECF No. 184 at 733:4-6.)  Mr. Alcharihi provided Soo Hoo Customs with shipping documents, including an invoice showing that the shipment included three mosaic tableaus, the items were shipped from Turkey, and the total value for the shipment was $2,199.23.  (ECF No. 183 at 303:22-24; ECF No. 185 at 834:15-24; Trial Exhibit ("Tr. Ex.") 265.)

Soo Hoo Customs assigned Mr. Alcharihi's shipment to an employee named Rebecca Sito to classify the shipment.  (ECF No. 184 at 750:2-8; ECF No. 185 at 827:10-14.)  It was among her responsibilities to determine the shipment's value, country of origin, and HTS classification code.  (ECF No. 185 at 828:18-25, 829:20-830:10.)  While she asked Mr. Alcharihi some questions by email, those questions primarily focused on determining the items' materials.  (ECF No. 185 at 835:19-836:3; Tr. Ex. 151.)  In this context, she also asked for a photo of the items.  (ECF No. 185 at 836:4-22; Tr. Ex. 151 at 2.)  Mr. Alcharihi sent her photos, one of which was of a well-known fish pond mosaic located in Croydon, England.  (ECF No. 183 at 430:2-431:5; Tr. Ex. 152 at 6.)  One of the mosaics in his shipment was a copy of this fish pond mosaic.  (ECF No. 183 at 449:2-6.)  Ms. Sito did not ask Mr. Alcharihi any questions about the items' country of origin, how old any of the items were, or what HTS classification code should be assigned to them.  (ECF No. 185 at 841:2-7, 843:1-5, 845:6-13; Tr. Ex. 151; Tr. Ex. 270 at 1.)

Ms. Sito then transmitted the $2,199.23 value from Mr. Alcharihi's invoice to the CBP Entry Forms.  (ECF No. 185 at 830:4-7; Tr. Ex. 270 at 3.)  But she mistakenly listed the country of origin as Israel, instead of Turkey.  (ECF No. 184 at 744:9-745:6; ECF No. 185 at 844:17-845:5; Tr. Ex. 270 at 1.)  This mistake resulted in an incorrect manufacturer's ID and the incorrect designation of a trade program on the Entry Forms.  (ECF No. 184 at 753:20-755:6; ECF No. 185 at 859:18-861:7.)  Ms. Sito also incorrectly classified the mosaics as "ceramic, unglazed, tiles, cub" under Chapter 69 of the HTS, instead of artwork under Chapter 97 of the HTS.  (ECF No. 185 at 841:16-19, 842:3-14, 861:17-862:10; Tr. Ex. 270 at 3.)  Mr. Alcharihi did not receive or review the CBP Entry Forms before they were submitted to Customs.  (ECF No. 185 at 846:14-17.)  It is undisputed that no duties are owed to the United States on items classified under Chapter 97.  (*Id.* at 868:2-8, 955:4-6.)  Despite the mistakes on the CBP Entry Forms, which included inconsistencies readily apparent from the face of the forms, CBP released the shipment into the country.  (*Id.* at 862:11-864:9.)

4

Prior to trial, the government had disclosed its intent to call CBP Import Specialist William Tarter as an expert witness. (Exs. B-D.) According to their disclosure, Mr. Tarter was to testify that if the mosaic's value had been listed as $10,000 or more, if its country of origin had been listed as Turkey or Syria, or if it had been correctly classified as artwork under Chapter 97 of the HTS, each of these factors would have triggered additional scrutiny by Customs. (Ex. B.) However, the government ended up not calling Mr. Tarter as a witness at trial. Instead, they asked Brian Soo Hoo, the owner of Soo Hoo Customs, one question: whether an item or antiquity from Syria would have resulted in "extra scrutiny" by CBP? (ECF No. 184 at 760:20-23.) Mr. Soo Hoo provided a 9-word response: "Most definitely. Generally artwork of any type is scrutinized." (*Id.* at 760:24-25.)

## III. ARGUMENT

**A.    The Court Must Grant this Motion If No Rational Juror Could Have Found That the Government Proved Each Element of the Offense Beyond a Reasonable Doubt**

The Due Process Clause required the government to prove each element of each alleged crime beyond reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). This constitutional burden of proof "plays a vital role in the American scheme of criminal procedure" because it is "a prime instrument for reducing the risk of convictions resting on factual error" and it "provides concrete substance for the presumption of innocence." *Id*. at 363 (cleaned up); *see also United States v. Velazquez*, 1 F.4th 1132, 1137 (9th Cir. 2021) (discussing interests served by reasonable-doubt standard). "To this end, the reasonable-doubt standard is indispensable, for it impresses on the trier of fact the *necessity of reaching a subjective state of certitude* of the facts in issue." *Winship*, 397 U.S. at 364 (cleaned up) (emphasis added); *see also id.* (factfinder must be convinced of guilt with "utmost certainty"); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979) ("By impressing upon the factfinder the need to reach a subjective state of near

certitude of the guilt of the accused, the standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself.") (cleaned up).

A conviction "cannot constitutionally stand" if no rational trier of fact could find that the government met its burden. *Jackson*, 443 U.S. at 317-18.  More than a "mere modicum" of evidence is required to support a verdict. *Id*. at 320 (cleaned up).  The relevant question is whether, after viewing the evidence in the light most favorable to the government, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319.  This "standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  "A 'reasonable doubt,' at a minimum, is one based upon 'reason.'" *Id*. at 317.

Accordingly, a "reasonable inference is one that is supported by a chain of logic rather than mere speculation dressed up in the guise of evidence." *United States v. Navarrette-Aguilar*, 813 F.3d 785, 793 (9th Cir. 2015) (cleaned up); *see also Maquiz v. Hedgpeth*, 907 F.3d 1212, 1217 (9th Cir. 2018) ("Speculation and conjecture cannot take the place of reasonable inferences and evidence.") (cleaned up).

The Supreme Court has recognized that even "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 317 (cleaned up).  Lower courts have the "obligation" to identify such cases, "where *mere speculation*, rather than reasonable inference, supports the government's case, *or* where there is a *total failure of proof* of a requisite element." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc) (cleaned up) (emphasis added).

If the evidence is insufficient as to any element, the Court must direct entry of a judgment of acquittal as to the affected counts because the Double Jeopardy Clause precludes a retrial. *Burks v. United States*, 437 U.S. 1, 18 (1978).

Mr. Alcharihi made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a) at the close of the government's case-in-chief, which the

6

1  Court denied. (ECF No. 185 at 814:23-818:4.) Mr. Alcharihi also renewed his motion

2  at the close of all evidence, which the Court also denied. (*Id.* at 950:25-951:4.)

3  Mr. Alcharihi again argues in this filing that the Court must reverse because all the

4  evidence, including that presented after the government rested, was insufficient. Fed.

5  R. Crim. P. 29(a), (c)(1). In other words, reversal is required if the evidence is

6  insufficient *either* just considering the case-in-chief evidence *or* considering all the

7  evidence. As discussed below, the government did not meet its constitutional burden at

8  either stage.

9  **B.    The Government Presented Virtually No Evidence That the Mistakes on**

10     **the CBP Entry Forms *Effected* Entry of the Mosaic**

11         It is unlawful to "knowingly effec[t] any entry of goods, wares, or merchandise .

12  . . upon a false classification as to quality or value." 18 U.S.C. § 541. As established at

13  trial, an importer conveys information about a good's quality and value to CBP through

14  CBP Entry Forms 7501 and 3461. (ECF No. 183 at 317:16-318:3.) Here, Mr.

15  Alcharihi hired a customs broker called Soo Hoo Customs, which prepared and

16  submitted these forms on his behalf for the shipment containing the mosaic at issue.

17  (*Id.* at 303:8-14; ECF No. 184 at 739:4-9, 742:21-743:3.) The trial evidence

18  established that there were mistakes on these forms as to the mosaic's country of origin

19  and HTS code and description, among other items. (ECF No. 184 at 742:2-6; 744:9-

20  745:6; ECF No. 185 at 861:17-862:10, 865:1-15.) The government also sought to

21  prove that the wrong value was listed on these forms (ECF No. 182 at 197:13-198:6;

22  ECF No. 185 at 968:10-22), but as detailed in the concurrently-filed motion for new

23  trial, the government's proof as to value was tainted by misconduct. In any event, the

24  government failed to prove that any supposed mistakes on the entry forms "effect[ed]"

25  the mosaic's entry into the country. The government presented virtually no evidence

26  that the mistakes on these forms resulted in, caused, led to, or contributed to CBP

27  releasing the mosaic to Mr. Alcharihi. Thus, the government failed to prove a critical

28  element of the offense. (*See* ECF No. 160 at 4 (instructing the jury that "[i]n order for

the Defendant to be found guilty of this crime, the Government must prove that the Defendant knowingly *effected the entry* of a good, ware, or merchandise into the United States upon a false classification as to quality and/or value") (emphasis added); ECF No. 185 at 954:17-18 (the government stating in closing that an element of the offense is "did [Mr. Alcharihi] effect or cause the entry of the ancient mosaic into the United States?").)

Tellingly, prior to trial, the government had provided notice of its intent to call CBP Import Specialist William Tarter as an expert witness to explain the supposed mistakes on the CBP Entry Forms, and opine that these mistakes allowed the mosaic to evade scrutiny by CBP and enter the country. (*See* Ex. B (government's February 8, 2023 expert disclosure regarding William Tarter); Exs. C-D (reports of investigation summarizing interviews with Mr. Tarter).) According to its disclosure, the government intended to elicit testimony from Mr. Tarter that "had the correct value and country of origin been declared for the Mosaic import, the shipment would have received additional scrutiny by CBP." (Ex. B at 3.) Indeed, Mr. Tarter was to testify in much further detail—for example, that "had the Country of Origin been listed as Syria or Turkey, the import have would have been scrutinized and held for further processing, with a likely request for additional supporting documentation and contact made to other government agencies, including the Department of State." (*Id.* at 2.) Mr. Tarter was to further testify that each of the following factors would have independently triggered increased scrutiny by CBP: artwork classified under Chapter 97, importers of artwork, an art importer who is not a known museum or gallery, and items with a declared value of $10,000 or more. (*Id.* at 2-3.) In other words, Mr. Tarter *was* the government's evidence that the so-called mistakes on the mosaic's CBP forms "effect[ed]" its entry into the country. 18 U.S.C. § 541.

By all accounts, the government intended to call Mr. Tarter. His testimony was the subject of a highly-contested defense motion *in limine*. (ECF Nos. 79, 86, 92.) The Court granted in part and denied in part the motion, and set a mid-trial *Daubert* hearing

8

to inquire into the bases of some of Mr. Tarter's opinions.  (ECF No. 99.)  After this ruling, Mr. Tarter remained on both the government's initial witness list and the parties' joint witness list filed shortly before trial.  (ECF Nos. 126, 146.)  And the government stated in its trial memorandum that it "will be calling three experts at trial," including "William Tarter, a customs and importation expert."  (ECF No. 141 at 16.)

However, the government did *not* call Mr. Tarter at trial.  The defense does not know whether his testimony would have been sufficient to establish that the supposed mistakes on the CBP Entry Forms "effect[ed]" the mosaic's entry.  18 U.S.C. § 541.  But absent Mr. Tarter's testimony, there was an absolute dearth of evidence as to this element.  The sole piece of government evidence on this point over the 5-day trial is one question to customs broker Brian Soo Hoo:  "would . . . declaring that an item or an antiquity is from Syria, would that have resulted in extra scrutiny by customs, from your experience?"  (ECF No. 184 at 760:20-23.)  Mr. Soo Hoo replied, "Most definitely.  Generally artwork of any type is scrutinized."  (*Id.* at 760:24-25.)

Notably, Mr. Soo Hoo did not address whether a different declared value would have affected CBP's assessment of the mosaic.  Thus, even assuming that the $2,199 value listed on the CBP Entry Forms was incorrect, there was a "total failure of proof" as to whether that value effected the mosaic's entry.  *Nevils*, 598 F.3d at 1167 (quoting *Briceno v. Scribner*, 555 F.3d 1069, 1079 (9th Cir. 2009)).

With regard to the mistakes regarding country of origin and HTS classification code in the CBP Entry Forms, Mr. Soo Hoo's 9-word response was insufficient to establish beyond a reasonable doubt that they effected the mosaic's entry.  Mr. Soo Hoo only testified that an item or antiquity from Syria would receive more scrutiny, and that artwork is "[g]enerally . . . scrutinized."  (*Id.*)  It is unclear from Mr. Soo Hoo's vague and general response how the information about country of origin and HTS code on Mr. Alcharihi's CBP Entry Forms actually affected the mosaic's entry process.  Based on Mr. Soo Hoo's testimony, if the mosaic had been declared as an item or antiquity from Syria, it could have been scrutinized and *then released*.  Mr. Soo Hoo did not

1  explain what type of scrutiny an item or antiquity from Syria would receive, whether
2  CBP would hold such an item, what next steps CBP would take in assessing such an
3  item, or what information would be required to release such an item into the country if
4  it were held.  Filling in all of these gaps to reach the conclusion that the mosaic would
5  have been held and *not* released requires "[s]peculation and conjecture," which "cannot
6  take the place of reasonable inferences and evidence."  *Maquiz*, 907 F.3d at 1217
7  (quoting *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005)).

8      Other than Mr. Soo Hoo's 9-word response, the government presented no
9  evidence on this element.  What is more, the defense presented evidence that CBP had
10  sufficient information to scrutinize Mr. Alcharihi's shipment, and there were numerous
11  inconsistencies, especially relating to the country of origin, which were readily
12  apparent on the face of the CBP Entry Forms.  (ECF No. 185 at 862:11-864:9.)  Despite
13  these red flags, CBP released the mosaic to Mr. Alcharihi.  Thus, there was no evidence
14  at trial that the declared value effected the mosaic's entry, and there was insufficient
15  evidence that the mistakes regarding country of origin or HTS classification code
16  effected the mosaic's entry.  The Court must enter a judgment of acquittal.

17  **C.   There Was No Evidence That Mr. Alcharihi Himself Effected Entry of**
18  **the Mosaic Upon a False Classification of Quality or Value**

19      The Indictment in this case cited 18 U.S.C. § 2(b), the statute that imposes the
20  same punishment on aiders and abettors as principals.  *Id.* ("Whoever willfully causes
21  an act to be done which if directly performed by him or another would be an offense
22  against the United States, is punishable as a principal.").  Covering its bases, the
23  Indictment included both a theory of direct liability and a theory of liability for aiding
24  and abetting.  (ECF No. 1.)  It alleged that Mr. Alcharihi "knowingly effected the entry
25  of goods, wares, and merchandise, and *willfully caused* the entry of goods, wares, and
26  merchandise, upon a false classification as to quality and value of such material."  (*Id*
27  (emphasis added).)

28

At trial, the government dropped the aiding and abetting theory.  The jury was not instructed on an aiding and abetting theory.  (*See* ECF No. 160.)  Nor did the verdict form include an aiding and abetting theory.  (ECF No. 165.)  Thus, Mr. Alcharihi was convicted of directly effecting the entry of the mosaic himself into the country upon a false classification of quality or value.  He was *not* convicted of aiding and abetting Soo Hoo Customs with effecting the mosaic's entry.

However, there is no evidence that Mr. Alcharihi himself effected entry of the mosaic upon a false classification.  In fact, it is undisputed that Mr. Alcharihi did not personally fill out or submit the CBP Entry Forms for the mosaic.  Instead, he hired Soo Hoo Customs to fill out and submit the necessary forms for his shipment.  (ECF No. 183 at 303:8-14 (Agent Madoyan testifying that Mr. Alcharihi hired Soo Hoo Customs); ECF No. 184 at 739:4-9 (Brian Soo Hoo testifying that Mr. Alcharihi hired his company); ECF No. 184 at 742:21-743:3 (Mr. Soo Hoo testifying that his brokerage submitted CBP Forms 3461 and 7501 for Mr. Alcharihi).  As established at trial, a customs broker is a person or entity licensed to prepare customs forms and submit them to CBP on behalf of an importer.  (ECF No. 183 at 302:19-303:7; ECF No. 184 at 733:4-6, 734:7-735:1, 736:6-9.)

In particular, a Soo Hoo Customs employee named Rebecca Sito was assigned to work on Mr. Alcharihi's shipment.  (ECF No. 184 at 750:2-8; ECF No. 185 at 827:10-14.)  Ms. Sito was a "classifier" at Soo Hoo Customs.  (ECF No. 184 at 750:9-13; ECF No. 185 at 828:15-17.)   It was her job to determine the shipment's value, country of origin, and HTS code, among other information to be inputted into the CBP entry forms.  (ECF No. 185 at 828:18-25, 829:20-830:10.)  That is precisely what she did for Mr. Alcharihi's shipment.  Based on shipping documents she received from Mr. Alcharihi and email communications with him, Ms. Sito determined the value, country of origin, and HTS code for his shipment.  (*Id.* at 829:21-830:7.)  She then caused that information to be submitted to Customs in the Entry Forms.  (*Id.* at 830:8-10.)

In short, the evidence overwhelmingly established that it was Ms. Sito who determined the information that went on Mr. Alcharihi's CBP Entry Forms, and caused that information to be transmitted to CBP.  There is no evidence that Mr. Alcharihi himself determined this information, filled out the CBP Entry Forms, or submitted the CBP Entry Forms.  In fact, Mr. Alcharihi did not even receive or review a copy of the forms before they were submitted to Customs.  (ECF No. 185 at 846:14-17.)  This Court cannot uphold a conviction on a legal or factual theory that was not presented at trial.  *See Ciminelli v. United States*, 143 S. Ct. 1121, 1129 (2023); *McCormick v. United States*, 500 U.S. 257, 270 n.8 (1991); *Chiarella v. United States*, 445 U.S. 222, 236 (1980).  Thus, in the absence of a jury instruction on aiding and abetting and a verdict form reflecting an aiding and abetting finding, a judgment of acquittal must be entered because Mr. Alcharihi himself did not effect entry of the mosaic upon a false classification of value or quality.

**D.    There Was No Evidence That Mr. Alcharihi's Conduct or The Mistakes on the CBP Entry Forms Deprived the United States of Revenue**

As the defense previously briefed, a necessary element of the offense in 18 U.S.C. § 541 is that the defendant's conduct deprive the United States of revenue.  (ECF No. 130 at 19-23; ECF No. 138.)  The Court ruled against the defense on this issue, and did not instruct the jury that loss of revenue was an element of the offense.  (ECF Nos. 144, 145.)  Thus, the defense does not seek to belabor this point here, but simply preserves the issue for the record.

The defense's position is that loss of revenue to the United States is an element of the offense, the jury should have been so instructed, and there was absolutely no evidence presented at trial that Mr. Alcharihi's conduct and/or the mistakes on the CBP Entry Forms resulted in any loss of revenue to the United States.  In fact, it is undisputed that Mr. Alcharihi owed no duties on the mosaic.  As the government stated in closing, "there are no duties owed on an antiquity.  So, no matter how much the ancient mosaic is worth, the defendant did not owe any duties.  That is true."  (ECF No.

12

185 at 955:4-6; *see also id.* at 868:2-8 (customs expert Scott Case testifying that no duties are owed on items classified under Chapter 97 of the HTS because "[w]orks of art are unconditionally duty free").)  Because the government failed to prove that Mr. Alcharihi's conduct and/or the mistakes on the CBP Entry Forms deprived the United States of revenue, the Court must enter a judgment of acquittal.

**E.     There Was Insufficient Evidence That Mr. Alcharihi Caused the Customs Broker to Falsely Classify the Mosaic's Quality**

As established above, Mr. Alcharihi did not personally fill out the CBP entry forms for the mosaic.  (*See supra* Section III.C.)  Nonetheless, if the Court finds that Mr. Alcharihi can somehow be directly liable under the statute absent an aiding and abetting finding, there is no evidence that he caused a false classification as to quality.  Instead, the evidence at trial established that Ms. Sito independently made mistakes when determining both the country of origin and the HTS classification code in the CBP Entry Forms.  These mistakes were *not* caused by Mr. Alcharihi.

Over the defense's objection, the Court instructed the jury that "[t]he terms 'quality' and 'value' are to be given their plain and ordinary meanings as further established through the evidence and testimony of witnesses."  (ECF No. 160 at 4.)  The defense maintains that this instruction was incorrect in light of existing case law and other authority defining these terms in the customs context and preserves its objection to this instruction (ECF No. 130 at 8-10; ECF No. 142 at 5-7).  But for the purposes of this Motion, the defense will assume, without conceding, that quality encompasses country of origin and the HTS code.

With regard to the country of origin, there is absolutely no evidence that Mr. Alcharihi caused Ms. Sito to mistakenly list Israel on the CBP Entry Forms.  It is undisputed that Mr. Alcharihi provided Soo Hoo Customs with paperwork indicating that the country of origin was Turkey.  (ECF No. 184 at 744:6-8 (Mr. Soo Hoo testifying that Mr. Alcharihi's documents indicated that the country of origin was Turkey); ECF No. 185 at 844:13-15 (Ms. Sito testifying that based on the invoice, the

13

country of origin was Turkey).)  Other than the shipping documents provided by
Mr. Alcharihi, there was no communication between Ms. Sito and Mr. Alcharihi about
the country of origin.  (ECF No. 185 at 845:6-13; *see also* Exs. 150-152 (email chains
between Mr. Alcharihi and Ms. Sito reflecting no communications about the country of
origin); Tr. Ex. 270 (email from Ms. Sito stating "[I] didn't recall any communication
with importer regarding the country of origin either").)  Instead, both Mr. Soo Hoo and
Ms. Sito testified on the stand that putting Israel on the CBP Entry Forms appeared to
be Ms. Sito's own mistake.  (ECF No. 184 at 744:9-745:6 (Mr. Soo Hoo testifying that
his office misinterpreted a symbol on one of the shipping documents as referring to
Israel); ECF No. 185 at 844:17-845:5.)  Additionally, Ms. Sito previously admitted in
an email to law enforcement that "most likely [she] made a mistake on putting the
country of origin."  (Tr. Ex. 270 at 1.)  Mr. Alcharihi did not even have an opportunity
to review what country of origin was listed on the entry forms before they were
submitted to Customs.  (ECF No. 185 at 846:14-17.)  There is absolutely no evidence
that Mr. Alcharihi caused Ms. Sito to misclassify the mosaic's country of origin as
Israel.  Therefore, he cannot be liable either directly or under an aiding and abetting
theory for falsely classifying the mosaic's country of origin.

With regard to the mosaic's HTS code, the evidence established that Ms. Sito
misclassified the mosaic as wholesale ceramic tiles under Chapter 69, and that this
mistake was independent of anything Mr. Alcharihi said or did.  As Mr. Soo Hoo
testified at trial, when an importer hires a customs broker, it is the broker's job to
"classify items," meaning to "take a description from the invoice and . . . assign it an
HTS code."  (ECF No. 184 at 734:21-735:1.)  Likewise, Ms. Sito testified that as a
"classifier," it was her responsibility "to provide the [HTS] classification code in order
to fill out the customs forms."  (ECF No. 185 at 828:15-23.)

Ms. Sito determined the HTS classification code based on the shipping
documents from Mr. Alcharihi and email communications with him.  (ECF No. 185 at
841:16-19.)  The shipping documents indicated that there were three mosaic tableaus in

14

the shipment.  (*Id.* at 834:15-24.)  In the email communications, Ms. Sito primarily asked questions about the mosaics' materials, which Mr. Alcharihi answered.  (*Id.* at 835:19-836:3; Tr. Ex. 151.)  They did *not* communicate about what HTS classification code should apply to the mosaics because that would *not* be a normal part of the classification process.  (ECF No. 185 at 843:1-5.)  In the context of determining the mosaics' materials, Ms. Sito asked Mr. Alcharihi for a picture.  (*Id.* at 836:4-22; Tr. Ex. 151 at 2.)  One of the mosaics in the shipment was a copy of well-known fish pond mosaic located in Croydon, England by Gary Drostle.  (ECF No. 183 at 430:2-431:5, 449:2-6.)  Mr. Alcharihi sent Ms. Sito a picture of Drostle's fish pond mosaic.  (Tr. Ex. 152 at 6.)  Based on the information she received, Ms. Sito classified the mosaics as "ceramic, unglazed, tiles, cub" under Chapter 69 of the HTS.  (ECF No. 185 at 841:16-19 (Ms. Sito testifying that she based her classification on shipping documents and emails with Mr. Alcharihi); *id.* at 842:3-14 (Ms. Sito testifying that the handwriting on the packing list is her determination of HTS codes for Mr. Alcharihi's shipment); Tr. Ex. 270 at page 8 (packing list with "6907.10.0000" handwritten on it); Tr. Ex. 270 at 3 (CBP Entry Form 7501 listing HTS Code 6907.10.0000 for the mosaics).)

At trial, the defense called Scott Case as a customs expert.  (ECF No. 185 at 851.)  Mr. Case previously worked as a full-time customs broker for 20 years.  (*Id.* at 853:12-24.)  He testified that he reviewed the shipping documents that Mr. Alcharihi provided to Soo Hoo Customs, and the email communications between them.  (*Id.* at 857:15-858:4.)  Based on this information, Mr. Case opined that Ms. Sito incorrectly classified the mosaics under Chapter 69 of the HTS, and that the mosaics should have been classified under Chapter 97.  (*Id.* at 861:17-862:10.)  In particular, Mr. Case testified that had he received the picture of Drostle's fish pond mosaic, which Mr. Alcharihi sent to Ms. Sito, he would have classified it as artwork under Chapter 97 of the HTS.  (*Id.* at 870:3-18.)  Mr. Case testified that at the time Mr. Alcharihi imported the mosaics, Chapter 97 of the HTS further distinguished between works of art that are over or under 100 years old.  (*Id.* at 870:19-25.)  This distinction should

15

1  have prompted the customs broker to ask "further questions of the importer," which
2  Ms. Sito did not do.  (*Id.* at 871:7-12.)

3       Ms. Sito was not herself a licensed customs broker.  (ECF No. 184 at 749:25-
4  750:1; ECF No. 185 at 829:8-12.)  She had never classified artwork before.  (ECF No.
5  185 at 837:23-24.)  She typically classified "garments, clothing, food[, and] furniture."
6  (*Id.* at 838:4-8.)  She mistakenly classified the mosaics as wholesale ceramic tiles (*Id.*
7  at 861:17-862:10), despite receiving a picture of a well-known mosaic that was
8  captioned "#mosaic#art" (Tr. Ex. 152 at 6).  It was a picture that Scott Case, an
9  experienced customs broker, would have classified as artwork under Chapter 97 of the
10 HTS.  (ECF No. 185 at 870:3-18.)  There was competing evidence at trial as to whether
11 the mosaic was an antiquity (ECF No. 184 at 600:2-11), or a modern forgery or
12 reconstruction (ECF No. 183 at 370:21-371:3, 383:22-391:13; ECF No. 185 at 905:8-
13 15).  If the mosaic is modern, then it would have the same HTS code as the fishpond
14 mosaic that Mr. Alcharihi sent to Ms. Sito—that is, artwork less than 100 years old
15 under Chapter 97.  If the mosaic is ancient, then it would have a slightly different HTS
16 classification, which is artwork over 100 years old under Chapter 97.  But on the issue
17 of age, Ms. Sito never asked Mr. Alcharihi how old any of the mosaics were.  (ECF No.
18 185 at 841:2-7.)  In fact, she testified that she had never asked any client at Soo Hoo
19 Customs how old their goods were.  (*Id.* at 841:8-10.)  Nor did she ask Mr. Alcharihi
20 for pictures of all 3 mosaics.  (*Id.* at 838:16-25.)

21      The evidence established that Ms. Sito made the mistake of misclassifying the
22 mosaics as wholesale ceramic tiles when she had enough information from
23 Mr. Alcharihi to classify them as artwork.  (*Id.* at 861:17-862:10, 870:3-18.)  And
24 because she misclassified the mosaics as wholesale tiles, as opposed to art, she never
25 asked Mr. Alcharihi whether any mosaic was older than 100 years old.  (*Id.* at 841:2-7,
26 870:19-25, 871:7-12.)  The evidence showed that Ms. Sito incorrectly determined both
27 the mosaic's country of origin and its HTS code independent of Mr. Alcharihi's
28 conduct.  There is insufficient evidence that he caused or directed these mistakes.

Because we do not know whether the jury convicted Mr. Alcharihi based on a false classification of value or quality or both, the Court must enter a judgment of acquittal under Rule 29.  Moreover, as briefed in the concurrently-filed motion for new trial under Federal Rule of Criminal Procedure 33, the government's evidence with regard to false classification of value was tainted by false testimony and prosecutorial misconduct.  Thus, there were legal defects with regard to the evidence on both quality and value thereby requiring a judgment of acquittal under Rule 29.

## IV. CONCLUSION

For the foregoing reasons, the Court should set aside the jury's verdict and direct entry of a judgment of acquittal.  Fed. R. Crim. P. 29(c)(2).

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  January 25, 2024          By  */s/ Isabel Bussarakum*

ASHLEY MAHMOUDIAN
ISABEL BUSSARAKUM
JOSHUA WEISS
Deputy Federal Public Defenders
Attorneys for MOHAMAD ALCHARIHI